1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      Claude M. Stern (Bar No. 96737)
2     claudestern@quinnemanuel.com
      Patrick Doolittle (Bar No. 203659)
3     patrickdoolittle@quinnemanuel.com
    50 California Street, 22nd Floor
4   San Francisco, California  94111
    Telephone:    (415) 875-6600
5   Facsimile:    (415) 875-6700

6   Attorneys for Defendant Fusion Garage PTE. Ltd

7

8                        UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11  INTERSERVE, INC. dba TECHCRUNCH, a        CASE NO. 09-cv-5812 JW
    Delaware corporation, and CRUNCHPAD,
12  INC., a Delaware corporation,

13              Plaintiffs,                   **DEFENDANT'S MOTION TO DISMISS,
                                              MOTION TO STRIKE, AND MOTION
14         vs.                                FOR A MORE DEFINITE STATEMENT;**

15  FUSION GARAGE PTE. LTD, a Singapore       **MEMORANDUM OF POINTS AND
    company,                                  AUTHORITIES**

16
                Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

04049.51632/3296420.3

Dockets.Justia.com

## NOTICE OF MOTION AND MOTION

Please take notice that on April 5, 2010 at 9:00 a.m. in Courtroom 8, Fourth Floor of the United States District Court for the Northern District of California, San Jose Division, 280 South 1st Street, San Jose, California, 95113, the Honorable James Ware presiding, Defendant Fusion Garage PTE, Ltd. will, and hereby does, move to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(1) and 9(b).

Please take further notice that Fusion Garage will, and hereby does, move to strike pursuant to Federal Rule of Civil Procedure 12(f) certain allegations of the Complaint on which Plaintiffs purport to base their Lanham Act claim, and further move for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) as to plaintiffs' first, second, third, and fourth causes of action.

The basis for these motions is that (1) Plaintiffs' Complaint does not state a claim upon which relief can be granted; (2) Plaintiffs' fraud claim is not pled with particularity; and (3) Plaintiffs' Complaint is so vague and indefinite as to require a more definite statement.

These motions are based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings in this action, the accompanying Request for Judicial Notice, and such other matters and argument as the Court may consider at the time of the hearing hereon. The 12(b)(1) motion is further based on the Declaration of Patrick Doolittle submitted herewith.

## STATEMENT OF ISSUES (Civ. L. R. 7-4(a)(3))

1.      Does Plaintiffs' Complaint fail to state a claim for (i) False Advertising under the Lanham Act; (ii) Breach of Fiduciary Duty; (iii) Misappropriation of Business Ideas; (iv) Fraud; and (v) Violations of Cal. Bus. & Prof. Code §§ 17200 and 17500?

2.      Does Plaintiffs' Complaint fail to allege fraud with the specificity that Rule 9(b) requires?

3.      Should Plaintiffs be obligated to provide a more definite statement of their claims?

## TABLE OF CONTENTS

**Page**

*Preliminary Statement* .................................................................................. 1

*Facts Alleged and Judicially Noticeable* ........................................................ 2

*Argument* ...................................................................................................... 7

I.     LEGAL STANDARD FOR 12(B)(6) DISMISSAL ................................... 7

II.    PLAINTIFFS' CLAIM FOR MISAPPROPRIATION OF BUSINESS IDEAS FAILS ........................................................................................ 7

    A.    Plaintiffs' Claim Does not Exist Under California Law ............... 7

    B.    Plaintiffs' Claim Is Preempted by the Uniform Trade Secrets Act ....................... 10

III.   PLAINTIFFS' LANHAM ACT CLAIM FAILS ..................................... 11

    A.    Plaintiffs Lack Standing To Raise a Lanham Act Claim for False Advertising ........................................................................ 11

    B.    Plaintiffs Cannot Make Out a False Advertising Lanham Act Premised on True Statements ...................................................... 13

    C.    Plaintiffs Cannot Make Out a Lanham Act Claim Premised on Fusion Garage's Statements About Its Inventorship of Its Product .................. 15

    D.    Plaintiffs Cannot Allege a Lanham Act Claim Based on Statements About a Non-Party Individual ...................................... 16

IV.   PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY FAILS ....................... 16

    A.    The Complaint Is Too Vague and Uncertain To State a Fiduciary Duty Claim ...................................................................... 16

    B.    Plaintiffs' Joint Venture Allegations Are Inconsistent With Arrington's Threats To Terminate "the Project" .......................... 18

V.    PLAINTIFFS' CLAIM FOR FRAUD AND DECEIT FAILS ................ 19

    A.    Fusion Garage Did Not Misrepresent the Prospects of a Joint Venture ......... 20

    B.    Plaintiffs Have Not Pled Proximate Damage From Fusion Garage's Other Alleged Misrepresentations ............................... 21

        1.    Fusion Garage's Alleged Misrepresentation of its Credentials .................. 22

        2.    Fusion Garage's Alleged Overstating of Component Costs ...................... 22

        3.    Fusion Garage's Alleged Concealment of the Loss of Pegatron ................. 22

-i-

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VI.   PLAINTIFFS' CLAIM FOR FALSE ADVERTISING AND UNLAWFUL
      BUSINESS PRACTICES UNDER CALIFORNIA LAW FAILS .................................... 23

*Conclusion* ........................................................................................................................... 24

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page**

3

<u>**Cases**</u>

4

*ASIS Internet Serv's v. Active Response Group*,
No. 07-6211, 2008 WL 2952809 (N.D. Cal. July 30, 2008)......................................7

5

6

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003) .................................................................10

7

*AirDefense, Inc. v. AirTight Networks, Inc.*,
No. 05-4615, 2006 WL 2092053 (N.D. Cal. 2006) .............................................10

8

9

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ...................................................................................7, 12

10

*Baden Sports, Inc. v. Molten USA, Inc.*,
556 F.3d 1300 (Fed. Cir. 2009) .................................................................2, 15, 16

11

12

*Barrus v. Sylvania*,
55 F.3d 468 (9th Cir. 1995) ............................................................................11

13

*Bell Atl. Co. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................7

14

15

*Cadence Design Sys., Inc. v. Avant! Corp.*,
29 Cal. 4th 215 (2002).....................................................................................10

16

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*,
318 F. Supp. 2d 216 (D. Del. 2004) ...................................................................11

17

18

*Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (1999)......................................................................................23

19

*CollegeNet, Inc. v. Embark.com, Inc.*,
230 F. Supp. 2d 1167 (D. Or. 2001).............................................................14, 16

20

21

*Desny v. Wilder*,
46 Cal. 2d 715 (1956)..................................................................................8, 9, 10

22

*Digital Envoy, Inc. v. Google, Inc.*,
370 F. Supp. 2d 1025 (N.D. Cal. 2005) ..........................................................10

23

24

*Durning v. First Boston Corp.*,
815 F.2d 1265 (9th Cir. 1987)............................................................................20

25

*First Advantage Background Serv's Corp. v. Private Eyes, Inc.*,
569 F. Supp. 2d 929 (N.D. Cal. 2008) ...............................................................21

26

27

*Fladeboe v. Am. Isuzu Motors Inc.*,
150 Cal. App. 4th 42 (Cal. App. 2007) ..........................................................21, 22

28

-iii-

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

*Harper v. 24 Hour Fitness, Inc.*,
   167 Cal. App. 4th 966 (Cal. App. 2008) ................................................................23

*Hollywood Screentest of Am., Inc. v. NBC Universal, Inc.*,
   151 Cal. App. 4th 631 (Cal. App. 2007) ..................................................................8

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*,
   407 F.3d 1027 (9th Cir. 2005) ...........................................................................11, 12

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*,
   No. 07-3983, 2007 WL 4532214 (N.D. Cal. Dec. 19, 2007) ...........................8, 9, 10

*Kloke v. Pongratz*,
   38 Cal. App. 2d 395 (Cal. App. 1940) ....................................................................14

*Mangindin v. Washington Mutual Bank*,
   637 F. Supp. 2d 700 (N.D. Cal. 2009) ....................................................................19

*Myers-Armstrong v. Actavis Totowa, LLC*,
   No. 08-4741, 2009 WL 1082026 (N.D. Cal. April 22, 2009) ..................................3, 4

*O'Hara v. Western Seven Trees Corp.*,
   75 Cal. App. 3d 798 (Cal. App. 1977) .....................................................................21

*Pellegrini v. Weiss*,
   165 Cal. App. 4th 515 (Cal. App. 2008) ..................................................................19

*Robert Bosch LLC v. Pylon Mfg. Co.*,
   632 F. Supp. 2d 362 (D. Del. 2009) ........................................................................16

*Salahuddin v. Cuomo*,
   861 F.2d 40 (2d Cir. 1988) ......................................................................................18

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...................................................................................19

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1337 (9th Cir. 2008) .................................................................................15

*In re Verifone Holdings, Inc. Sec. Litig.*,
   No. 07-6140, 2009 WL 1458211 (N.D. Cal. May 26, 2009) ...................................3, 4

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................................19

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) ...................................................................12

## Statutes

15 U.S.C. § 1125(a)(1)(B) ...............................................................................................11, 16

Cal. Bus. & Prof. Code § 17200...............................................................................1, 2, 23, 24

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

Cal. Bus. & Prof. Code § 17500 ...................................................................1, 2, 23

Cal. Civ. Code § 3426.7(b) .....................................................................................10

Fed. R. Civ. P. 9(a) ...................................................................................................8

Fed. R. Civ. P. 9(b) ............................................................................................2, 19

Fed. R. Civ. P. 12(b)(1) ..........................................................................................11

Fed. R. Civ. P. 12(b)(6) ..........................................................2, 7, 11, 12, 18

Fed. R. Civ. P. 12(e) ..........................................................................................8, 18

Fed. R. Civ. P. 12(f) ...............................................................................................14

## **Other Authorities**

13 Witkin, Summary of California Law, Personal Property § 69 ("Ideas-No Property Right") .......8

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### *Preliminary Statement*

This case arises out of a failed merger.  Plaintiff Interserve, Inc. dba TechCrunch ("TechCrunch") is a self-described Internet "blog" founded by blogger Michael Arrington.  Mr. Arrington also formed another company, Plaintiff CrunchPad, Inc. ("CP, Inc.") to acquire Defendant Fusion Garage PTE Ltd. ("Fusion Garage").  After the parties' merger talks fell through, Plaintiffs filed this lawsuit to disrupt Fusion Garage's introduction of its product to the market.  While Plaintiffs claim to have part ownership in some unspecified intellectual property of Fusion Garage, they do not allege the existence of any partnership agreement, joint venture agreement, development agreement, invention assignment agreement, non-disclosure agreement, confidentiality agreement, *or any contract at all* between the parties.

Plaintiffs allege that Arrington posted on the Internet a "challenge to himself and the world" to develop a web tablet.  While Arrington stated in his blog post that he wanted to "open source" the product and "let anyone build one that wants to," TechCrunch now claims that it owns certain "business ideas" related to the web tablet.  Plaintiffs assert that those business ideas—many of which TechCrunch or Arrington has posted all over the Internet and in YouTube videos—were incorporated into Fusion Garage's product after an alleged collaboration between the parties.

Given the lack of any formal legal relationship or contract between the parties, Plaintiffs have lodged a host of claims grounded in non-specific allegations, including: misappropriation of business ideas, false advertising under the Lanham Act, breach of fiduciary duty, fraud, and violations of California Business & Professional Code §§ 17200 and 17500.

Plaintiffs' claim for misappropriation of business ideas fails because no such claim exists under California law.  Plaintiffs also disclosed their supposedly novel ideas all over the Internet.  And to the extent Plaintiffs re-characterize this claim as an implied-in-fact *contract* claim, they cannot raise an inference that Fusion Garage impliedly agreed to pay for the widely-disseminated "business ideas" at issue here.

Plaintiffs do not have standing to bring a Lanham Act claim for false advertising since they

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

1  do not have a product and cannot allege a competitive injury from Fusion Garage's advertising

2  statements.  The alleged false statements set forth in the Complaint are also shown to be *true*

3  based on other allegations in the Complaint and attachments to the Complaint.  Moreover, under

4  the law, Plaintiffs cannot make out a false advertising claim based on Fusion Garage's statements

5  regarding inventorship of its product.  *See Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300,

6  1307 (Fed. Cir. 2009) (holding, under Ninth Circuit law, that false statements about authorship of

7  ideas in product cannot violate the Lanham Act).  Finally, Plaintiffs cannot allege false advertising

8  based on Fusion Garage's statements about a *person*, Mr. Arrington, who is not even a plaintiff

9  here.

10  Plaintiffs' claim for breach of fiduciary duty also fails because it is too vague and

11  imprecise to state a claim.  Plaintiffs do not specify whether Fusion Garage allegedly owed a

12  fiduciary duty to (i) Plaintiff TechCruch, (ii) Plaintiff CP, Inc., (iii) Michael Arrington, or (iv) the

13  alleged joint venture.  Indeed, the Complaint is internally inconsistent—suggesting at times that

14  Fusion Garage's alleged duty ran to *both* Plaintiffs and suggesting at other times that the duty ran

15  to one or the other Plaintiff (or to non-party Arrington).

16  Plaintiffs' vague claim for fraud and deceit fails on 12(b)(6) and 9(b) grounds.  The

17  Complaint does not specify the time, place, and specific content of the alleged false statements

18  constituting fraud.  Moreover, the attachments to Plaintiffs' own Complaint establish that Fusion

19  Garage engaged in no fraudulent or deceitful conduct.

20  Finally, Plaintiffs' claim under §§ 17200 and 17500 simply mimics Plaintiffs' prior claims,

21  alleges no new facts, and fails for the same reasons that the other claims fail.

22  In sum, Plaintiffs' claims are legally barred, facially flawed, and fatally imprecise.

23  Accordingly, the Court should grant Fusion Garage's motion to dismiss.

### *Facts Alleged and Judicially Noticeable*

25  **The TechCrunch Blog and Arrington's Internet Post**.  Plaintiff TechCrunch is a

26  publisher of technology-oriented blogs and other web media.  (Cmpl. ¶ 3).  Its founder and editor

27  is Michael Arrington.

28  In July 2008, Arrington publicly posted a challenge on the Internet "to himself and the

-2-

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

world" to build "a dead simple web tablet for $200." (*Id.* ¶ 11). He solicited the public at large to assist on the project and stated "[i]f everything works well, we'd then open source the design and software and *let anyone build one that wants to*." (*Id.*)[1] TechCrunch eventually planned to call the web tablet a "CrunchPad." (*Id.* ¶¶ 4 & 13). At some point, Arrington also formed a corporation called CP, Inc. to "commercialize the CrunchPad." (*Id.* ¶ 4). Plaintiffs do not allege when CP, Inc. was formed.[2] Plaintiffs refer to both entities collectively as "TechCrunch" in their Complaint, (*id.*), but their separate existence and activities are relevant and key to the various claims asserted. As explained below, the Complaint does not specify whether Fusion Garage owed its alleged fiduciary duties to Plaintiff TechCrunch, Plaintiff CP, Inc., or both. Nor does the Complaint specify which Plaintiff (or non-party) "owned" the various business ideas that Fusion Garage allegedly misappropriated.

    **Prototype A.** Plaintiffs allege that by August 30, 2008, they had constructed a Prototype A of the web tablet. The prototype was still crude as it "was still far from having beta units." (*Id.* ¶ 12). Plaintiffs "posted pictures and a description" of the prototype on the Internet in a blog post. (*Id.*) While Plaintiffs do not attach the blog post to their Complaint—and only selectively quote from it—Plaintiffs revealed in that post that it was "[a] humble (and messy) beginning. Prototype A has been built. It's in a temporary aluminum case that a local sheet metal shop put together."[3]

---

[1]   The full text of Arrington's challenge can be found at: http://www.techcrunch.com/2008/07/21/we-want-a-dead-simple-web-tablet-help-us-build-it/. Defendant respectfully requests that the Court take judicial notice of this public blog post, since Plaintiffs' Complaint expressly refers to it. *See* Request for Judicial Notice (filed concurrently herewith); *In re Verifone Holdings, Inc. Sec. Litig.*, No. 07-6140, 2009 WL 1458211, *1 n.1 (N.D. Cal. May 26, 2009) (granting judicial notice "as to those documents referenced in the complaint"); *Myers-Armstrong v. Actavis Totowa, LLC*, No. 08-4741, 2009 WL 1082026, *5 n. 5 (N.D. Cal. April 22, 2009) ("Judicial notice of the full text of documents referenced in a complaint is proper under the doctrine of incorporation by reference").

[2]   There is no listing with the California Secretary of State for a corporation named "CrunchPad," suggesting that CP, Inc. is not qualified to do business or authorized to sue in California. Nevertheless, Fusion Garage accepts the allegation as true for purposes of this motion.

[3]   http://www.techcrunch.com/2008/08/30/update-on-the-techcrunch-tablet-prototype-a/. Defendant respectfully requests that the Court take judicial notice of this blog post as well. *See* Request for Judicial Notice; *Verifone*, 2009 WL 1458211 at *1 n.1; *Myers-Armstrong*, 2009 WL (footnote continued)

1    **Fusion Garage Meets TechCrunch/Arrington in September 2008.**  Fusion Garage, a

2    Singapore-based software and technology company, formed in early 2008.  (*Id.,* Ex. A, p. 1.).  The

3    Complaint alleges that Fusion Garage's CEO, Chandrasekhar Rathakrishnan, first met Arrington

4    at a conference called "TechCrunch 50" on September 8-10, 2008.  (*Id.* ¶ 14).  As an attachment to

5    the Complaint reveals, Fusion Garage had already developed a prototype for its product idea and

6    sent their entry to the TechCruch 50 conference to "showcase the concept to the attendees, gauge

7    their interest and gather feedback."  (*Id.,* Ex. A, p. 2).  The Complaint nowhere alleges that these

8    communications were confidential or predicated on any fiduciary relationship.  Mr. Rathakrishnan

9    subsequently met with Arrington and "Interserve's CEO Heather Harde" on September 23, 2008

10   to discuss "the project."  (*Id.* ¶ 15).  While Plaintiffs allege that Ms. Harde was the CEO, an email

11   Plaintiffs attach to their Complaint has Ms. Harde stating that Mr. Arrington was the "CEO of the

12   business."  (*Id.,* Ex. D (Nov. 17, 2009 Harde email)).  Again, there is no allegation that these

13   discussions were either confidential or in the realm of a fiduciary relationship.

14   **Prototype B.**  The Complaint does not specify when Fusion Garage and Plaintiffs began

15   working together on a web tablet.  The Complaint alleges that "[b]y January 19, 2009, the project

16   had constructed a Prototype B, and TechCrunch started calling the device the CrunchPad."  (*Id.*

17   ¶ 15).  Plaintiffs do not define what "the project" is or was, nor do they allege who was a member

18   of "the project" at that time.  Plaintiffs nonetheless assert that they created Prototype B.  (*Id.* ¶ 35).

19   However, they also allege that Fusion Garage's software was running on Prototype B.  (*Id.* ¶ 19).

20   Plaintiffs concede that they posted videos on the Internet detailing Prototype B.  (*Id.*).

21   **"All the Credit Should Go to Fusion Garage."**  Fusion Garage's contributions to the

22   project began quickly.  As noted, by January 2009, Fusion Garage had created the software

23   running in the then-current prototype of the web tablet.  (*Id.* ¶¶ 19-20).  Three months later, when

24   the next prototype of the CrunchPad was unveiled, Arrington publicly announced that "*the ID and*

25   *hardware work was driven by Fusion Garage*" and "[i]n fact, *all the credit should go to Fusion*

26   _____

27   1082026 at *5 n. 5.

28

-4-
**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

1    *Garage.*" (*Id.* ¶ 22 (emphasis added)).  A month later, in June 2009, a new prototype of the

2    CrunchPad neared completion and Arrington publicly stated that "*Fusion Garage continues to*

3    *drive the software forward.*"  (*Id.* ¶ 24 (emphasis added)).

4         **No Contract Between the Parties Exists.**  According to the Complaint, during all this

5    time that Fusion Garage was developing the hardware and software for these prototypes, there was

6    no non-disclosure agreement in place between Fusion Garage and TechCrunch, nor was there any

7    written contract purporting to assign rights to the embryonic product.  Moreover, the Complaint

8    does not allege that any partnership, joint venture, or development agreement existed.

9         **Arrington Threatens To Unwind "the Project."**  The complaint nowhere defines the

10   metes and bounds of what is alleged in a conclusory fashion to be a "joint venture" between

11   Plaintiffs and Fusion Garage.  The Complaint is silent as to the date the venture was formed or the

12   terms of the venture.  More remarkably, this undefined "joint venture" was apparently terminable

13   at will by Plaintiffs, but not by Fusion Garage:  While the Complaint alleges that "the project" was

14   a joint venture—and Plaintiffs have sued Fusion Garage for walking away from the supposed joint

15   venture—the Complaint alleges that Arrington threatened to unilaterally "turn the project off" on

16   at least two occasions.  (*Id.* ¶¶ 28 & 32).

17        **The Merger Negotiations.**  Also in June 2009, Arrington and Rathakrishnan began

18   negotiating a merger or acquisition deal between Fusion Garage and CP, Inc., a new company set

19   up by Arrington to commercialize the CrunchPad web tablet.  Arrington offered a deal by which

20   Fusion Garage would acquire 35% of CrunchPad, Inc.  After Mr. Rathakrishnan equivocated on

21   whether this deal would be acceptable to Fusion Garage, Arrington rescinded the 35% offer on

22   June 27.  (*Id.,* Ex. B) (e-mail from Arrington to Rathakrishnan, June 27, 2009 2:17 p.m.) ("You

23   don't seem to be able to speak authoritatively for your imvestors [sic] and creditors.  For

24   reputation reasons I'm forced to notify our investors that the deal is off.")  In response,

25   Rathakrishnan proposed a counteroffer whereby Fusion Garage would acquire 40% of

26   CrunchPad, Inc., although he also expressed his potential willingness to go forward on a 35%

27   offer.  (*Id.*) (e-mail from Rathakrishnan to Arrington, June 27, 2009 3:01 p.m.).  Nowhere does the

28   Complaint allege that either of the Plaintiffs accepted, or even purported to accept, this proposal.

1   Hence, if the Complaint is to be believed, as of June 27, 2009, there was nothing but a negotiation

2   taking place between CP, Inc. and Fusion Garage.

3       **The End of the Merger Negotiations.**  By November 2009, several of Fusion Garage's

4   outside investors grew increasingly impatient with the merger discussions between the parties.  In

5   a November 29, 2009 e-mail to Rathakrishnan, one of these investors (Bruce Lee) pointed out that

6   Fusion Garage had "assumed all related operational and developmental costs of the device" and

7   could not understand why Fusion Garage would even consider merger offers that would give

8   Fusion Garage *less* than 50% equity in CrunchPad, Inc. (*Id.,* Ex. D) (e-mail from Lee to

9   Rathakrishnan, Nov. 17, 2009 11:51 p.m.)  The investor stated the deal was lopsided.  (*Id.*) ("You

10  have argued an offer of 25% [equity for Fusion Garage] on their behalf until you were blue in the

11  face . . . The dialogue that we have been having feels like you are saying that Fusion Garage

12  should do all the work, the shareholders should assume all the risk, then you merge the company

13  and Arrington/TechCrunch hold substantially more shares than the original investors?")

14  Frustrated with Fusion Garage's position in the merger negotiations, Lee demanded that Fusion

15  Garage propose a structure by which TechCrunch would receive only 10% equity.  (*Id.*).

16      Rathakrishnan promptly forwarded Lee's e-mail to Arrington, stating that Fusion Garage

17  needed Lee's continued investment and thus Rathakrishnan had "no choice but to put forth" Lee's

18  10% counteroffer, given the obligations that he owed to Fusion Garage's shareholders.  (*Id.*) (e-

19  mail from Rathakrishnan to Arrington, Nov. 17, 2009 2:50 p.m.).  By the following week, after

20  more meetings with Fusion Garage's investors and phone calls with Arrington, Rathakrishnan

21  realized that the parties' positions were simply too far apart and that the merger was not a realistic

22  possibility.  He wrote Arrington on November 29 to say that "We have a sizable funding offer on

23  the table that will take us to market.  I have to do right by the shareholders and employees and

24  make the decision that is in the best interest of all stakeholders.  Regrettably, given that both

25  parties are unable to reach a favorable agreement, I have no choice but to move forward [without

26  TechCrunch]."  (*Id.*) (e-mail from Rathakrishnan to Arrington, Nov. 29 2:46 p.m.).  The parties

27  never agreed to terms on a merger or acquisition.

28      **The JooJoo Product.**  After discontinuing negotiations with TechCrunch, Fusion Garage

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

1   publicly announced the release of its web tablet – named the JooJoo – during a video conference

2   on December 7, 2009.  (*Id.* ¶ 44).  During this video conference, Mr. Rahakrishnan made several

3   statements regarding the history of the JooJoo's development, the failure of Fusion Garage and

4   Plaintiffs to come to terms on a merger, and Michael Arrington's failure to deliver on his

5   promises.  (*Id.* ¶ 61 (quoting 11 statements)).

6        Three days later, on December 10, 2009, Plaintiffs filed this lawsuit.

7                                    ***Argument***

8   I.   **LEGAL STANDARD FOR 12(B)(6) DISMISSAL**

9        "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

10  accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129

11  S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a

12  court generally must assume the veracity of well-pleaded factual allegations, a complaint that

13  "tenders naked assertions devoid of further factual enhancement" is subject to Rule

14  12(b)(6) dismissal.  *Id.*  In addition, a court need not assume the truth of factual allegations that are

15  contradicted by exhibits attached to the complaint or matters of judicial notice.  *ASIS Internet*

16  *Serv's v. Active Response Group*, No. 07-6211, 2008 WL 2952809, *2 (N.D. Cal. July 30, 2008)

17  ("In evaluating the sufficiency of a complaint's allegations, a court must assume the facts alleged

18  in the complaint to be true unless the allegations are controverted by exhibits attached to the

19  complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint

20  and whose authenticity no party questions.").

21  II.  **PLAINTIFFS' CLAIM FOR MISAPPROPRIATION OF BUSINESS IDEAS FAILS**

22        A.   **Plaintiffs' Claim Does not Exist Under California Law**

23        Plaintiffs' have asserted a claim for "Misappropriation of Business Ideas."  Specifically,

24  Plaintiffs allege that Fusion Garage "misappropriated TechCrunch's property rights" in various

25  "look and design features" of the JooJoo and/or CrunchPad.  (Cmpl., ¶ 89).

26        Plaintiffs' "business ideas" claim fails as a matter of law for the reasons explained below.

27  However, this claim—like the other claims—has a threshold failing:  It fails to identify the proper

28  plaintiff.  Specifically, the Complaint does not specify which entity – TechCrunch, CP, Inc.,

Arrington, or the alleged joint venture itself – "owned" the business ideas that Fusion Garage allegedly misappropriated.  Indeed, the Complaint alleges that the business ideas are non-party Michael Arrington's conception.[4]  (Cmpl., ¶ 87) ("The entire concept of the product derived from Michael Arrington at TechCrunch . . .")  Because the misappropriation claim is fatally ambiguous, the Court should dismiss this claim.  In the alternative, Plaintiffs should be required, pursuant to Fed. R. Civ. P. 12(e), to provide a more definite statement as to which Plaintiff (or non-party) allegedly owned the business ideas that Fusion Garage allegedly misappropriated.

In any event, this claim fails as a matter of law because California law does not accord property rights to mere ideas, be they "business ideas" or otherwise.  *Desny v. Wilder*, 46 Cal. 2d 715, 732 (1956) ("It is clear that California does not now accord individual property type protection to abstract ideas"); *Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, No. 07-3983, 2007 WL 4532214, *8 (N.D. Cal. Dec. 19, 2007) (same); *see also* 13 Witkin, Summary of California Law, Personal Property § 69 ("Ideas-No Property Right") (collecting cases).  Because business ideas are not property, they cannot be the subject of a common-law misappropriation claim.  *See Hollywood Screentest of Am., Inc. v. NBC Universal, Inc.* 151 Cal. App. 4th 631, 650 (Cal. App. 2007) ("The elements of a cause of action for common law misappropriation are: (1) the plaintiff has made a substantial investment of time, effort and money into creating the thing misappropriated, *such that the court can characterize the 'thing' as a kind of property right . . .*") (emphasis added).

To be sure, the *Desny* Court acknowledged that one who makes use of another's idea may in unique circumstances be liable on an implied-in-fact *contract* theory, if the defendant implicitly agreed to compensate the other party for the idea.  *Desny*, 46 Cal .2d at 733-34.  In this case, however, Plaintiffs do *not* base their misappropriation claim on an implied-in-fact contract.

---

[4]  As discussed herein, Arrington features prominently throughout the Complaint.  For instance, several of the statements that form the basis for Plaintiffs' Lanham Act claim are statements about Arrington, and Arrington was a central figure in the alleged venture that serves as the predicate for Plaintiffs' breach of fiduciary duty claim.  Fusion Garage reserves its rights to move to join Arrington as an involuntary Plaintiff under Rule 19(a) at a future time.

1   Rather, their claim expressly alleges that Fusion Garage misappropriated their "property rights."

2   (Cmpl., ¶ 89).  Because ideas are not property, Plaintiffs' misappropriation claim fails as a matter

3   of law.

4         Furthermore, even if Plaintiffs attempted to re-package their misappropriation claim as a

5   *Desny* claim for breach of implied contract, there is not allegation that Fusion Garage agreed to

6   compensate Plaintiffs for the ideas that Plaintiffs allegedly disclosed.  To the contrary, the

7   Complaint alleges the opposite—that Plaintiffs were seeking to acquire Fusion Garage and Fusion

8   Garage's technology.  (Cmpl. ¶¶ 26, 29 & Exs. B, & D).

9         Moreover, as this Court has held, a *Desny* claim fails on its face when the ideas that were

10  disclosed to the defendant were also widely disseminated to the public at large, because it is not

11  reasonable to infer that the defendant would agree to pay for such widely-disseminated ideas.  *See*

12  *Jonathan Browning*, 2007 WL 4532214 at *8 ("Browning's design ideas had been conveyed to the

13  Venetian and to the general public prior to submitting its bid to the Venetian.  Browning's work

14  was profiled in numerous design magazines and newspapers and commissioned by famous

15  institutions . . . Based on these facts, the Court cannot conclude that the Venetian accepted to pay

16  for Browning's widely disclosed sconce ideas.  Browning's bid to the Venetian cannot establish a

17  *Desny* claim.").

18        As in *Jonathan Browning*, the "design ideas" that Fusion Garage allegedly

19  misappropriated were widely disseminated to the public at large.  Specifically, Plaintiffs point to

20  the following "design ideas" as the basis for their misappropriation claim: (1) a large-screen touch-

21  screen device; (2) the function of booting extremely rapidly and straight to a browser; (3) the lack

22  of a desktop or hard drive other than for the software footprint;  (4) a white background; (5) large

23  icons on the home screen; (6) proxying video directly to the device; (7) an application

24  programming interface for custom applications; and (8) empowering the device to play video

25  output to a resolution of 1080p, *i.e.* "full high definition."  (Cmpl., ¶ 87).

26        These ideas were not secret or confidential.  They were publicly disclosed in TechCrunch's

27  numerous blog posts and YouTube videos charting the creation and progress of the various

28  CrunchPad prototypes.  (*Id*. ¶¶ 11, 12, 19 & 21).  There is no allegation that the parties were

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,**
**AND MOTION FOR A MORE DEFINITE STATEMENT**

1 working pursuant to a non-disclosure agreement or confidentiality agreement and there is no

2 allegation that Plaintiffs took any reasonable measures to protect the confidentiality of their ideas.

3 Thus, as in *Jonathan Browning*, Plaintiffs cannot make out a plausible *Desny* claim based on

4 Fusion Garage's alleged misappropriation of these ideas.  The Court cannot infer that Fusion

5 Garage implicitly agreed to pay for Plaintiff's design ideas, given Plaintiffs' open publication of

6 these ideas to the public at large.  There is no allegation whatsoever that there was an agreed-upon

7 or expected price for any business ideas, even assuming they were confidential.

8 **B.   Plaintiffs' Claim Is Preempted by the Uniform Trade Secrets Act**

9 Given the lack of any contract between the parties, Plaintiffs' public posting of its alleged

10 "business ideas" on the Internet, and the absence of any allegation regarding who "owns" the

11 supposed ideas, Plaintiffs did not, and could not, allege a trade secrets claim.  They instead opted

12 to allege the "misappropriation of business ideas" as a trade secrets claim with a different label.

13 The Court should dismiss this common law misappropriation claim because it is preempted by the

14 California Uniform Trade Secrets Act ("CUTSA").  The only types of misappropriation claims *not*

15 preempted by CUTSA are contract claims, civil remedies not based on misappropriation, and

16 criminal remedies:

> This title does not affect (1) contractual remedies, whether or not based upon
> misappropriation of a trade secret, (2) other civil remedies that are not based upon
> misappropriation of a trade secret, or (3) criminal remedies, whether or not based
> upon misappropriation of a trade secret.

19 CAL. CIV. CODE § 3426.7(b).

20 Courts interpret this language to mean all other claims based on misappropriation are

21 preempted by CUTSA.  *Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal. 4th 215, 224 (2002)

22 (plaintiffs required to assert common law cause action for pre-CUTSA misappropriation, and

23 CUTSA claim for misappropriation occurring after effective date of statute); *Accuimage

24 Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 953-54 (N.D. Cal. 2003) (holding "the

25 CUTSA occupies the field in California").  Otherwise the language would be rendered

26 meaningless.  *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005);

27 *see also AirDefense, Inc. v. AirTight Networks, Inc.*, No. 05-4615, 2006 WL 2092053, *4 (N.D.

1    Cal. 2006) (dismissing common law unfair competition claim based on same facts as CUTSA

2    claim).

3           There is no allegation in Plaintiffs' common law claim to suggest it is anything but a

4    subterfuge for a trade secrets claim where Plaintiffs cannot meet the elements of trade secrecy.

5    *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 220 (D. Del.

6    2004) ("If the other claims are no more than a restatement of the same operative facts which . . .

7    spell out only trade secrets misappropriation, then dressing those claims up in different clothing is

8    not . . . consistent with the preemption dictates of UTSA.").  The Court should dismiss this claim.

9    **III.    PLAINTIFFS' LANHAM ACT CLAIM FAILS**

10          **A.    Plaintiffs Lack Standing To Raise a Lanham Act Claim for False Advertising**

11          The Court should dismiss Plaintiffs' claim for false advertising under the Lanham Act

12   because Plaintiffs cannot allege a "competitive injury" and therefore lack standing.  *Jack Russell*

13   *Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) ("For

14   standing pursuant to the 'false advertising' prong of § 43(a) of the Lanham Act, 15 U.S.C.

15   § 1125(a)(1)(B), a plaintiff must show: (1) a commercial injury based upon a misrepresentation

16   about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to

17   compete with the defendant.").[5]

18          Plaintiffs cannot satisfy the "competitive injury" requirement.  When Fusion Garage made

19   its allegedly false advertising statements about the JooJoo on December 7, 2009, Plaintiffs had

20   already ended their own "CrunchPad" web tablet project.  *See* Doolittle Decl., Ex. C ("The End of

21   the CrunchPad," blog post, November 30, 2009 (describing Plaintiffs' abandonment of product)).

22   Nor does Plaintiffs' Complaint plead specific facts showing that Plaintiffs are developing a web

23

---

24   [5]   As for the type of dismissal that should be granted, a failure to establish standing arguably

25   implicates the Court's subject-matter jurisdiction and would warrant dismissal under Rule
     12(b)(1).  However, the Ninth Circuit has held that a 12(b)(6) dismissal of Lanham Act claims is

26   appropriate when plaintiff cannot allege competitive injury and thus lacks standing.  *See Barrus v.*

27   *Sylvania*, 55 F.3d 468, 469 (9th Cir. 1995) (affirming district court's 12(b)(6) dismissal of such
     claims).  In any event, Fusion Garage moves to dismiss on both 12(b)(1) and 12(b)(6) grounds.

28

tablet to compete with Fusion Garage's JooJoo product or that Fusion Garage's statements are otherwise "harmful to the plaintiffs' ability to compete with the defendant." *Jack Russell Terrier*, 407 F.3d at 1037.

The Complaint makes a conclusory, single-sentence allegation that "TechCrunch and Defendant, although once collaborators in a joint project aimed at developing and commercializing the CrunchPad, *are now competitors* in developing their own separate products." (Cmpl., ¶ 65 (emphasis added)).  Plaintiffs do not plead any facts in support of this allegation. The Complaint makes no reference to any "separate product" that Plaintiffs developed or commercialized or are in the process of developing.  Similarly, apart from this single unsupported allegation, the Complaint makes no reference to any ongoing competition between Plaintiffs and Fusion Garage.  To the contrary, Plaintiffs allege that they have some vague ownership right in *Fusion Garage's product*.

Plaintiffs' unsubstantiated allegation that they are "competitors in developing their own separate products" is precisely the sort of "naked assertion[] devoid of further factual enhancement" that is insufficient to satisfy Plaintiffs' pleading burden or ward off Rule 12(b)(6) dismissal. *Iqbal*, 129 S.Ct. at 1949.  Indeed, a bare assertion that plaintiff and defendant are competitors, unsupported by specific facts, is insufficient to confer standing under the Lanham Act.  *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1302-03 (S.D. Cal. 2003).  As *Von Grabe* ruled:

> In an attempt to meet the standing requirements of the Act, Plaintiff alleges that he 'is a competitor of Sprint in the area of 3G/GPS technologies [] and is the inventor named in a patent application covering a method for 3G/GPS-based traffic mapping.'  However, the facts which Plaintiff puts forth in support of the Lanham claim appear to arise solely from his relationship with Sprint as a consumer . . . Defendant's motion to dismiss Plaintiff's Lanham Act claims is GRANTED.

*Von Grabe*, 312 F. Supp. 2d at 1302-03.

As in *Von Grabe*, Plaintiffs' conclusory assertion that they are "competitors" with Fusion Garage is insufficient to establish standing under the Lanham Act.  Accordingly, the claim should be dismissed.

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT**

**B.** **Plaintiffs Cannot Make Out a False Advertising Lanham Act Premised on True Statements**

Plaintiffs' False Advertising claim also fails because the allegations in the Plaintiffs' Complaint reveal that the supposed "false statements" are true. Of the eleven allegedly false or misleading advertising statements that Plaintiffs cite to in their Complaint (*see id.* at ¶ 61), many of these statements address the lack of a merger deal or other agreement between the parties. *See id.* ("We had many discussions about a future potential deal whereby TechCrunch would acquire our company, but nothing tangible ever came of that . . . Many conversations did take place about a possible acquisition of Fusion Garage by TC . . . but nothing ever came out of the discussions as we were never able to reach an agreement for a mutually agreeable business deal . . . There was never any agreement of any kind between the two companies.").

As Plaintiffs' own Complaint show that these statements are true, they cannot form the basis for false advertising claim.

| Statement | True? | Allegations Showing It's True |
|---|---|---|
| "We had many discussions about a future potential deal whereby TechCrunch would acquire our company, but nothing tangible ever came of that." Cmpl ¶ 61. | Yes | Cmpl. ¶¶ 26-29, 41-42 & Exs. B-D<br><br>These allegations show there were "discussions about a future potential deal whereby TechCruch would acquire" Fusion Garage but nothing was ever finalized. |
| "Many conversations did take place about a possible acquisition of Fusion Garage by TC and TC even set up a company called CrunchPad, Inc. which would have been the vehicle for the acquisition but nothing ever came out of the discussions as we were never able to reach an agreement for a mutually agreeable business deal." Cmpl ¶ 61. | Yes | Cmpl. ¶¶ 4, 26-29, 41-42.<br><br>These allegations show there were discussions about a possible acquisition and that the parties were never "able to reach an agreement for a mutually agreeable business deal." Moreover, Plaintiffs specifically allege that CP, Inc. was set up to "commercialize the CrunchPad project." Cmpl. ¶ 4. |
| "There was never any agreement of any kind between the two companies. This was nothing more than a potential acquisition that didn't occur as the parties would never come to terms." Cmpl. ¶ 61. | Yes | Cmpl. ¶¶ 26-29, 41-42.<br><br>The Complaint does not allege the existence of an agreement, nor does it attach or allege a signed contract of any kind. These allegations show the parties could not come to terms. |
| "Nothing has been signed, nothing was ever on the table." Cmpl. ¶ 61. | Yes | *See generally* Cmpl.<br><br>The Complaint does not attach any signed |

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT**

agreement, nor is one alleged to exist.

While Fusion Garage made statements that no merger deal or agreement existed between the parties, Plaintiffs have alleged no facts suggesting that any such agreement did, in fact, exist. Likewise, while Plaintiffs allege that the parties became partners by operation of law, (*id.* at ¶ 74), they do not plead the existence or terms of any specific *agreement* between the parties. *See Kloke v. Pongratz*, 38 Cal. App. 2d 395, 401 (Cal. App. 1940) ("A contract of copartnership being similar to any other type of contract must be proved in the same manner by substantial evidentiary facts.").

Plaintiffs attach a June 2009 e-mail by Mr. Rathakrishnan supposedly showing that he "agreed" to a proposed merger in which Fusion Garage would receive 35% of CP, Inc., (Cmpl. ¶ 29 and Ex. B), but the rest of the Complaint makes clear that no merger was ever consummated. For instance, Paragraph 50 of the Complaint explains that the June 2009 correspondence was, if anything, an "agreement to agree" in the future rather than an enforceable merger agreement itself. *See id.* ("Defendant promised TechCrunch that it *would agree* to a merger with CrunchPad Inc. under which Defendant's owners and investors would receive no more than 35 percent of the stock in the merged entity.") (emphasis added)). Moreover, months later in November 2009, the parties were still exchanging offers and counteroffers over the potential merger, thus indicating that no merger had yet been consummated. *Id.,* Ex. D (e-mail from Arrington to Rathakrishnan, Nov. 29, 2009 6:59 a.m.) ("We have not come back to you with any counter offer…").

Simply put, Fusion Garage's statements that the parties had merger discussions and conversations but never consummated a deal are categorically true. Accordingly, the Court should dismiss Plaintiffs' false advertising claim to the extent that it relies on Fusion Garage's statements about the lack of a merger deal or other agreement between the parties. In the alternative, the Court should strike those allegations of the complaint on which the false advertising claim cannot be predicated. Fed. R. Civ. P. 12(f); *CollegeNet, Inc. v. Embark.com, Inc.*, 230 F. Supp. 2d 1167, 1176-78 (D. Or. 2001) (granting motion to strike certain allegedly false statements that could not support Lanham Act claim for false advertising).

**C.**      **Plaintiffs Cannot Make Out a Lanham Act Claim Premised on Fusion Garage's Statements About Its Inventorship of Its Product**

The remaining statements cited in paragraph 61 of the Complaint cannot support a Lanham Act claim for a separate reason: they concern inventorship and do not constitute material misrepresentations about "the nature, characteristics, and qualities of the goods and commercial activities of both Defendant and TechCrunch." (Cmpl. ¶ 66). The advertising statements that Plaintiffs rely on discuss "goods" – *i.e.*, products – only in the context of stating Fusion Garage's central role in creating the JooJoo product. *Id.* ("We hired in the necessary expertise to make key hardware design decisions and developed the hardware platform on our own. We solved the remaining technical issues and developed a new and more finished prototype . . . we took all the risk, did all the work needed to move forward and bring the product to market . . . Fusion Garage made all the hardware design decisions for the final prototype and getting a successful contractual relationship with an ODM"). In other words, these statements credit Fusion Garage with the primary inventorship of the product.

Yet statements about the authorship or inventorship of a product cannot give rise to false advertising liability under the Lanham Act. *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009) (relying on *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1337 (9th Cir. 2008) to hold that Ninth Circuit law provides that false statements about authorship of product or technology cannot violate the Lanham Act). In *Baden Sports*, *supra*, Baden brought false advertising claims under the Lanham Act alleging that "Molten falsely claimed that Molten, not Baden, created the innovation known as dual-cushion technology. Baden argued that Molten's advertisements were false because Molten was not the source of the innovation." *Id.* at 1307. Applying Ninth Circuit law,[6] the Federal Circuit held that Molten's

---

[6] The *Baden Sports* Court applied Ninth Circuit law because the lawsuit originated from the Western District of Washington, within the Ninth Circuit. *See id.* at 1304. The Federal Circuit specifically relied upon *Sybersound Records, supra,* in explaining why allegedly false statements about a product's authorship could not work a Lanham Act violation under Ninth Circuit law. *See Baden Sports*, 556 F.3d at 1307.

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT**

1   alleged misrepresentations could not work a Lanham Act violation because they addressed only

2   the "authorship" of the product at issue and not the "nature, characteristics, or qualities" of that

3   product.  *Id.*; *see also Robert Bosch LLC v. Pylon Mfg. Co.*, 632 F. Supp. 2d 362, 366 (D. Del.

4   2009) ("Plaintiff's first claim for false advertising boils down to defendant's advertisement that it

5   developed a 'frameless all-weather wiper blade' and, by implication, Bosch did not develop the

6   said frameless wiper blade.  This court, and other courts, have found that 'false attribution of the

7   authorship' of an invention or innovation is not an actionable false advertisement under § 43(a) of

8   the Lanham Act.").

9          As in *Baden* and *Robert Bosch*, Fusion Garage's statements that it (rather than

10  TechCrunch) developed the JooJoo and its predecessors do not address the "nature, characteristics,

11  or qualities" of those products.  Accordingly, these statements cannot give rise to a Lanham Act

12  claim for false advertising.

13         **D.      Plaintiffs Cannot Allege a Lanham Act Claim Based on Statements About a
                     Non-Party Individual**

14         Finally, the last two statements alleged to constitute false advertising concern Michael

15  Arrington, not any Plaintiff here.  (Cmpl. ¶ 61, bullet 10 ("Michael made many promises, many

16  assurances suggesting that he would deliver on the hardware, deliver on the software, deliver on

17  the funding, none of which came through.  And we had been working with him for the last one

18  year trying to strike a deal but nothing came out of [inaudible].  Despite those assurances, nothing

19  happened."); *Id.*, bullet 11 ("Michael did not deliver on his promises.")).

20         Arrington is not a party to this lawsuit.  Plaintiffs cannot allege a false advertising claim on

21  his behalf and cannot state a false advertising claim based on statements about a *person* in any

22  event.  15 U.S.C. § 1125(a)(1)(B).  Accordingly, the Court should dismiss the Lanham Act claim

23  or, at a minimum, strike the statements concerning Arrington.  *CollegeNet, Inc.*, 230 F. Supp. 2d at

24  1176-78 (striking certain allegedly false statements that could not false advertising claim).

25  **IV.    PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY FAILS**

26         **A.      The Complaint Is Too Vague and Uncertain To State a Fiduciary Duty Claim**

27         Plaintiffs' Second Cause of Action is for "Breach of Fiduciary Duty."  Yet this claim

28

04049.51632/3296420.3

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

should be dismissed—or a more definite statement should be ordered—because it is fatally imprecise as to whom Fusion Garage allegedly owed a fiduciary duty.  Indeed, the Complaint is internally inconsistent—suggesting at times that Fusion Garage owed a duty to both TechCrunch and CP, Inc., while suggesting at other times that Fusion Garage owed its duty to one or the other entity, or to Michael Arrington, the blogger and founder of TechCrunch.

For instance, the Complaint alleges that "Defendant had a fiduciary duty to deal with TechCrunch at all times with the highest loyalty and the utmost good faith".  (Cmpl., ¶ 78).  However, the Complaint elsewhere states that "[t]his complaint uses 'TechCrunch' to refer to both Interserve, Inc. [dba TechCrunch] and CrunchPad, Inc."  (*Id.* ¶ 5).  Thus, taking these paragraphs in isolation, it would appear that the Complaint alleges a fiduciary duty between *three* parties: Defendant Fusion Garage and both Plaintiffs.

Yet the more specific allegations in the Second Cause of Action imply that the alleged fiduciary duties involved only *two* companies, not three.  For instance, the Second Cause of Action alleges that "Defendant and TechCrunch jointly managed and controlled their undertaking to develop and market the CrunchPad, with representatives from *both* companies participating in making important decisions . . ." (*Id.* ¶ 72) (emphasis added).  Similarly, the Second Cause of Action alleges that "Defendant and TechCrunch also agreed and expected that they would *both* benefit from the profits in selling the CrunchPad to consumers."  (*Id.* ¶ 75) (emphasis added).  The use of the word "both" implies that the fiduciary duty recited in these paragraphs ran between only *two* entities, one of which is Defendant Fusion Garage.  However, the Complaint nowhere specifies whether the other entity is Plaintiff Interserve Inc. dba TechCrunch or Plaintiff CP, Inc.

Adding to the confusion, the Complaint repeatedly uses the amorphous term "the project" to refer to the alleged joint venture.  (*See*, *e.g*., Cmpl. ¶¶ 15, 18, 20 & 28.)  The Complaint goes so far as to allege "the project had constructed a Prototype B,"  (*id.* ¶ 18), indicating that the "the project" was the business entity developing the web tablet.  Other times, the Complaint alleges that the project" was the product that was being developed.  (*Id.* ¶ 20 ("[a]s part of the joint development of the project.")  Accordingly, it is unclear if Plaintiffs claim that Fusion Garage owed fiduciary duties to TechCrunch, CP, Inc., or "the project"—and if the latter, how Fusion

-17-
**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

1    Garage could owe fiduciary duties to a product.

2        Similarly, the Complaint does not specify when "the project" began, when Fusion Garage

3    joined the project, or when Fusion Garage became subject to fiduciary duties by virtue of its work.

4    Indeed, the Complaint alleges that "the project" existed before Mr. Rathakrishnan of Fusion

5    Garage had even been introduced to TechCrunch or Mr. Arrington in September 2008.  (*Id*. ¶ 12).

6        Finally, while Plaintiffs chose not to make Mr. Arrington a party plaintiff, he figures

7    prominently in the Complaint.  The Complaint implies that Plaintiffs may believe fiduciary duties

8    were owed to him.  However, his role in "the project" remains unclear given that Plaintiffs allege

9    Heather Harde was CEO of TechCrunch, while Ms. Harde seemed to believe that Mr. Arrington

10   was "CEO of the business."  (*Compare* Cmpl. ¶ 15 *with* Cmpl., Ex. D. (Harde email)).

11       Because the Second Cause of Action is hopelessly ambiguous as to whom Fusion Garage

12   owed a fiduciary duty, and internally inconsistent regarding whether Fusion Garage owed a

13   fiduciary duty to one or both Plaintiffs, Mr. Arrington, or "the project," this Cause of Action fails.

14   *See, e.g., Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting that dismissal is

15   appropriate if complaint is "so confused, ambiguous, vague, or otherwise so unintelligible that its

16   true substance, if any, is well-disguised.")  Accordingly, the Court should dismiss the claim under

17   Rule 12(b)(6) or, at a minimum, order a more definite statement of the claim pursuant to Federal

18   Rule of Civil Procedure 12(e).  Specifically, the Court should order Plaintiffs to articulate:

19   (a) which Plaintiff (or non-party) Fusion Garage allegedly owed fiduciary duties to; (b) to which

20   Plaintiff (or non-party) Fusion Garage allegedly breached its duties; and (c) which Plaintiff (or

21   non-party) was harmed by the alleged breach.

22       **B.    Plaintiffs' Joint Venture Allegations Are Inconsistent With Arrington's
              Threats To Terminate "the Project"**

23

24       Finally, Plaintiffs' allegations that Fusion Garage was working in a joint venture with them

25   contradict their allegations that Michael Arrington tried to control "the project" by unilaterally

26   threatening to end "the project" on numerous occasions.  (Cmpl. ¶ 28 ("For reputational reasons

27   I'm forced to notify our investors the deal is off.  At this point it looks like our position is to turn

28   the project off completely."); *id*. ¶ 32 ("On August 31 . . . TechCrunch again threatened to shut

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

1   down the collaboration.")).  Plaintiffs' breach of fiduciary duty claim, premised on a partnership

2   or joint venture, is flatly inconsistent with TechCrunch's and Arrington's position that they had

3   the unilateral ability to "turn the project off completely" because the fiduciary duties in a

4   partnership or joint venture are reciprocal.  *See Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524-

5   525 (Cal. App. 2008) ("partners or joint venturers have a fiduciary duty to act with the highest

6   good faith *towards each other* regarding affairs of the partnership or joint venture.") (emphasis

7   added).  Yet Plaintiffs' position appears to be that Fusion Garage had a fiduciary duty to sustain

8   the alleged partnership or joint venture while TechCrunch and Arrington could end the

9   relationship at any time.  Such asymmetry is inconsistent with a partnership or joint venture under

10   California law.

## V.   PLAINTIFFS' CLAIM FOR FRAUD AND DECEIT FAILS

12       It is axiomatic that a plaintiff must plead fraud with heightened particularity.  Fed. R. Civ.

13   P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

14   constituting fraud or mistake."); *Mangindin v. Washington Mutual Bank*, 637 F. Supp. 2d 700,

15   706-07 (N.D. Cal. 2009) (Ware, J.) (dismissing fraud claims on 9(b) grounds).  To satisfy Rule

16   9(b) in the Ninth Circuit, allegations must be stated with "specificity including an account of the

17   time, place, and specific content of the false representations as well as the identities of the parties

18   to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  The

19   allegations must be "specific enough to give defendants notice of the particular misconduct…so

20   that they can defend against the charge and not just deny that they have done anything wrong."

21   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted).

22       Plaintiffs' pleading falls well short of satisfying a 9(b) standard.  To begin with, the

23   allegations in the actual claim are all "incorporation by reference" or conclusory allegations.

24   (Cmpl. ¶ 92-101.)  Compounding the confusion, the incorporation by reference allegation is *blank*

25   so that Fusion Garage does not know which background allegations make up the fraud claim.  *Id.*

26   ¶ 92 ("TechCrunch incorporates by reference and realleges paragraphs 1 through __ above.").

27   Furthermore, there is no description of the "time, place, and specific content of the false

28   representations" to satisfy Rule 9(b).  *Swartz*, 476 F.3d at 764.  Turning to the vague background

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

04049.51632/3296420.3

allegations upon which Plaintiffs appear to premise their fraud claim, the Complaint fails in several respects.

### A.    <u>Fusion Garage Did Not Misrepresent the Prospects of a Joint Venture</u>

Plaintiffs' Complaint contains a smattering of allegedly fraudulent and deceitful representations and promises that Fusion Garage made, most of which relate to Plaintiffs' general allegation that "Defendant misrepresented its intention to continue working on the joint project in collaboration with TechCrunch.  Defendant made the misrepresentations while secretly making its own plans to divert the joint project to its own exclusive purposes and to exclude TechCrunch from the project."  (Cmpl. ¶ 52).  Essentially, Plaintiffs allege that Fusion Garage "led them on" with the false promise of a joint venture while planning all the while to "steal the CrunchPad from under TechCrunch's nose."  (*Id*. ¶ 45).

Plaintiffs cannot make out a claim for fraud or deceit based on these allegations, because the attachments to Plaintiffs' own Complaint make perfectly clear that Fusion Garage did *not* "misrepresent[] its intention to continue working on the joint project . . . while secretly making its own plans to divert the joint project to its own exclusive purposes."  Because Plaintiff's claim is flatly contradicted by the attachments to its own Complaint, this claim should be dismissed.  *See generally Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint.  These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim.") (citation omitted).

Specifically, Plaintiffs' allegations are refuted by the email correspondence attached as Exhibit D to the Complaint.  These e-mails show that Fusion Garage's outside investors privately expressed frustration with Fusion Garage's CEO and the proposed terms being discussed with Plaintiffs in the ongoing merger negotiations.  (Cmpl., Ex. D (e-mail from Lee to Rathakrishnan, Nov. 17, 2009 11:51 p.m.) ("You have argued an offer of 25% *on their behalf* until you were blue in the face – suggesting that Michael Arrington/TechCrunch would bring connections, funding and marketing valuable in bringing the device to market faster.") (emphasis added)).  Moreover, when the outside investors finally grew impatient and demanded that Fusion Garage strike a harder

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

bargain or launch its product without Plaintiffs' marketing support, Fusion Garage immediately forwarded this internal correspondence to Arrington. *See id.* (e-mail from Rathakrishnan to Arrington, Nov. 17 2009 2:50 p.m. (forwarding Lee's message to Rathakrishnan)).  Far from establishing that Fusion Garage was leading Plaintiffs on, the attachments to the Complaint show that Fusion Garage's outside investors would not accept Plaintiffs' proposed merger terms—a message that Fusion Garage promptly forwarded to Plaintiffs.  Plaintiffs cannot proceed on a fraud and deceit claim that is flatly contradicted by the attachments to its own Complaint, since the attached documents are *part* of the Complaint and render the Complaint internally inconsistent. *See First Advantage Background Serv's Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 944 (N.D. Cal. 2008) (dismissing fraud claim that "is internally inconsistent.").  Thus, to the extent the fraud claim rests on allegations that Fusion Garage falsely promised a joint venture while secretly planning to strike out alone, this claim is inconsistent with Plaintiff's own Complaint and should be dismissed.

### B.   Plaintiffs Have Not Pled Proximate Damage From Fusion Garage's Other Alleged Misrepresentations

The only other "misrepresentations" that Plaintiffs cite to for their fraud and deceit claim involve: (1) Fusion Garage allegedly misrepresenting its qualifications prior to the joint venture; (2) Fusion Garage allegedly overstating the cost of a few hardware components; and (3) Fusion Garage allegedly hiding the termination of its relationship with Pegatron Corp., an original device manufacturer.  (Cmpl. ¶¶ 47-49, 51, 53).  Assuming (for purposes of this motion only) that Fusion Garage *did* misrepresent its qualifications, overstate component costs, and hide the loss of Pegatron, these misrepresentations cannot give rise to a fraud or deceit claim because Plaintiffs have not adequately pled that these misrepresentations were the proximate cause of any damages to Plaintiffs.  *Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 65 (Cal. App. 2007) ("To recover for fraud, a plaintiff must prove loss proximately caused by the defendant's tortious conduct"); *O'Hara v. Western Seven Trees Corp.*, 75 Cal. App. 3d 798, 804 (Cal. App. 1977) ("To state an action for deceit or fraud, a plaintiff must allege a misrepresentation . . . and damages alleged must be a proximate result.")

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT**

### 1.   Fusion Garage's Alleged Misrepresentation of its Credentials

Plaintiffs have not articulated how they were proximately damaged by Fusion Garage's alleged misrepresentation of its credentials, given their admission that Fusion Garage was successful in creating both viable product prototypes and a viable final product.  For instance, Arrington publicly stated that with respect to a prototype of the product, "all the credit should go to Fusion Garage."  (Cmpl. ¶ 22).  Two months later, a new prototype was unveiled for which Arrington announced that "Fusion Garage continues to drive the software forward."  (*Id.* ¶ 24). And by November 17, 2009, Plaintiffs allege that Fusion Garage was allegedly just three days away from final product launch.  (*Id.* ¶ 38).  Fusion Garage's admitted success belie any suggestion that Plaintiffs were proximately harmed by Fusion Garage's alleged puffery of its credentials.  To the extent Plaintiffs' fraud claim is based on such allegations, no claim has been stated.

### 2.   Fusion Garage's Alleged Overstating of Component Costs

Similarly, Plaintiffs have not articulated how they were damaged by Fusion Garage allegedly overstating certain component costs by $20-$30.  (Cmpl. ¶ 51).  Plaintiffs do not, for instance, allege that they paid the inflated cost quoted by Fusion Garage.  They simply allege that, after visiting Pegatron's headquarters, they realized that the actual component costs were $20-$30 lower that Fusion Garage had reported to them.  Plaintiffs' failure to allege any damages from this misrepresentation prevents Plaintiffs from using this misrepresentation as the basis for a fraud or deceit claim.  *Fladeboe*, 150 Cal. App. 4th at 65.

### 3.   Fusion Garage's Alleged Concealment of the Loss of Pegatron

Finally, Plaintiffs do not articulate how they were damaged by Fusion Garage allegedly concealing the loss of Pegatron as a possible manufacturer.  They state in conclusory fashion that the loss of Pegatron "was a blow to the hardware development and manufacturing plans of the joint project," (Cmpl. ¶ 53), but they provide no facts to support this assertion.  Indeed, while Pegatron allegedly terminated its relationship with Fusion Garage in "the fall of 2009," (*id.*), Plaintiffs claim that the product was ready for final launch by November 20, 2009.   (*Id.* ¶ 56).

In the final analysis, Plaintiffs' claim for fraud fails.  To the extent that Plaintiffs base this

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,
AND MOTION FOR A MORE DEFINITE STATEMENT**

1   claim on the allegation that Fusion Garage misrepresented its intent to enter a joint venture,

2   Exhibit D to the Complaint shows that Fusion Garage was completely honest, transparent, and

3   aboveboard.  And to the extent that Plaintiffs base this claim on any alleged misrepresentations

4   about Fusion Garage's credentials, component costs, or the loss of Pegatron, Plaintiffs have failed

5   to show how they were proximately damaged by these representations.

6   **VI.   PLAINTIFFS' CLAIM FOR FALSE ADVERTISING AND UNLAWFUL**
        **BUSINESS PRACTICES UNDER CALIFORNIA LAW FAILS**

7           Finally, Plaintiffs bring a claim for "unlawful business practices and false advertising

8   against Plaintiffs in violation of California Business and Professions Code sections 17200 and

9   17500 and under the common law."  (Cmpl. ¶ 103).  But Plaintiffs base this claim on the same

10  facts that undergird their other claims, (*id.*), so this claim fails for the same reasons that their other

11  claims fail.

12          For the same reasons that Plaintiff's Lanham Act false advertising claim fails, its 17500

13  false advertising claim fails.  *See*, *e.g.*, *Harper v. 24 Hour Fitness, Inc.*, 167 Cal. App. 4th 966, 975

14  (Cal. App. 2008) (standing to bring section 17500 claim is limited to "any person who has

15  suffered injury in fact and has lost money or property as a result [of the false advertising].").

16  Plaintiffs' claim for "unlawful business practices" under Section 17200 also fails to state a claim.

17  The California Supreme Court has explained that "[b]y proscribing 'any unlawful business

18  practice,' section 17200 'borrows' violations of other laws and treats them as unlawful practices

19  that the unfair competition law makes independently actionable."  *Cel-Tech Comm'ns, Inc. v.*

20  *Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks

21  omitted).  Because Plaintiffs' *other* claims all fail, there is no violation left to "borrow" for an

22  unlawful business practices claim under section 17200.[7]

23

24  _____

25  [7]  Section 17200 also prohibits "unfair" and "fraudulent" business practices.  *Id.*  Plaintiffs have
    not brought their claim under the "unfair" or "fraudulent" prongs of Section 17200, but any

26  attempt to do so would be equally meritless.  "[T]he word 'unfair' in that section [17200] means
    conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of

27  one of those laws because its effects are comparable to or the same as a violation of the law, or
    otherwise significantly threatens or harms competition."  *Cel-Tech*, 20 Cal. 4th at 187.  Plaintiffs

28  do not allege an antitrust or quasi-antitrust violation.  Plaintiffs have also not pled the "fraudulent"
    (footnote continued)

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE,**
**AND MOTION FOR A MORE DEFINITE STATEMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Conclusion*

For the foregoing reasons, Defendant Fusion Garage respectfully requests that the Court dismiss Plaintiffs' claims or, in the alternative, order a more definite statement and strike certain allegations in the Complaint.

DATED: January 28, 2010                    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By  */s/ Patrick Doolittle*_____
     Patrick C. Doolittle
     Attorney for Defendant FUSION GARAGE
     PTE. LTD

_____

prong of Section 17200.  *See* Section V, *supra.*

**DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT**