1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Claude M. Stern (Bar No. 96737)
2    claudestern@quinnemanuel.com
     Patrick Doolittle (Bar No. 203659)
3    patrickdoolittle@quinnemanuel.com
   50 California Street, 22nd Floor
4  San Francisco, California  94111
   Telephone:    (415) 875-6600
5  Facsimile:    (415) 875-6700

6  Attorneys for Defendant Fusion Garage PTE Ltd.

7

8                           UNITED STATES DISTRICT COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10                                  SAN JOSE DIVISION

| | |
|---|---|
| INTERSERVE, INC. dba TECHCRUNCH, a Delaware corporation, and CRUNCHPAD, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>   vs.<br><br>FUSION GARAGE PTE LTD., a Singapore company,<br><br>        Defendant. | CASE NO. C 09-cv-5812 JW (PVT)<br><br>**FUSION GARAGE'S MOTION FOR PROTECTIVE ORDER PENDING PLAINTIFFS' IDENTIFICATION OF ITS ALLEGEDLY MISAPPROPRIATED TRADE SECRETS;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  March 16, 2010<br>Time:  10:00 a.m.<br>Judge: Hon. Patricia Trumbull |

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | Please take notice that on March 16, 2010, at 10:00 a.m. in the Courtroom of the |
| 3 | Honorable Patricia Trumbull of the United States District Court for the Northern District of |
| 4 | California, San Jose Division, 280 South 1st Street, San Jose, California, 95113, Defendant Fusion |
| 5 | Garage PTE, Ltd. will, and hereby does, move for a protective order pursuant to California Code |
| 6 | of Civil Procedure § 2019.210 and Federal Rule of Civil Procedure 26. |
| 7 | The basis for this motion is that (1) Plaintiffs are seeking discovery of Fusion Garage's |
| 8 | highly confidential trade secrets, proprietary information, and confidential information and |
| 9 | discovery; (2) Plaintiffs have asserted a trade secrets complaint (without calling it a trade secrets |
| 10 | complaint) and have not disclosed the alleged trade secrets that they allege Fusion Garage |
| 11 | misappropriated; and (3) absent a protective order, Plaintiffs will obtain Fusion Garage's |
| 12 | confidential information and then seek to claim ownership in such information and re-cast their |
| 13 | claims. |
| 14 | This motion is based on this Notice of Motion and Motion, the attached Memorandum of |
| 15 | Points and Authorities, the pleadings in this action, the Declaration of Patrick Doolittle, and such |
| 16 | other matters and argument as the Court may consider at the time of the hearing hereon. |

## NOTICE OF MOTION AND MOTION

Please take notice that on March 16, 2010, at 10:00 a.m. in the Courtroom of the Honorable Patricia Trumbull of the United States District Court for the Northern District of California, San Jose Division, 280 South 1st Street, San Jose, California, 95113, Defendant Fusion Garage PTE, Ltd. will, and hereby does, move for a protective order pursuant to California Code of Civil Procedure § 2019.210 and Federal Rule of Civil Procedure 26.

The basis for this motion is that (1) Plaintiffs are seeking discovery of Fusion Garage's highly confidential trade secrets, proprietary information, and confidential information and discovery; (2) Plaintiffs have asserted a trade secrets complaint (without calling it a trade secrets complaint) and have not disclosed the alleged trade secrets that they allege Fusion Garage misappropriated; and (3) absent a protective order, Plaintiffs will obtain Fusion Garage's confidential information and then seek to claim ownership in such information and re-cast their claims.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings in this action, the Declaration of Patrick Doolittle, and such other matters and argument as the Court may consider at the time of the hearing hereon.

## STATEMENT OF ISSUES (Civ. L. R. 7-4(a)(3))

1. Should Plaintiffs be required to identify the alleged trade secrets or other confidential information that they allege Fusion Garage misappropriated before Fusion Garage is required to provide discovery of its confidential, proprietary, and trade secret information?

2. Should the Court enter a protective order to prevent Plaintiffs from obtaining Fusion Garage's confidential information in discovery and then claiming such information is Plaintiffs property and re-casting their claims?

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

*Preliminary Statement* ............................................................................................................ 1

*Factual Allegations and Procedural Background* ................................................................. 2

*Argument* ................................................................................................................................ 7

I.   THE COURT SHOULD ENTER A PROTECTIVE ORDER PURSUANT TO SECTION 2019.210 ............................................................................................................ 7

    A.   The Requirements and Purposes of Section 2019.210 ............................................ 7

    B.   Plaintiffs Claim Is a Trade Secrets Claim With a Different Label ......................... 8

        1.   Plaintiffs' Discovery Requests Reveal They are Prosecuting a Trade Secrets Claim ............................................................................................. 8

        2.   Plaintiffs' Claims Are Preempted by the UTSA ........................................... 9

    C.   Plaintiffs Should Be Able to Identify the Allegedly Misappropriated Information At Issue Here If Their Claim Was Filed in Good Faith ..................... 10

II.  THE COURT SHOULD ENTER A PROTECTIVE ORDER PURSUANT TO RULE 26 AND ITS INHERENT POWERS ................................................................... 10

*Conclusion* ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
 260 F. Supp. 2d 941 (N.D. Cal. 2003) ..........................................................................9

*AirDefense, Inc. v. AirTight Networks, Inc.*,
 No. 05-4615, 2006 WL 2092053 (N.D. Cal. 2006) ........................................................9

*Brescia v. Angelin*,
 172 Cal. App. 4th 133 (2009) ......................................................................................10

*Cadence Design Sys., Inc. v. Avant! Corp.*,
 29 Cal. 4th 215 (2002) ..................................................................................................9

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*,
 318 F. Supp. 2d 216 (D. Del. 2004) ............................................................................10

*Computer Econ., Inc. v. Gartner Group*,
 50 F. Supp. 2d 980 (S.D. Cal. 1999) .............................................................................7

*Digital Envoy, Inc. v. Google, Inc.*,
 370 F. Supp. 2d 1025 (N.D. Cal. 2005) ........................................................................9

*Diodes, Inc. v. Franzen*,
 260 Cal. App. 2d 244 (1968) ........................................................................................7

*Neothermia Corp. v. Rubicor Med., Inc.*,
 345 F. Supp. 2d 1042 (N.D. Cal. 2004) ........................................................................7

*Perlan Therapeutics, Inc. v. Super. Ct. (Nexbio)*,
 178 Cal. App. 4th 1333 (2009) ............................................................................7, 8, 10

**Statutes**

Cal. Civ. Code § 3426.7(b) ......................................................................................................9

Fed. R. Civ. P. 11 ...................................................................................................................10

Fed. R. Civ. P. 26(c)(1)(G) .....................................................................................................10

# MEMORANDUM OF POINTS AND AUTHORITIES

## *Preliminary Statement*

Plaintiffs Interserve, Inc., dba TechCrunch ("TechCrunch") and CrunchPad, Inc. ("CP, Inc.") have filed a trade secrets case without calling it a trade secrets case. Rather, they have invented a claim for "misappropriation of business ideas," claiming that Fusion Garage incorporated certain business ideas of TechCrunch (a web blog) or Michael Arrington (TechCrunch's founder) into Fusion Garage's product. Plaintiffs have also alleged claims for false advertising, breach of fiduciary duty, and fraud.

After filing their complaint, Plaintiffs moved for expedited discovery. Among other things, Plaintiffs are seeking discovery of Fusion Garage's source code and other highly proprietary information, even though there is no allegation that Plaintiffs ever wrote, contributed, or provided a single line of code to Fusion Garage.

Plaintiffs' strategy here is obvious: because they have no trade secrets of their own, they have filed a vague "placeholder" complaint,[1] demanded discovery of Defendant's proprietary information, and will then point to Fusion Garage's confidential information as Plaintiffs' trade secrets in an amended pleading. The Court should not countenance this strategy. Plaintiffs in trade secrets cases must identify the trade secrets that they allege were misappropriated with particularity <u>before</u> commencing trade secrets discovery. The Court should not allow Plaintiffs to go on a fishing expedition into Defendant's technology and proprietary information by asserting a trade secrets complaint with a different label. <u>Indeed, there is no reason for Plaintiffs to be seeking Fusion Garage's source code and other highly confidential and proprietary information based on the current claims in the Complaint unless they are simply trying to make an "end run" around the trade secret identification requirement</u>.

Plaintiffs should not need the benefit of discovery to identify what they allege was misappropriated. This case arises out of a failed merger—Plaintiffs contend that they were part of

---

[1] The complaint appears to be a hastily-drafted pleading as it contains blanks, conflates the identities of the Plaintiffs, and is generally vague and uncertain.
04049.51632/3307380.1 -1- Case No. C 09-cv-5812 JW
MOTION FOR PROTECTIVE ORDER

an alleged collaboration with Fusion Garage that lasted approximately one year until the merger discussions broke down. While Plaintiffs claim to have part ownership in some unspecified intellectual property of Fusion Garage, they do not allege the existence of any contract at all between the parties. However, given their allegation that the parties were working shoulder-to-shoulder as part of some vague and informal "collaboration," "joint venture," or "project" that lasted one year, Plaintiffs should be able to easily identify the trade secrets or other proprietary information that they claim Fusion Garage misappropriated.

In short, Plaintiffs filed a legally defective pleading as a vehicle to access Defendant's technology and then claim ownership in it. The Court should enter a protective order pursuant to California Code of Civil Procedure § 2019.210 or Federal Rule of Civil Procedure 26 to forestall this tactic.

*Factual Allegations and Procedural Background*

**Summary.** Fusion Garage is being sued by a self-described Internet "blog," TechCrunch, founded by blogger Michael Arrington. Mr. Arrington also formed another company, Plaintiff CP, Inc. to acquire Defendant Fusion Garage. After the parties' merger talks fell through, Plaintiffs filed this lawsuit to disrupt Fusion Garage's introduction of its product into the market. Plaintiffs alleged a Lanham Act claim and claims for breach of fiduciary duty, misappropriation of business ideas, fraud, and unfair competition. Plaintiffs now seek access to Fusion Garage's confidential and proprietary information. Fusion Garage has filed motions to dismiss, to strike, and for a more definite statement regarding Plaintiffs' vague complaint.

**The TechCrunch Blog and Arrington's Internet Post**. Plaintiff TechCrunch is a publisher of technology-oriented blogs and other web media. (Cmpl. ¶ 3). Its founder and editor is Michael Arrington. In July 2008, Arrington publicly posted a challenge on the Internet "to himself and the world" to build "a dead simple web tablet for $200." (*Id.* ¶ 11). He solicited the public at large to assist on the project and stated "[i]f everything works well, we'd then open source the design and software and *let anyone build one that wants to*." (*Id.*)[2] TechCrunch

---

[2] The full text of Arrington's challenge can be found at: http://www.techcrunch.com/2008/07/21/we-want-a-dead-simple-web-tablet-help-us-build-it/.

eventually planned to call the web tablet a "CrunchPad." (*Id*. ¶¶4 & 13). At some point, Arrington also formed a corporation called CP, Inc. to "commercialize the CrunchPad." (*Id*. ¶ 4). Plaintiffs do not allege when CP, Inc. was formed. Plaintiffs refer to both entities collectively as "TechCrunch" in their Complaint, (*id*.), but their separate existence and activities are relevant and key to the various claims asserted. For example, the Complaint does not specify whether Plaintiff TechCrunch, Plaintiff CP, Inc., or non-party Arrington "owned" the various business ideas that Fusion Garage allegedly misappropriated.

**Prototype A.** Plaintiffs allege that by August 30, 2008, they had constructed a Prototype A of the web tablet. The prototype was still crude as it "was still far from having beta units." (*Id*. ¶ 12). Plaintiffs "posted pictures and a description" of the prototype on the Internet in a blog post. (*Id*.) While Plaintiffs do not attach the blog post to their Complaint—and only selectively quote from it—Plaintiffs revealed in that post that it was "[a] humble (and messy) beginning. Prototype A has been built. It's in a temporary aluminum case that a local sheet metal shop put together."[3]

**Fusion Garage Meets TechCrunch/Arrington in September 2008.** Fusion Garage, a Singapore-based software and technology company, formed in early 2008. (*Id.,* Ex. A, p. 1.). The Complaint alleges that Fusion Garage's CEO, Chandrasekar Rathakrishnan, first met Arrington at a conference called "TechCrunch 50" on September 8-10, 2008. (*Id*. ¶ 14). As an attachment to the Complaint reveals, Fusion Garage had already developed a prototype for its product idea and sent its entry to the TechCruch 50 conference to "showcase the concept to the attendees, gauge their interest and gather feedback." (*Id.,* Ex. A, p. 2). The Complaint nowhere alleges that these communications were confidential or predicated on any fiduciary relationship. Mr. Rathakrishnan subsequently met with Arrington and "Interserve's CEO Heather Harde" on September 23, 2008 to discuss "the project." (*Id*. ¶ 15). While Plaintiffs allege that Ms. Harde was the CEO, an email Plaintiffs attach to their Complaint has Ms. Harde stating that Mr. Arrington was the "CEO of the

---

[3] http://www.techcrunch.com/2008/08/30/update-on-the-techcrunch-tablet-prototype-a/.

business." (*Id.,* Ex. D (Nov. 17, 2009 Harde email)). There is no allegation that these discussions were confidential, either.

**Prototype B.** The Complaint does not specify when Fusion Garage and Plaintiffs began working together on a web tablet. The Complaint alleges that "[b]y January 19, 2009, the project had constructed a Prototype B, and TechCrunch started calling the device the CrunchPad." (*Id.* ¶ 15). Plaintiffs do not define what "the project" is or was, nor do they allege who was a member of "the project" at that time. Plaintiffs nonetheless assert that they created Prototype B. (*Id.* ¶ 35). However, they also allege that Fusion Garage's software was running on Prototype B. (*Id.* ¶ 19). Plaintiffs concede that they posted videos on the Internet detailing Prototype B. (*Id.*).

**"All the Credit Should Go to Fusion Garage."** When the next prototype of the CrunchPad was unveiled, Arrington publicly announced that "*the ID and hardware work was driven by Fusion Garage*" and "[i]n fact, *all the credit should go to Fusion Garage.*" (*Id.* ¶ 22 (emphasis added)). A month later, in June 2009, a new prototype of the CrunchPad neared completion and Arrington publicly stated that "*Fusion Garage continues to drive the software forward.*" (*Id.* ¶ 24 (emphasis added)).

**No Contract Between the Parties Exists.** According to the Complaint, during all this time that Fusion Garage was developing the hardware and software for these prototypes, there was no non-disclosure agreement in place between Fusion Garage and TechCrunch, nor was there any written contract purporting to assign rights to the embryonic product. Moreover, the Complaint does not allege that any partnership, joint venture, or development agreement existed. The complaint nowhere defines the metes and bounds of what is alleged in a conclusory fashion to be a "joint venture" between Plaintiffs and Fusion Garage.

**The Merger Negotiations.** At one point, Arrington and Rathakrishnan began negotiating a merger or acquisition deal between Fusion Garage and CP, Inc., a new company set up by Arrington. Arrington offered a deal by which Fusion Garage would acquire 35% of CrunchPad, Inc. After Mr. Rathakrishnan equivocated on whether this deal would be acceptable to Fusion Garage, Arrington rescinded the 35% offer on June 27. (*Id.,* Ex. B) (e-mail from Arrington to Rathakrishnan, June 27, 2009 2:17 p.m.) ("You don't seem to be able to speak

authoritatively for your imvestors [sic] and creditors. For reputation reasons I'm forced to notify our investors that the deal is off.") In response, Rathakrishnan proposed a counteroffer. (*Id.*) (e-mail from Rathakrishnan to Arrington, June 27, 2009 3:01 p.m.). Nowhere does the Complaint allege that either of the Plaintiffs accepted, or even purported to accept, this proposal. Hence, if the Complaint is to be believed, as of June 27, 2009, there was nothing but a negotiation taking place between CP, Inc. and Fusion Garage.

**The End of the Merger Negotiations.** By November 2009, Fusion Garage's outside investors grew impatient with the merger discussions between the parties. In a November 29, 2009 e-mail to Rathakrishnan, one of these investors (Bruce Lee) pointed out that Fusion Garage had "assumed all related operational and developmental costs of the device" and could not understand why Fusion Garage would even consider merger offers that would give Fusion Garage *less* than 50% equity in CrunchPad, Inc. (*Id.,* Ex. D) (e-mail from Lee to Rathakrishnan, Nov. 17, 2009 11:51 p.m.) The investor stated that the proposed deal was lopsided. (*Id.*) Frustrated with Fusion Garage's position in the merger negotiations, Lee demanded that Fusion Garage propose a structure by which TechCrunch would receive only 10% equity. (*Id.*).

Rathakrishnan promptly forwarded Lee's e-mail to Arrington, stating that Fusion Garage needed Lee's continued investment and thus Rathakrishnan had "no choice but to put forth" Lee's 10% counteroffer, given the obligations that he owed to Fusion Garage's shareholders. (*Id.*) (e-mail from Rathakrishnan to Arrington, Nov. 17, 2009 2:50 p.m.). By the following week, after more meetings with Fusion Garage's investors and phone calls with Arrington, Rathakrishnan realized that the parties' positions were simply too far apart and that the merger was not a realistic possibility. He wrote Arrington on November 29 to say that "We have a sizable funding offer on the table that will take us to market. I have to do right by the shareholders and employees and make the decision that is in the best interest of all stakeholders. Regrettably, given that both parties are unable to reach a favorable agreement, I have no choice but to move forward [without TechCrunch]." (*Id.*) (e-mail from Rathakrishnan to Arrington, Nov. 29 2:46 p.m.). The parties never agreed to terms on a merger or acquisition.

**The JooJoo Product.** After discontinuing negotiations with TechCrunch, Fusion Garage publicly announced the release of its web tablet – named the JooJoo – during a video conference on December 7, 2009. (*Id.* ¶ 44).

**This Lawsuit and Plaintiffs' Discovery Requests.** Three days later, on December 10, 2009, Plaintiffs filed this lawsuit. Plaintiffs quickly moved for expedited discovery, even though they have not identified what Fusion Garage allegedly misappropriated. Among other things, the discovery requests that Plaintiffs propounded include the following:

> ***Request for Production No. 13*:** All documents concerning the design, development or writing of software for the JooJoo.
>
> ***Request for Production No. 15*:** All documents concerning the design of the JooJoo, including but not limited to industrial design, hardware, software, feature set, and user interface.
>
> ***Request for Production No. 20*:** All documents concerning user documentation for the JooJoo.
>
> ***Request for Production No. 24*:** All documents concerning plans for the development, design, manufacturing, marketing, advertising and promotion, and distribution of the JooJoo.
>
> ***Request for Production No. 33*:** All documents evidencing or concerning communications concerning intellectual property in the JooJoo.
>
> ***Request for Production No. 38*:** A complete copy of all versions of the source codes, object codes, and executables for the JooJoo.
>
> ***Request for Production No. 46*:** All design documents, bill of materials, and other technical materials concerning the JooJoo.

*See* Doolittle Decl., Ex. A. Plaintiffs have also served interrogatories seeking Fusion Garage's product and customer information. *Id.*, Ex. B. Moreover, Plaintiffs have propounded a variety of discovery requests using the defined term "CrunchPad" where that definition appears to be designed to encompass Fusion Garage's product, the JooJoo. *Id.*, Exs. A & B.

After the Court allowed discovery to begin before the Rule 26(f) conference, counsel for Fusion Garage called counsel for Plaintiffs to request a trade secret identification. Doolittle Decl. ¶ 2. Plaintiffs' position was that no trade secret identification was required in light of the claims that they were asserting. *Id.*

Fusion Garage has provided certain responses to Plaintiffs' discovery requests that do *not* implicate Fusion Garage's technology or proprietary information. As explained below, however, Fusion Garage seeks the Court's assistance in preventing discovery of Fusion Garage's confidential information unless and until Plaintiffs identify their trade secrets with particularity.

*Argument*

## I. THE COURT SHOULD ENTER A PROTECTIVE ORDER PURSUANT TO SECTION 2019.210

### A. The Requirements and Purposes of Section 2019.210

California Code of Civil Procedure Section 2019.210 provides: "In any action alleging the misappropriation of a trade secret . . . before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity. . . ." Section 2019.210 codifies the holding of *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252 (1968):

> Before a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret and to embark on discovery which may be both prolonged and expensive, the [plaintiff] should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.

*Computer Econ., Inc. v. Gartner Group*, 50 F. Supp. 2d 980, 984 (S.D. Cal. 1999) (quoting *Diodes*).

Section 2019.210 serves at least five purposes. "It promotes well-investigated claims and dissuades the filing of meritless trade secret complaints." *Perlan Therapeutics, Inc. v. Super. Ct. (Nexbio)*, 178 Cal. App. 4th 1333, 1343 (2009). "It prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets." *Id.* It "assists the court in framing the appropriate scope of discovery." *Id.* "It enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Id.* And it is "designed to prevent" the "shifting sands approach" to "trade secrets allegations and discovery." *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1045 (N.D. Cal. 2004).

Whereas most trade secrets identification motions concern the inadequacy of a plaintiff's disclosure, Plaintiffs here have not identified any trade secrets at all. They have not alleged any intellectual property that Fusion Garage allegedly took other than vague and general "ideas" that are described in the Complaint. Plaintiffs' strategy here not only fails to satisfy the requirements of Section 2019.210 but it actively thwarts each and every one of the rule's purposes. Accordingly, Plaintiffs should be required to identify their trade secrets with particularity pursuant to Section 2019.210 before they are permitted to commence discovery in this case regarding Fusion Garage's proprietary technology and confidential information.

### B. Plaintiffs Claim Is a Trade Secrets Claim With a Different Label

#### 1. Plaintiffs' Discovery Requests Reveal They are Prosecuting a Trade Secrets Claim

Plaintiffs' discovery requests reveal that they are seeking Fusion Garage's highly confidential and proprietary information. *See supra*; *see also* Doolittle Decl., Exs. A & B. Among other things, Plaintiffs seek Fusion Garage's source code, (Req. for Prod. No. 38), design and development documents, (Req. for Prod. Nos. 13 & 15), documents concerning intellectual property, (Req. for Prod. No. 33), and other technical information. They have also sought discovery of Fusion Garage's proprietary information by serving discovery requests using the defined term "CrunchPad," while defining that term to encompass Fusion Garage's product. Doolittle Decl., Exs. A & B.

Given the current claims in the case, there is absolutely no basis for Plaintiffs to be seeking these types of proprietary information from Fusion Garage unless Plaintiffs are trying to build a trade secrets case by obtaining discovery and then pointing to Fusion Garage's information as their own. *Perlan*, 178 Cal. App. 4th at 1343 (trade secret identification requirement "prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets."). Neither their Lanham Act claim, their fraud claim, their 17200 claim, their breach of fiduciary duty claim, nor their misappropriation of business ideas claim entitle Plaintiffs to dig into Fusion Garage's proprietary information.

Plaintiffs' strategy is exactly what the Section 2019.210 requirement is designed to avoid. Their placeholder complaint is a mere pretext to go on a fishing expedition. Accordingly, the Court should enter a protective order requiring that Plaintiffs identify their alleged trade secrets that Fusion Garage allegedly misappropriated before Plaintiffs can take discovery regarding Fusion Garage's trade secrets, technology, or other proprietary information.

### 2. **Plaintiffs' Claims Are Preempted by the UTSA**

Given the lack of any contract between the parties, Plaintiffs' public posting of its alleged "business ideas" on the Internet, and the absence of any allegation regarding who "owns" the supposed ideas, Plaintiffs did not, and could not, allege a trade secrets claim. They instead opted to allege "misappropriation of business ideas" and a 17200 claim as trade secrets claims with a different label. The Court should recognize the common law misappropriation claim and unfair competition claim as ones that are preempted by the California Uniform Trade Secrets Act ("CUTSA"). The only types of misappropriation claims *not* preempted by CUTSA are contract claims, civil remedies not based on misappropriation, and criminal remedies:

> This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

CAL. CIV. CODE § 3426.7(b).

Courts interpret this language to mean all that other claims based on misappropriation are preempted by CUTSA. *Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal. 4th 215, 224 (2002) (plaintiffs required to assert common law cause action for pre-CUTSA misappropriation, and CUTSA claim for misappropriation occurring after effective date of statute); *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 953-54 (N.D. Cal. 2003) (holding "the CUTSA occupies the field in California"). Otherwise, the language would be rendered meaningless. *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005); *see also AirDefense, Inc. v. AirTight Networks, Inc.*, No. 05-4615, 2006 WL 2092053, *4 (N.D. Cal. 2006) (dismissing common law unfair competition claim based on same facts as CUTSA claim).

There is no allegation in Plaintiffs' claims to suggest they are anything but a subterfuge for a trade secrets claim where Plaintiffs cannot meet the elements of trade secrecy. *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 220 (D. Del. 2004) ("If the other claims are no more than a restatement of the same operative facts which . . . spell out only trade secrets misappropriation, then dressing those claims up in different clothing is not . . . consistent with the preemption dictates of UTSA."). Plaintiffs want to obtain Fusion Garage's trade secrets and construct a claim based on such information. The Court should require Plaintiffs to identify their alleged trade secrets before allowing them to take discovery regarding Fusion Garage's proprietary information.

### C. Plaintiffs Should Be Able to Identify the Allegedly Misappropriated Information At Issue Here If Their Claim Was Filed in Good Faith

Before filing their claims in this case, Plaintiffs and their counsel were required to have a good faith basis for believing that misappropriation occurred. Fed. R. Civ. P. 11; *Perlan*, 178 Cal. App. 4th at 1343. Section 2019.210 requires that Plaintiffs state those trade secrets – and only those trade secrets – with particularity. *Brescia v. Angelin*, 172 Cal. App. 4th 133, 140, 150 (2009) (affirming trial court's order "to succinctly and with particularity lay out the trade secrets without surplusage, instead of essentially hiding the alleged trade secret in plain view by putting lots of clutter around it"). Given that Plaintiffs contend they were involved in some sort of collaboration or joint venture with Fusion Garage for approximately one year, they should be able to accomplish this task if they filed their claim in good faith. Plaintiffs must comply before discovery may proceed.

## II. THE COURT SHOULD ENTER A PROTECTIVE ORDER PURSUANT TO RULE 26 AND ITS INHERENT POWERS

Even if the Court declines to enter a Protective Order pursuant to Section 2019.210, it should enter a Protective Order pursuant to Federal Rule of Civil Procedure 26(c). That Rule provides the Court with authority to protect a party's "trade secret or other confidential research, development, or commercial information" from being revealed. Fed. R. Civ. P. 26(c)(1)(G). Rule 26, of course, also empowers a Court to enter orders regarding the sequencing of discovery and preventing discovery.

1   Such a protective order is necessary and appropriate here. The Court should not require
2   Fusion Garage to disclose any information revealing its trade secrets or proprietary information
3   until Plaintiffs identify with particularity the specific trade secrets that Plaintiffs claim Fusion
4   Garage misappropriated.

*Conclusion*

6   For the foregoing reasons, Fusion Garage respectfully requests that the Court enter a
7   protective order providing that Fusion Garage need not respond to discovery requiring it to
8   disclose its trade secrets or confidential or proprietary information until Plaintiffs identify with
9   particularity the trade secrets or other proprietary information that Plaintiffs allege Fusion Garage
10  misappropriated.

DATED: February 5, 2010           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By  */s/ Patrick Doolittle*
    Patrick C. Doolittle
    Attorneys for Certain Individual Defendants