1   Andrew P. Bridges (SBN: 122761)
    Abridges@winston.com
2   David S. Bloch (SBN: 184530)
    DBloch@winston.com
3   Matthew A. Scherb (SBN: 237461)
    MScherb@winston.com
4   WINSTON & STRAWN LLP
    101 California Street, 39th Floor
5   San Francisco, CA 94111-5802
    Telephone:    (415) 591-1000
6   Facsimile:    (415) 591-1400

7   Attorneys for Plaintiffs
    INTERSERVE, INC., dba TECHCRUNCH
8   and CRUNCHPAD, INC.

9

10                      UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12                          SAN JOSE DIVISION

13  INTERSERVE, INC., dba TECHCRUNCH,  )   Case No. CV-09-5812 JW (PVT)
    a Delaware corporation, and CRUNCHPAD, )
14  INC., a Delaware corporation,      )
                                       )
15                      Plaintiffs,    )   PLAINTIFFS' NOTICE OF MOTION AND
                                       )   MOTION FOR PRELIMINARY
16          vs.                        )   INJUNCTION; MEMORANDUM OF
                                       )   POINTS AND AUTHORITIES IN
17  FUSION GARAGE PTE. LTD., a Singapore )   SUPPORT
    company,                           )
18                                     )   Date:    May 3, 2010
                        Defendant.     )   Time:    9:00 A.M.
19                                     )   Place:   Courtroom 8, 4th Floor
                                       )
20  _____)

21

22

23

24

25

26

27

28

SF:274857.2

Dockets.Justia.com

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Plaintiffs move for a preliminary injunction that imposes a constructive trust on all assets or proceeds the Defendant has acquired or will acquire related to the JooJoo tablet computer.

Plaintiffs will present the motion for hearing on May 3, 2010, at 9:00 a.m., or as soon as the Court directs, before the Honorable James Ware, presiding in Courtroom 8 of the above-entitled court located at 280 South First Street, San Jose, California 95113. Plaintiffs are contemporaneously serving an administrative request for expedited briefing and hearing in light of the urgency of the situation and the need for relief before Defendant's JooJoo product begins to ship. Plaintiffs consent to the jurisdiction of the Magistrate Judge to hear this motion if the District Judge is unavailable.

To support their motion, Plaintiffs submit the following Memorandum of Points and Authorities, the declarations of Michael Arrington and David S. Bloch, and a Proposed Order, and they will rely upon the other pleadings and papers filed in the case, the proceedings at oral argument, and any other matter that the Court deems appropriate.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

SF:274857.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF THE ISSUES...........................................................................1

III.  STATEMENT OF FACTS ....................................................................................1

IV.   LEGAL STANDARDS ..........................................................................................5

V.    ARGUMENT ..........................................................................................................7

      A.    TechCrunch Is Likely To Obtain a Constructive Trust and an Accounting of Profits On Fusion Garage's Sale of the JooJoo. ..................................................................8

           1.    Breach of Fiduciary Duty.............................................................................8

           2.    Fraud ...........................................................................................................10

           3.    False Advertising Under the Lanham Act .................................................12

           4.    Fusion Garage's Motion to Dismiss Does Not Address the Complaint. ...13

      B.    TechCrunch Will Suffer Irreparable Harm If the Court Denies the Injunction and Refuses to Preserve the Proceeds of JooJoo Pre-Sales and Sales...........................14

      C.    The Balance of Equities Weighs Heavily in TechCrunch's Favor ......................14

      D.    Consumers and the Public Will Benefit from the Injunction...............................15

VI.   CONCLUSION......................................................................................................16

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

SF:274857.2

# TABLE OF AUTHORITIES

Page(s)

CASES

*Alfaro v. Community Housing Imp. System & Planning Ass'n, Inc.*,
   171 Cal. App. 4th 1356 (2009) ........................................................................10

*April Enterprises, Inc. v. KTTV*,
   147 Cal. App. 3d 805 (1983) ............................................................................9

*Baden Sports, Inc. v. Molten USA, Inc.*,
   556 F.3d 1300 (Fed. Cir. 2009) ......................................................................13

*Bank of California v. Connolly*,
   36 Cal. App. 3d 350 (1973) ..............................................................................8

*Calistoga Civic Club v. City of Calistoga*,
   143 Cal. App. 3d 111 (1983) ........................................................................6, 8

*DuFour v. Be LLC*,
   No. 09-3770, 2009 WL 4730897 (N.D. Cal. Dec. 7, 2009) ........................6, 14

*Engalla v. Permanente Medical Group, Inc.*,
   15 Cal. 4th 951 (1997) ....................................................................................10

*Federal Savings & Loan Ins. Corp. v. Dixon*,
   835 F.2d 554 (5th Cir. 1987) ............................................................................7

*Fitzgerald v. Provines*,
   102 Cal. App. 2d 529 (1951) ............................................................................9

*Heckmann v. Ahmanson*,
   168 Cal. App. 3d 119 (1985) ......................................................................6, 15

*Hollywood Screentest of America, Inc. v. NBC Universal, Inc.*,
   151 Cal. App. 4th 631 (2007) ....................................................................12, 13

*Holtz v. United Plumbing & Heating Co.*,
   49 Cal. 2d 501 (1957) .......................................................................................8

*In re Constance Dudley*,
   No. 06-1371, 2006 WL 862932 (N.D.Cal. Apr. 4, 2006) ..............................15

*Lazar v. Superior Court*,
   12 Cal. 4th 631 (1996) ....................................................................................10

*Leff v. Gunter*,
   33 Cal. 3d 508 (1983) .......................................................................................9

*Maxim Integrated Products, Inc. v. Quintana*,
   --- F.Supp. 2d ---, 2009 WL 2136963 (N.D.Cal. July 16, 2009) .....................5

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-ii-

SF:274857.2

*Natural Selection Foods, LLC v. Premium Fresh Farms, LLC,*
No. 07-00197, 2007 WL 128230 (N.D. Cal. Jan. 11, 2007) ................................14

*Nelson v. Abraham,*
29 Cal. 2d 745 (1947) ...........................................................................................9

*Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.,*
970 F.2d 552 (9th Cir. 1992) ...........................................................6, 7, 12, 14

*Republic of the Philippines v. Marcos,*
862 F.2d 1355 (9th Cir. 1988) ...........................................................................6

*Sybersound Records, Inc. v. UAV Corp.,*
517 F.3d 1137 (9th Cir. 2008) ..........................................................................14

*Thomas, Head and Greisen Employees Trust v. Buster,*
95 F.3d 1449 (9th Cir. 1996) ............................................................................12

*USACO Coal Co. v. Carbomin Energy, Inc.,*
689 F.2d 94 (6th Cir. 1982) ................................................................................7

*Weiner v. Fleischman,*
54 Cal. 3d 476 (1991) .......................................................................................8, 9

*Winter v. Natural Resources Defense Council,*
--- U.S. ----, 129 S.Ct. 365 (2008) ...............................................................5, 14

**STATUTES**

15 U.S.C. § 1125 (a)(1)(B) .......................................................................................12

Cal. Civ. Code. § 2224.............................................................................................6, 8

Cal Civ Code § 3294 (a) ............................................................................................10

Cal. Corp. Code § 16202 (a) .......................................................................................8

Cal. Corp. Code § 16404.............................................................................................9

Ca. Bus. & Prof. Code §§ 17200, 17500 ..................................................................11

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-iii-

SF:274857.2

1   **I.      INTRODUCTION**

2          For more than a year, Interserve, Inc., and CrunchPad Inc. (collectively "TechCrunch")

3   worked with defendant Fusion Garage to develop the "CrunchPad," an affordable, portable web-

4   browsing tablet computer.  Three days before the product's scheduled launch, Fusion Garage

5   abruptly terminated its relationship with TechCrunch and announced that it would sell the

6   CrunchPad on its own under the name "JooJoo."  It started taking pre-orders the week TechCrunch

7   sued.  TechCrunch now asks the Court to enjoin Fusion Garage from dissipating its proceeds and

8   require segregation of all JooJoo-related assets in a separate, court-protected account until the

9   litigation ends.

10         Within days after filing the complaint, TechCrunch sought leave to take immediate discovery

11  from Fusion Garage with an eye toward filing this motion.  The Court ordered Fusion Garage to

12  comply with TechCrunch's discovery requests.  Dkt. No. 19.  Fusion Garage instead has served

13  objections and filed a motion for protective order.  Dkt. No. 23.  Despite the fact that TechCrunch

14  still has not received critical documents from Fusion Garage, the already available evidence of

15  wrongdoing and the urgency of the situation call for that a constructive trust without further delay.

16  **II.     STATEMENT OF THE ISSUES**

17         Should the Court issue a preliminary injunction imposing a constructive trust on Fusion

18  Garage's proceeds related to the JooJoo tablet computer given that TechCrunch is likely to succeed

19  on the claims based on Fusion Garage's deceit and fraud, TechCrunch would otherwise suffer

20  irreparable harm, and the balance of equities and the public interest favor relief?

21  **III.    STATEMENT OF FACTS**

22         In July 2008, TechCrunch announced its CrunchPad project and explained precisely how it

23  would go about designing and developing "a dead simple and dirt cheap touch screen web tablet to

24  surf the web":

25         We'll organize a small team of people to spec this out. First is the marketing
            document that just outlines what the machine will do – we have a first draft of that
26         already and will post it soon. Then we'll spec out the hardware and get people to
            help write the customized Linux and Firefox code. Once we've completed the
27         design we'll start to work with the supply chain company to get an idea on the
            cost of the machine (the goal is $200), and hopefully build a few prototypes.

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-1-

SF:274857.2

1   (Decl. of Michael Arrington In Supp. of Pls.' Mot. for Prelim. Injunction ("Arrington Decl.") ¶ 2,

2   Ex. A.)  A few months later TechCrunch met with Fusion Garage, a Singapore software start-up.  *Id.*

3   ¶ 3.  In late September 2008, the parties agreed to collaborate on the project.  *Id.* ¶ 4.  TechCrunch

4   turned down several other companies that also expressed an interest in a collaboration.  *Id.* ¶ 5.

5   CrunchPad Inc. was incorporated two weeks later to commercialize the product.  *Id.* ¶ 6.  This was a

6   tremendous opportunity for Fusion Garage, an unknown Singaporean company, to work with

7   TechCrunch, the most influential technology blog in Silicon Valley.

8           TechCrunch worked hand-in-glove with Fusion Garage for the next 13 months.  In a

9   December 2008 email exchange, TechCrunch's Louis Monier—an industry veteran who founded

10   AltaVista and played key technology-development roles at eBay and Google—engaged in direct

11   communications with Fusion Garage to help define the user interface, technical specifications, and

12   software details for a working prototype assembled by Mr. Monier's team.  *Id.* ¶ 7, Ex. B.  Fusion

13   Garage commented: "This is great news.  Good to see the first signs of the baby :)."  *Id.* ¶ 8, Ex. C.

14   TechCrunch and Fusion Garage jointly announced the birth of the "baby" in January 2009.  *Id.* ¶¶ 9-

15   10, Exs. D, E.  The parties worked in close collaboration, mostly out of TechCrunch's headquarters

16   in Atherton, where Fusion Garage's CEO and software team worked for several months.  *Id.* ¶ 11.

17   Later public and private communications confirm the close and umbilical connection between the

18   parties—each touting their shared vision, each praising the other's efforts, each clearly moving

19   toward the same joint goal.  Here is a sampling:

20

21   • TechCrunch blog post, January 19, 2009: "The software has been created by Fusion
       Garage, who continue to work with Louis on the feature set and user experience."  *Id.* ¶
22       12, Ex. D.

23   • Fusion Garage blog post,[1] the same day: "It's our software running on the tablet ...  We
       continue to work with Louis Monier on the feature set and the user experience.  We ...
24       would like to take the opportunity to thank Michael [Arrington] and Louis for giving us
       the opportunity to work with them on the TechCrunch Tablet."  *Id.* ¶ 13, Ex. E.
25

26

27   _____
     [1] Defendant has since disabled access to its blog, but the archived version retrieved from the Google
28   cache amply tells the story of two companies working together on what Defendant characterized as
     "the TechCrunch Tablet." (*See* Arrington Decl. ¶ 13.)

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

SF:274857.2

- Fusion Garage blog post, February 2009: "the collaboration with the Crunchpad project happened as a result of meetings we had with Mike Arrington and co, subsequent to [TechCrunch50]. We worked closely with Louis Monier in getting the software in shape for the hardware prototype B. We continue to work with them in getting the software in shape to make crunchpad an easy to use device." *Id.*

- TechCrunch blog post, April 2009: "we've continued to tinker with the project ... We did meet with Fusion Garage today to test out the most recent prototype (B.5)? ... The software stack is now entirely customized. ... This time the ID and hardware work was driven by Fusion Garage out of Singapore. ... All credit should go to Fusion Garage ... you need partners to actually make things happen, and the credit for what we saw today goes entirely to the Fusion Garage team. Those guys are rock stars." *Id.* ¶ 14, Ex. F.

- Fusion Garage tweet, May 2009: "just leaving techcrunch office, last to leave today and its memorial day." *Id.* ¶ 15, Ex. G.

- Fusion Garage tweet, June 2009: "CrunchPad Update, the launch prototype, we are excited working on this." *Id.*

- TechCrunch blog post, June 2009: "Our partner Fusion Garage continues to drive the software forward ... Our vision of the user interface and the last version of the software stack ... The device boots directly into the browser." *Id.* ¶ 16, Ex. H.

- Fusion Garage email, June 2009: "my suggestion is that we do a post, update new device pictures and at the same time announce that we will be having a press conference in july to unveil the device, do a demo etc." *Id.* ¶ 17, Ex. I.

The CrunchPad project had the typical ups and downs of start-up ventures. And Fusion Garage, in particular, was constantly looking for money. Thus, throughout the joint venture, TechCrunch advanced Fusion Garage money or paid Fusion Garage's bills. *Id.* ¶ 18, Ex. J. By the end of June of 2009, the parties had agreed on the basic terms of their eventual plan to merge Fusion Garage into CrunchPad Inc., with Fusion Garage receiving 35% of the merged company's stock. *Id.* ¶ 19, Ex. K.

Over the summer of 2009, the collaboration shifted to Asia. TechCrunch senior technologists Brian Kindle (hardware) and Nik Cubrilovic (software) spent the bulk of August in Taiwan and Singapore working with Fusion Garage on software, design, user interface issues, and with the parties' jointly-selected manufacturer, Pegatron, on hardware and pricing. *Id.* ¶ 20.

There was significant friction during this period, and TechCrunch seriously considered ending the joint project. *Id.* ¶ 21. In response, on August 31, 2009, Fusion Garage's CEO begged TechCrunch to continue the partnership and promised to fly his entire team to the Bay Area to drive

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-3-

SF:274857.2

the CrunchPad to completion: "Pls do not kill the project as yet.  Pls hold off a week. ... I know how to deal with Pegatron and some of the challenges that we are currently facing.  We can overcome these challenges. ... If we decide to move forward and get the product launched at TC50 or separate press event, then I will have my team to back me and get the product where it needs to be. ... So [a] team of guys will fly with me."  *Id.* ¶ 22, Ex. L.  Relying on these representations, TechCrunch sponsored business visas for four of the Indian nationals on the project, and starting in September of 2009, Fusion Garage and TechCrunch personnel worked feverishly together out of TechCrunch's offices to get the CrunchPad ready for launch.  *Id.* ¶ 23, Ex. M.

As late as November 13, 2009 all seemed well, with Fusion Garage's CEO confirming that "we shd target the [November 20] event in sf" for the CrunchPad's public debut.  *Id.* ¶ 24, Ex. N.  But then, on November 17, 2009 — in an email that Defendant concedes "came out of the blue" — Fusion Garage aborted the partnership, asserting that it owned all intellectual property rights in the CrunchPad product and would manufacture and market the CrunchPad product on its own.  *Id.* ¶ 25, Ex. O.

On Monday, December 7, Fusion Garage followed through.  In a webcast, it advertised the CrunchPad, now under the brand JooJoo, for sale at thejoojoo.com.  *Id.* ¶ 26.TechCrunch sued the following Friday.  Dkt. No. 1.  Fusion Garage started accepting pre-orders but claimed that it would not ship JooJoo products for another 8-10 weeks.  *Id.* ¶ 27, Ex. P.  A February 2010 Fusion Garage press release indicates that Fusion Garage may start shipping products by the end of the month.  See (Decl. of David S. Bloch In Supp. of Pls.' Mot. for Prelim. Injunction (Bloch Decl.") ¶ 3, Ex. B.)

The evidence uncovered to date suggests that Fusion Garage planned to push TechCrunch out of the CrunchPad project for months.  Throughout October and November 2009, TechCrunch believed that Pegatron would be manufacturing the CrunchPad.  But it has since discovered that Pegatron terminated its relationship with Fusion Garage on October 9—a fact Fusion Garage concealed from TechCrunch even as Fusion Garage personnel set up shop at TechCrunch's headquarters.  *Id.* ¶ 28, Ex. Q.  Fusion Garage registered the domain "thejoojoo.com" on November 10, 2009, even while assuring TechCrunch in writing on November 13 that it would meet the November 20 launch date for the CrunchPad.  *Compare id.* ¶ 29, Ex. R, *with* ¶ 24, Ex. N.  And

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-4-

1    Fusion Garage's public relations firm was ready with a choreographed smear campaign against

2    TechCrunch by December 7, 2009.

3          At Fusion Garage's staged event, Fusion Garage's CEO made multiple false and misleading

4    statements about the nature, characteristics, and qualities of the CrunchPad/JooJoo device and

5    TechCrunch's relationship to the product.  Fusion Garage represented that it "developed the

6    hardware platform on our own," and "made all the hardware design decisions for the final prototype

7    and getting a successful contractual relationship with an ODM."  *Id.* ¶ 30.  It also represented that

8    "[i]t was the Fusion Garage shareholders who have provided the necessary funds" for the CrunchPad

9    project.  *Id.*  Fusion Garage repeatedly asserted that it took "all the risk" in the endeavor, "did all the

10   work needed to move forward and bring the product to market," and undertook "all of the physical

11   and intellectual business actions required to take the product to market."  *Id.*  As established by the

12   factual record in this litigation—even before meaningful discovery—these representations were

13   false.  TechCrunch conceived the CrunchPad device, developed its original prototype with no input

14   from Fusion Garage, and contributed substantial intellectual and financial resources at all stages of

15   the product's development and preparation for launch.

16         According to records TechCrunch has obtained by a subpoena to PayPal, Fusion Garage has

17   apparently received about 100 pre-orders for the JooJoo.  Approximately 15 of these pre-orders

18   already have been charged back or refunded.  The pre-order monies apparently go to an account in

19   the name of Fusion Garage's CEO, Chandra Rathakrishnan, rather than in the name of Fusion

20   Garage as a company.  That account is denominated in Singapore Dollars.  Declaration of David S.

21   Bloch ¶ 2, Ex. A.  So while the amounts involved are not yet substantial (on the order of $40,000),

22   the risk of dissipation is great.

23   **IV.    LEGAL STANDARDS**

24         "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the

25   merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

26   balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v.*

27   *Natural Resources Defense Council*, --- U.S. ----, 129 S.Ct. 365, 374 (2008); *Maxim Integrated*

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-5-

SF:274857.2

1  *Products, Inc. v. Quintana*, --- F.Supp. 2d ---, 2009 WL 2136963, at *2 (N.D. Cal. July 16, 2009)

2  (Ware, J.).

3      Under California law, "[o]ne who wrongfully detains a thing" or "gains a thing by fraud,

4  accident, mistake, undue influence, the violation of a trust, or other wrongful act" becomes "an

5  involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had

6  it." Cal. Civ. Code. §§ 2223, 2224. To establish a right to a constructive trust, a plaintiff must

7  prove "the existence of a res (property or some interest in the property); the plaintiff's right to that

8  res; and the defendant's acquisition of the res by some wrongful act." *Calistoga Civic Club v. City

9  of Calistoga*, 143 Cal. App. 3d 111, 116 (1983).

10     Recognizing California's law of constructive trusts, federal courts will enter a preliminary

11 injunction to prevent a defendant from dissipating the trust "res" or property, if the plaintiff meets

12 the other requirements for preliminary relief. *DuFour v. Be LLC*, No. 09-3770, 2009 WL 4730897,

13 at *1 (N.D. Cal. Dec. 7, 2009) (Breyer, J.) (granting plaintiff's motion for preliminary injunction

14 where plaintiff sought constructive trust on fees paid to defendant company, which was financially

15 unstable); *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559-60 (9th Cir. 1992)

16 (such an injunction maintains the status quo). Similar injunctions would also be available in state

17 court. *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 136 (1985) ("An injunction against disposing

18 of property is proper if disposal would render the final judgment ineffectual. ... Clearly, the

19 equitable remedy of constructive trust would be ineffectual if the trustee were permitted to defeat

20 recovery by wrongfully permitting the res to be dissipated").

21     Other provisions, including Federal Rule 64 and the Lanham Act, authorize freezing of assets

22 to preserve equitable remedies in federal court, especially where plaintiff seeks an accounting of

23 profits under the Lanham Act. *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir.

24 1988) ("A court has the power to issue a preliminary injunction to prevent a defendant from

25 dissipating assets in order to preserve the possibility of equitable remedies"); *Reebok Intern.*, 970

26 F.2d at 559 (noting the Lanham Act itself likely permitted an asset freeze order, but finding federal

27 courts had a more plenary authority to grant injunctions to freeze assets when profits were sought

28 under the Act).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

A preliminary injunction is especially appropriate where plaintiff seeks equitable relief in form of lost profits, *Reebok Intern.*, 970 F.2d at 559, or restitution and other equitable relief, such as Plaintiffs seek in this case.  S*ee also Federal Savings & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 557 (5th Cir. 1987) (affirming preliminary injunction when the complaint "requested equitable relief in the form of restitution, an accounting, a constructive trust, and injunctive relief, as well as legal relief in the form of damages"); *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94 (6th Cir. 1982) ("The power of the district court to preserve a fund or property which may be the subject of a final decree is well established.  We believe this rule is applicable in the present case where the district court found that the defendants' property was likely to be the subject of a constructive trust imposed for the benefit of the plaintiffs.").

## V.    ARGUMENT

Fusion Garage entered into a joint arrangement with TechCrunch to develop and bring the CrunchPad to market, but then breached its fiduciary duty to its joint venturer by unilaterally terminating the partnership, appropriating to its exclusive benefit the opportunity that formed the very basis of the partnership, making fraudulent statements to induce TechCrunch to remain committed to the venture and continue dealing with Fusion Garage, and ultimately engaging in a false advertising campaign against TechCrunch to attempt to sanitize its own wrongdoing.  All these wrongful acts authorize TechCrunch to obtain a constructive trust on Fusion Garage's proceeds from sales of the CrunchPad/JooJoo device.  Should the Court deny TechCrunch's motion for a preliminary injunction, TechCruch will be irreparably harmed, as Fusion Garage is a financially unstable foreign start-up that can only remain viable by dissipating revenues from sales of the JooJoo.  Indeed, the evidence uncovered to date indicates that payments for JooJoo pre-orders are going directly into a PayPal account in the name of Fusion Garage's CEO, not in the company's name.  The balance of equities also weighs heavily in favor of TechCrunch, and an injunction benefits the public by ensuring that pre-order funds are available to be refunded in the event Fusion Garage cannot deliver the JooJoo as advertised.

**A.** **TechCrunch Is Likely To Obtain a Constructive Trust and an Accounting of Profits On Fusion Garage's Sale of the JooJoo.**

The court may impose a constructive trust for any "wrongful act," and "the wrongful act giving rise to a constructive trust need not amount to fraud or intentional misrepresentation." *Calistoga Civic Club*, 143 Cal. App. 3d at 116; Cal. Civ. Code. § 2224. TechCrunch must show that it is likely to prove that Fusion Garage's acquisition of profits from sales of the JooJoo is wrongful, and Fusion Garage would be unjustly enriched if permitted to keep the profits. *Id.*

**1.** **Breach of Fiduciary Duty**

In California, "the association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Cal. Corp. Code § 16202 (a). Because partnerships are the default arrangement for common endeavors, the associates in a partnership need not reduce their partnership agreement to writing. *Id*. § 16101 (10) ("'Partnership agreement' means the agreement, whether written, oral, or implied, among the partners concerning the partnership, including amendments to the partnership agreement"). Instead, the agreement can be oral or implied from the partners' conduct. *Id.*

Legally, a joint venture is almost identical to a partnership. *Weiner v. Fleischman*, 54 Cal.3d 476, 482-83 (1991). Business partners create a joint venture by making an agreement where the parties "have a community of interest, that is, joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control." *Holtz v. United Plumbing & Heating Co.*, 49 Cal. 2d 501, 506-07 (1957); *Bank of California v. Connolly*, 36 Cal. App. 3d 350, 364 (1973). As with partnerships, business associates may create a joint venture by oral agreement, or one may be "assumed" from the parties' conduct. *Weiner*, 54 Cal. 3d at 483.

Although the parties here did not enter into a written partnership agreement, their verbal representations to each other and their public and private conduct establish that they entered into a joint venture or partnership to develop and bring the CrunchPad to market. Fusion Garage and TechCrunch had a common commercial interest in seeing the CrunchPad project succeed, and they exercised joint control over the direction of the project and its implementation, including technical as well as financial dealings. They collaborated in the CrunchPad's development and sought out

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-8-

SF:274857.2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   investors to fund their joint initiative while holding themselves out as the "Crunch Pad Team."  The

2   parties agreed that each would bear its own losses of time, energy, and money if the project failed

3   and to share the profits if it succeeded.  (Arrington Decl. ¶ 31.)  To this end, Fusion Garage

4   represented to TechCrunch that it would merge with CrunchPad, Inc., with TechCrunch taking a

5   65% ownership stake in the resulting entity.  *Id*. ¶ 19, Ex. K.  These facts give rise to an inference

6   that a joint venture was created.  *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 819-820

7   (1983); *Nelson v. Abraham*, 29 Cal.2d 745, 749-750 (1947) ("Such a venture or undertaking may be

8   formed by parol agreement, or it may be assumed as a reasonable deduction from the acts and

9   declarations of the parties") (citations omitted).

10   "Like partners, joint venturers are fiduciaries with a duty of disclosure and liability to

11   account for profits."  *Weiner*, 54 Cal. 3d at 482; *Fitzgerald v. Provines*, 102 Cal. App. 2d 529, 539

12   (1951) ("Each coadventurer occupies a fiduciary relation to the other").  During the 13 months when

13   the parties collaborated to develop the CrunchPad, Fusion Garage had a duty to deal with

14   TechCrunch with the highest loyalty and the utmost good faith.  Cal. Corp. Code § 16404 (a).

15   Above all, Fusion Garage had a duty to not usurp the opportunity that formed the very basis of their

16   collaboration, and that duty survives any unilateral dissociation from the venture.  Cal. Corp. Code §

17   16404(b)(1); *Leff v. Gunter*, 33 Cal. 3d 508, 514 (1983) ("A partner may not dissolve a partnership

18   to gain the benefits of the business for himself, unless he fully compensates his copartner for his

19   share of the prospective business opportunity") (quoting  *Page v. Page*, 55 Cal. 2d 192, 197 (1961)).

20   Yet that is precisely what Fusion Garage did:  It unilaterally withdrew from the CrunchPad

21   project and claimed the right to the business opportunity that formed the very basis of the parties'

22   collaboration.  Fusion Garage also made material misrepresentations of fact intended to induce

23   TechCrunch to enter into and remain in the partnership, and has engaged in a smear campaign to

24   discredit TechCrunch since its unilateral withdrawal from the partnership.  These statements, and

25   Fusion Garage's general course of conduct in the joint venture, show that Fusion Garage breached its

26   fiduciary duty to deal with TechCrunch with the highest loyalty and the utmost good faith.

27

28

SF:274857.2

## 2.     Fraud

"The elements of fraud that will give rise to a tort action for deceit are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity ... ; (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997); *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Proof of fraud not only proves breach of fiduciary duty as well, but also enables the plaintiff to recover punitive damages for the breach. Cal Civ. Code § 3294 (a) (permitting punitive damages where plaintiff proves "oppression, fraud, or malice"). Similarly, breach of fiduciary duty usually proves constructive fraud. *Alfaro v. Community Housing Imp. System & Planning Ass'n, Inc.*, 171 Cal. App. 4th 1356, 1383 (2009) ("a breach of a fiduciary duty usually constitutes constructive fraud") (quoting *Salahutdin v. Valley of California, Inc.*, 24 Cal. App. 4th 555, 563 (1994)).

Fusion Garage made repeated misrepresentations intended to induce TechCrunch to enter into—and then remain committed to—their joint effort. As described above, and in the Complaint, Fusion Garage misrepresented the nature of its work and expertise; what it had accomplished at various times during the CrunchPad project; its level of its commitment to the project; and its willingness to merge with TechCrunch. Even more, Fusion Garage made a series of false statements and concealed other facts from TechCrunch in the days and weeks leading up to the aborted November 20, 2009, product launch.

Fusion Garage made these misrepresentations with knowledge of their falsity. Fusion Garage's CEO, Chandrasekhar Rathakrishnan, claimed to have developed a browser-based operating system that turned out to be an off-the-shelf browser with minor variations. Fusion Garage repeatedly promised to merge with TechCrunch, only to claim at the last minute that its investors were unwilling to do the deal. (Arrington Decl. ¶ 25, Ex. O.) It claimed that it was working with Pegatron when in fact Pegatron had broken all ties with Fusion Garage based on Fusion Garage's late payments. *Id.* ¶ 28, Ex. Q. It registered the domain "thejoojoo.com" three days *before* assuring TechCrunch that the CrunchPad would launch on schedule on November 20. *Id.* ¶ 29, Ex. R. And it

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-10-

SF:274857.2

misled TechCrunch that the project was ready for launch when in fact it was scheming to cut TechCrunch out of the project altogether. *Id.* ¶ 24, Ex. N.

Fusion Garage made these representations with the intent to induce TechCrunch's reliance; TechCrunch did in fact rely on Fusion Garage's representations and continued to invest its time, money, and effort into the CrunchPad project. On multiple occasions, TechCrunch's principal, Michael Arrington, expressed grave doubts about Fusion Garage directly to Mr. Rathakrishnan. In response, Mr. Rathakrishnan told TechCrunch bald-faced lies. For example, when Mr. Arrington doubted Mr. Rathakrishnan's ability to speak for his investors and creditors, Mr. Rathakrishnan confirmed that he had spoken to his investors and creditors and they would agree to merge with CrunchPad in exchange for 35 percent equity interest in the merged entity. *Id.* ¶ 19, Ex. K. Mr. Rathakrishnan's bombshell email 5 months later states that Fusion Garage's investors never agreed to the deal. *Id.* ¶ 25, Ex. O. And when Mr. Arrington threatened to stop the collaboration on August 31, 2009, because of delays and communication problems with Fusion Garage, Mr. Rathakrishnan begged that Mr. Arrington stay committed and represented that he "know[s] how to deal with Pegatron and some of the challenges we are currently facing." *Id.* ¶ 22, Ex. L. Fusion Garage's personnel continued to tell TechCrunch that they were in communication with Pegatron when in fact (unknown to TechCrunch) Pegatron had terminated its relationship with Fusion Garage. *Id.* ¶ 28, Ex. Q.

TechCrunch's reliance on Fusion Garage's representations and promises was justifiable. TechCrunch conceived of the CrunchPad, was deeply committed to bringing the product to market, had invested substantial time, energy, brainpower, and money, and had received repeated assurances that Fusion Garage could overcome the problems it faced. TechCrunch had no reason to suspect, in the days leading up to the CrunchPad's scheduled launch, that Fusion Garage was secretly scheming to launch the product without TechCrunch under a different name. *Id.* ¶ 32. As a result of Defendant's fraud, TechCrunch has suffered damage to its business reputation as well as significant economic damage, both from its lost investment in the conception and development of the CrunchPad and in expected profits from the product—profits that Fusion Garage now hopes to reap from the JooJoo.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-11-

The same conduct constitutes unfair competition and false advertising within the meaning of California Business & Professions Code Sections 17200 and 17500, and a misappropriation of TechCrunch's business ideas.  *Hollywood Screentest of America, Inc. v. NBC Universal, Inc.*, 151 Cal. App. 4th 631, 650 (2007).

### 3.      False Advertising Under the Lanham Act

Section 43 (a)(1)(B) of the Lanham Act imposes civil liability for false advertising on any person who makes a false or misleading description or representation of fact "in commercial advertising or promotion" which "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  15 U.S.C. § 1125 (a)(1)(B).  A plaintiff who proves false advertising under the Lanham Act is entitled to an accounting of the offending party's profits.  *Id.* § 1117 (a)(3).  TechCrunch seeks an accounting of profits in this litigation and, as indicated above, the Court has a great deal of authority—pursuant to its inherent equitable powers—to preserve TechCrunch's remedies under the Lanham Act.  *Reebok*, 970 F.2d at 559 ("Because the Lanham Act authorizes the district court to grant Reebok an accounting of Betech's profits as a form of final equitable relief, the district court had the inherent power to freeze Betech's assets in order to ensure the availability of that final relief"); *accord*, *Thomas, Head and Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1456-57 (9th Cir. 1996).

Having severed its partnership with TechCrunch (turning it from business partner to potential competitor), Fusion Garage set out to undermine and belittle TechCrunch's contribution to the CrunchPad project, in no small part to ensure that there is no TechCrunch-sponsored CrunchPad to compete against the JooJoo.  At its staged product launch on December 7, Fusion Garage falsely and misleadingly described itself as the sole developer of the device's hardware design, despite the fact that TechCrunch built an initial prototype for the CrunchPad—which necessarily includes its hardware design—before Fusion Garage even joined the project.  (Arrington Decl. ¶ 30.)  Fusion Garage also represented that its shareholders provided all the necessary funds, despite the fact that Fusion Garage is a cash-starved and financially unstable company that had to rely on TechCrunch to pay its own bills just to keep the project moving forward.  *Id.* ¶ 18, Ex. J.  Most blatantly, Fusion Garage claimed that it undertook "all of the physical and intellectual business actions required to

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-12-

SF:274857.2

take the product to market," an assertion totally contrary to the record set forth above.
TechCrunch—which still owns the CrunchPad name—has had discussions with technology
companies after Fusion Garage aborted the original CrunchPad project. *Id.* ¶ 33.  Because
TechCrunch is a well known and well established technology blog, and because TechCrunch created
and drove the public interest for the CrunchPad, TechCrunch may start over and develop a new
device for the same market Fusion Garage presently is trying to misappropriate for itself.  *Id.*

### 4.     Fusion Garage's Motion to Dismiss Does Not Address the Complaint.

Because TechCrunch is likely to succeed on the claims asserted in its complaint, Fusion
Garage has instead chosen to attack claims that TechCrunch did not assert at all.  Several Fusion
Garage motions are pending, and TechCrunch will of course respond to each of them in due course.
But we emphasize here that Fusion Garage's filings demonstrate that it fundamentally
misunderstands the legal and factual basis for this litigation.  TechCrunch does not assert
misappropriation of trade secrets.[2]  Misappropriation of business ideas, which TechCrunch *does*
assert, is not pre-empted by the California Uniform Trade Secrets Act.  Fusion Garage acknowledges
as much by citing to *Hollywood Screentest of America, Inc.*, 151 Cal. App. 4th at 650, a 2007 case
from the California Court of Appeal stating the elements of the business-idea misappropriation claim
22 years after the CUTSA took effect.  Nor does this case have anything to do with copyright or
patent infringement, so cases suggesting that copyright and patent claims pre-empt the Lanham Act
and business torts are irrelevant.  In its other briefs, Fusion Garage cites to *Sybersound* and *Baden
Sports*, both of which are inapposite.[3]

---

[2] Ironically, while TechCrunch does not assert any claims involving trade secrets or proprietary
information, Fusion Garage argues that it should not have to comply with this Court's order granting
expedited discovery because the information it shared with TechCrunch during the collaboration is
proprietary to Fusion Garage.  At the same time, Fusion Garage admits in its motion to dismiss there
is no non-disclosure agreement between the parties.
[3] *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1141 (9th Cir. 2008) ("In this appeal,
we determine whether a party lacking standing to bring a copyright infringement suit under the
Copyright Act, but who complains of competitive injury stemming from acts of alleged
infringement, may bring a Lanham Act claim. ...  We hold that it cannot"); *Baden Sports, Inc. v.
Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009) (where summary judgment granted for
plaintiff on patent infringement, plaintiff had no claim for false advertising under Lanham Act based
on misrepresentations about who "invented" or "innovated" the technology because such a claim
would "create overlap between the Lanham and Patent Acts").

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**B. TechCrunch Will Suffer Irreparable Harm If the Court Denies the Injunction and Refuses to Preserve the Proceeds of JooJoo Pre-Sales and Sales.**

TechCrunch also must show that it "is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 129 S.Ct. at 374.

If a preliminary injunction ordering a constructive trust is not granted, TechCrunch may never see the money it is due, and early buyers may never get their money back. Fusion Garage is a financially insecure start-up company funded mostly by loans at confiscatory rates. (Arrington Decl. ¶ 34, Ex. S.) Throughout their relationship, Fusion Garage represented to TechCrunch that it was on a shoestring budget. On several occasions, TechCrunch even paid Fusion Garage's bills. *Id.* ¶ 18, Ex. L. Fusion Garage now claims to have raised $3 million in venture funding (all behind TechCrunch's back) but it has refused repeated media requests to identify the investors. *Id.* ¶ 35, Ex. T. All proceeds from the sale of the JooJoo are being deposited into a PayPal account set up in Mr. Rathakrishnan's name. (Bloch Decl. ¶ 2, Ex. A.)

Based on its knowledge of Fusion Garage's finances, TechCrunch believes that Fusion Garage needs the profits from sales of the JooJoo to survive. In fact, Fusion Garage's financial instability may explain why it cut TechCrunch out of the joint venture at the last minute. Fusion Garage's financial insecurity is sufficient to establish likelihood of irreparable harm in light of TechCrunch's request for a constructive trust. *DuFour v. Be LLC*, No. CV 09-3770 CRB, 2009 WL 4730897, *3 (N.D. Cal. Dec. 7, 2009) (Breyer, J.) (finding likelihood of irreparable harm where defendant was financially insecure); *see also Natural Selection Foods, LLC v. Premium Fresh Farms, LLC*, No. C-07-00197 RMW, 2007 WL 128230, *1 (N.D. Cal. Jan. 11, 2007) (Ware, J.) (finding likelihood of irreparable harm sufficient to grant *ex parte* temporary restraining order where defendant was dissipating trust assets); *Reebok Intern.*, 970 F.2d at 559-60.

**C. The Balance of Equities Weighs Heavily in TechCrunch's Favor**

A preliminary injunction preventing Fusion Garage from dissipating the profits from its sale of the JooJoo will prevent Fusion Garage from rendering TechCrunch's remedies obsolete, but will cause minimal harm to Fusion Garage. TechCrunch does not seek to freeze all of Fusion Garage's

-14-

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

assets (though it would be within its rights to do so), and Fusion Garage has publicly claimed that it has more than enough operating capital.  Nor does TechCrunch seek an injunction on sales of the device itself .  TechCrunch instead seeks the least invasive remedy that will preserve its rights.

Compared to the minimal burden imposed on Fusion Garage, denial of the preliminary injunction comes with a heavy penalty to TechCrunch, which has invested approximately $400,000 in this project since its inception.  (Arrington Decl. ¶ 36.)  Under *In re Constance Dudley*, No. 06-1371, 2006 WL 862932, at *1 (Ware, J.) (N.D.Cal. Apr. 4, 2006), this Court, in weighing hardships, stayed a bankruptcy court decision in part because plaintiff's hardship—potential dissipation of one million dollars—clearly outweighed any hardship to defendant.  TechCrunch has established a legitimate claim to profits in sales of the JooJoo, and a money damage award—even if Fusion Garage is still solvent at the time of trial—is insufficient to fulfill TechCrunch's claim under state law.  *Heckmann*, 168 Cal. App. 3d at 134 (1985) ("Numerous cases have recognized the plaintiff's right to a constructive trust over a fund of money regardless of the defendant's solvency").  Denying the preliminary injunction also would have the perverse effect of permitting Fusion Garage to benefit from its own wrongdoing.  *Id.* at 135 ("The purpose of the constructive trust remedy is to prevent unjust enrichment and to prevent a person from taking advantage of his own wrong").

### D.     Consumers and the Public Will Benefit from the Injunction

Finally, an injunction serves the public's interest.  Many consumers, including those who fueled public interest in the CrunchPad and followed the device's development on TechCrunch's website, may choose to purchase the JooJoo despite the acrimonious fall-out between the parties.  Pre-orders are being taken now and the product may ship as early as the end of February.  (Bloch Decl. ¶ 3, Ex. B.)  Those consumers benefit from being able to purchase the device knowing that they are not supporting illegal and wrongful conduct, and that the proceeds from all sales will be held in trust until the court, or the jury, determines the merit of the parties' allegations.  Moreover, if TechCrunch is right that Fusion Garage is in perilous financial condition, sequestering pre-order and sales revenues will ensure that early JooJoo buyers can be made whole.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**VI.     CONCLUSION**

"To paraphrase Justice Cardozo, if '[a] constructive trust is the [voice] through which the conscience of equity finds expression,' then a court can surely prevent the stifling of that voice before it has a chance to be heard." *Heckmann*, 168 Cal. App. 3d at 136.  And if the present application for a preliminary injunction is denied, "Plaintiffs would be left with a constructive trust on the fender of a Buick in Ypsalanti," *id.* at 137, or the Internet equivalent.  To avoid this outcome, and for the reasons stated above, TechCrunch requests a preliminary injunction barring Fusion Garage from transferring or otherwise dissipating the proceeds from any sales of the JooJoo device and imposing a constructive trust upon all proceeds of the JooJoo pre-sales and sales, pending conclusion of the litigation.  That relief is authorized by law and necessary in this case.

Dated: February 22, 2009               WINSTON & STRAWN LLP


                                       By:     /s/
                                               _____
                                               Andrew P. Bridges
                                               David S. Bloch
                                               Matthew A. Scherb

                                               Attorneys for Plaintiffs

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

SF:274857.2