QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   Claude M. Stern (Bar No. 96737)
   claudestern@quinnemanuel.com
   Patrick Doolittle (Bar No. 203659)
   patrickdoolittle@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:   (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Defendant Fusion Garage PTE. Ltd

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERSERVE, INC. dba TECHCRUNCH, a Delaware corporation, and CRUNCHPAD, INC., a Delaware corporation,<br><br>　　　　　Plaintiffs,<br><br>　　　　vs.<br><br>FUSION GARAGE PTE. LTD, a Singapore company,<br><br>　　　　　Defendant. | CASE NO. 09-cv-5812 RS<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS, TO STRIKE, AND FOR A MORE DEFINITE STATEMENT**<br><br>**[Redacted Pursuant to Stipulated Protective Order]**<br><br>Date: May 13, 2010<br>Time: 1:30 p.m.<br>Judge: Hon. Richard Seeborg |

# TABLE OF CONTENTS

Page

Preliminary Statement ............................................................................................................. 1

Argument .................................................................................................................................. 2

I.   THE COURT SHOULD DISREGARD PLAINTIFFS' SPEAKING EVIDENCE.............. 2

II.  PLAINTIFFS' LANHAM ACT CLAIM FAILS ................................................................. 3

    A.   Plaintiffs Lack Standing ........................................................................................ 3

    B.   Plaintiffs Cannot Make Out a False Advertising Lanham Act Claim Based
        on True Statements ................................................................................................. 5

    C.   Plaintiffs Cannot Make Out a Lanham Act Claim Based on Fusion Garage
        Taking Credit for the Creation of Its Product......................................................... 5

    D.   Plaintiff Cannot Save its Lanham Act Claim by Relabeling Fusion Garage's
        Product Statements as Statements About the Parties' "Commercial
        Activities"............................................................................................................... 6

    E.   Plaintiffs Cannot Base a Lanham Act Claim on Statements About Mr.
        Arrington ................................................................................................................ 7

III. Plaintiffs' Claim For Breach Of Fiduciary Duty Fails ......................................................... 7

    A.   Mr. Arrington's Repeated Threats to "Shut Down the Project" Are Not
        Consistent with a Partnership or Joint Venture ....................................................... 8

    B.   The Complaint Does Not Specify the Terms of the Supposed Partnership
        and Is Too Vague and Uncertain to State a Claim ................................................... 8

    C.   TechCrunch's Judicially Noticeable Declaration Belies the Existence of a
        Partnership............................................................................................................. 9

IV.  PLAINTIFFS' FRAUD AND DECEIT CLAIM FAILS ..................................................... 10

    A.   The Fraud Claim Fails on 9(b) Grounds ................................................................ 10

    B.   The Fraud Claim Fails Because Plaintiffs Cannot Plausibly Show a
        Partnership or Joint Venture.................................................................................. 10

    C.   The Fraud Claim Fails Because Plaintiffs Cannot Show Proximate Harm.............. 11

V.   PLAINTIFFS' CLAIM FOR MISAPPROPRIATION OF BUSINESS IDEAS
    FAILS.................................................................................................................................. 12

    A.   Misappropriation of Business Ideas Is Not a Valid Tort........................................ 12

    B.   Plaintiffs Cannot Bring an Implied-in-Fact Contract Claim for Their
        Publicly-Disclosed Ideas ...................................................................................... 13

**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR
A MORE DEFINITE STATEMENT**

04049.51632/3471904.5

1

      C.     Plaintiffs' Efforts to Avoid Preemption Fail ............................................................ 14

VI.    PLAINTIFFS' CLAIM FOR FALSE ADVERTISING AND UNLAWFUL BUSINESS PRACTICES UNDER CALIFORNIA LAW FAILS .................................... 15

Conclusion ............................................................................................................................... 15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Alphamed Pharms. Corp. v. Arriva Pharms., Inc.,*
  391 F. Supp. 2d 1148 (S.D. Fla. 2005)....................................................................3, 4

*Aureflam Corp. v. Pho Hoa Phat I, Inc.,*
  2005 WL 2253813 (N.D. Cal. 2005)..........................................................................10

*Baden Sports, Inc. v. Molten USA, Inc.,*
  556 F.3d 1300 (Fed. Cir. 2009)................................................................................5, 6

*Bell Atl. Co. v. Twombly,*
  550 U.S. 544 (2007)..................................................................................................5, 8

*Bustamante v. Intuit, Inc.,*
  141 Cal. App. 4th 199 (2006)...................................................................................1, 8

*In re CMR Mortg. Fund, LLC,*
  416 B.R. 720 (Bankr. N.D. Cal. 2009)........................................................................9

*Capcom Co., Ltd. v. MKR Group, Inc.,*
  2008 WL 4661479 (N.D. Cal. 2008) (citations omitted) ..........................................1, 2

*Cel-Tech Commn's, Inc. v. Los Angeles Cellular Telephone Co.,*
  20 Cal. 4th 163 (1999)..............................................................................................15

*CollegeNet, Inc. v. Embark.com, Inc.,*
  230 F. Supp. 2d 1167 (D. Or. 2001)............................................................................5

*Desny v. Wilder,*
  46 Cal. 2d 715 (1956)...............................................................................................13

*FTC v. Swish Marketing,*
  2010 WL 653486 (N.D. Cal. 2010)............................................................................10

*Grupo Mexicano de Desarallo, S.A. v. Alliance Bond Fund, Inc.,*
  527 U.S. 308 (1999) ...................................................................................................1

*Harper v. 24 Hour Fitness, Inc.,*
  167 Cal. App. 4th 966 (2008)....................................................................................15

*Hollywood Screentest of Am., Inc. v. NBC Universal, Inc.,*
  151 Cal. App. 4th 631 (2007)....................................................................................12

*Joint Stock Society v. UDV N. Am., Inc.,*
  53 F. Supp. 2d 692 (D. Del. 1999)..............................................................................3

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC,*
  No. 07-3983, 2007 WL 4532214 (N.D. Cal. Dec. 19, 2007)......................................13

-iii-

**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR
A MORE DEFINITE STATEMENT**

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
  171 Cal. App. 4th 939 (2009)..........................................................................14

*Kokka & Backus, PC v. Bloch*,
  2010 WL 458909 (N.D. Cal. 2010) .................................................................1

*Love v. The Mail on Sunday*,
  489 F. Supp. 2d 1100 (C.D. Cal. 2007) ...........................................................7

*PDK Labs, Inc. v. Friedlander*,
  103 F.3d 1105 (2d Cir. 1997) ........................................................................3, 4

*Praxair, Inc. v. Gen. Insulation Co.*,
  611 F. Supp. 2d 318 (W.D.N.Y. 2009) .............................................................4

*Proctor & Gamble Co. v. Haugen*,
  222 F.3d 1262 (10th Cir. 2000) .......................................................................7

*Roque v. Suntrust Mortg., Inc.*,
  No. 09-40, 2010 WL 546896 (N.D. Cal. Feb. 10, 2010) ..............................11

*Schneider v. Cal. Dep't of Corrections*,
  151 F.3d 1194 (9th Cir. 1998).......................................................................1, 2

*Small v. Fritz Co., Inc.*,
  30 Cal. 4th 167 (2003).....................................................................................11

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008).........................................................................6

*Tercica, Inc. v. Insmed Inc.*,
  2006 WL 1626930 ............................................................................................4

*Thorn v. Reliance Van Co.*,
  736 F.2d 929 (3d Cir. 1984) .............................................................................4

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
  971 F.2d 244 (9th Cir. 1992) ...........................................................................9

### Statutes and Treatises

15 U.S.C. § 1125(a) ..................................................................................................5

Cal. Jur. 3d Joint Ventures § 11 ..............................................................................8

Code of Civil Procedure Section 2019.210 ...........................................................14

Federal Rule of Civil Procedure 9(b) ....................................................................10

Federal Rule of Civil Procedure 12(b)(6) ..........................................................1, 2

**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT**

***Preliminary Statement***

Plaintiffs' complaint does not allege valid legal claims.  TechCrunch and CrunchPad, Inc. ("CP Inc.") are advancing legally deficient claims against Fusion Garage Pte., Ltd. ("Fusion Garage") because they was unable to consummate an acquisition of Fusion Garage and bring a product to market that TechCrunch had promised on its web blog.  Plaintiffs then filed a baseless motion for preliminary injunction that seeks to impound or freeze Fusion Garage's revenues and strangle Fusion Garage as a business.[1]  Plaintiffs have since engaged in a public relations campaign through their TechCrunch blog and this lawsuit to smear Fusion Garage.

Plaintiffs' Opposition to Fusion Garage's Motion to Dismiss is their latest transgression in this case.  Plaintiffs rely upon a host of extrinsic speaking evidence that purports to bolster their pleading.  While plaintiffs' need to submit speaking evidence is a fundamental admission that their complaint fails to state a claim, it is hornbook law that a motion to dismiss on 12(b)(6) grounds is confined to the complaint's allegations and matters that are judicially noticeable.  Accordingly, the Court should strike or disregard plaintiffs' opposition and grant the motion to dismiss.

Plaintiffs concede that their objective was to acquire Fusion Garage and that the acquisition failed.  However, plaintiffs want to have it both ways because they argue that the parties' relationship transcended the acquisition and the parties became partners or joint venturers notwithstanding plaintiffs' failure to acquire Fusion Garage.  Plaintiffs cite no authority for this proposition, nor could they because the argument is untenable.  There would have been no need for an acquisition if Fusion Garage was bound to plaintiffs in any event.  Moreover, plaintiffs' vague allegations do not establish a partnership because the material terms of the supposed partnership are wholly undefined.  *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 211 (2006).

Plaintiffs also ignore the fact that they made an offer to the public at large to contribute to a web tablet and "let anyone build one that wants to." Cmpl. ¶ 11 ("If everything works well, we'd

---

[1]   Fusion Garage's Opposition to the Preliminary Injunction Motion explains why the motion is groundless.  *See also Grupo Mexicano de Desarallo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319-320 (1999) (district court generally lacks power to issue preliminary injunction freezing assets where no lien or equitable interest is claimed); *Kokka & Backus, PC v. Bloch*, 2010 WL 458909 at *1 (N.D. Cal. 2010) (Seeborg, J.) (denying preliminary injunction seeking asset freeze).

-1-
**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT**

then open source the design and software and *let anyone builds one that wants to*."). Plaintiffs do not allege or argue how such a public offer turned into a partnership or why Fusion Garage, as opposed to the public at large, became plaintiffs' partner.

The Court is empowered to dismiss plaintiffs' claim on 12(b)(6) grounds for one of two reasons: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory." *Capcom Co., Ltd. v. MKR Group, Inc.*, 2008 WL 4661479 at *3 (N.D. Cal. 2008) (Seeborg, J.) (dismissing claims with prejudice) (citations omitted). As explained below, Plaintiffs' claims fail under both prongs. Plaintiffs are advancing non-cognizable legal theories—including, for example, their misappropriation of business ideas theory and their theory that the parties became "partners" or "joint venturers" by virtue of failed acquisition discussions. Nor do Plaintiffs have sufficient facts to support their theories. The Court should dismiss the complaint.

### *Argument*

## I.    THE COURT SHOULD DISREGARD PLAINTIFFS' SPEAKING EVIDENCE.

A court generally cannot consider material outside the complaint. *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original). However, a court may consider exhibits attached to the complaint as well as documents alleged in the complaint, whose authenticity no party questions, but which are not physically attached to the pleading. *Capcom,* 2008 WL 4661479 at *3.[2]

Plaintiffs here rely on a set of extrinsic evidence to save their pleading. (*See* Scherb Decl., Exs. A-J). While a Court may, in appropriate circumstances, consider extrinsic evidence on a 12(b)(1) motion, plaintiffs' documents are not confined to Fusion Garage's motion to dismiss the Lanham Act claim on standing grounds; they are cited in support of the fraud claim, the *merits* of the Lanham Act claim, and are also peppered throughout plaintiffs' Statement of Facts. Moreover,

---

[2]   Plaintiffs do not oppose Fusion Garage's own request for judicial notice of certain public blog posts (Dkt. 21), made in conjunction with Fusion Garage's Opening Brief.

1    these documents were neither attached to the complaint nor referenced in it.  This submission was

2    improper and plaintiffs nowhere provide a legal basis for the Court to consider the speaking

3    evidence.  The Court should disregard the evidence, disregard plaintiffs' Opposition which relies

4    on the evidence, and dismiss the complaint.

5    **II.    PLAINTIFFS' LANHAM ACT CLAIM FAILS**

6        **A.    Plaintiffs Lack Standing**

7            Plaintiffs admit that standing for a false advertising claim under the Lanham Act requires

8    the plaintiff to show "competitive injury."  (Opp. Br. at 4-5).  Yet plaintiffs have now admitted in

9    this case that they have no product, nor do they have concrete plans to release one.  Plaintiffs'

10   principal, Michael Arrington, submitted a declaration in this case attesting that "it is *not*

11   *inconceivable* that TechCrunch *could* start over and develop a new device for the same market

12   Fusion Garage presently is trying to misappropriate for itself."  (Dkt. No. 26, Arrington Decl., ¶ 33

13   (emphasis added)).  Plaintiffs' own evidence conclusively establishes that plaintiffs did not, and

14   would not, suffer a "competitive injury" from Fusion Garage's statements.

15           Plaintiffs' Opposition Brief illustrates ██████████████████████████████████████

16   ██████████████████████████████.  Specifically, plaintiffs quote deposition

17   testimony from Mr. Arrington in which he states that ████████████████████████████

18   ███████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   █████████████████████████████████████████████████████

21   ███████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████

23   █████████████████████████████████████  are legally insufficient to establish

24   standing under the Lanham Act.  *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1112 (2d Cir.

25   1997) ("Friedlander's hopes of eventually obtaining FDA approval and selling a retail weight loss

26   product are too remote at this stage to confer standing to challenge PDK's advertising [under the

27   Lanham Act]"); *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 391 F. Supp. 2d 1148, 1163

28   (S.D. Fla. 2005) (denying standing under the Lanham Act where plaintiff "only has a speculative

product"); *Joint Stock Society v. UDV N. Am., Inc.*, 53 F. Supp. 2d 692, 709 (D. Del. 1999) ("plaintiffs mere hopes or dreams of entering the U.S. market to sell their SMIRNOV vodka products are presently too tenuous or nebulous to establish standing under the Lanham Act.")[3]

The main case that plaintiffs cite to support their standing argument, *Tercica, Inc. v. Insmed Inc.,* is inapposite. In *Tercica,* the Court upheld standing under the Lanham Act where the plaintiff had already received FDA approval for its competing pharmaceutical product, had already "beg[u]n commercializing" that product, and where at least one doctor had already started prescribing the product. *Tercica,* 2006 WL 1626930 at *17 n. 20. For plaintiffs to analogize their situation to *Tercica* is absurd. Plaintiffs have not begun developing, commercializing, or selling any competing web tablet, much less received government approval for such product. ███████ ██████████████████████████████████████ No court has *ever* upheld Lanham Act standing under these facts.

In a final attempt to salvage standing under the Lanham Act, plaintiffs argue that they should possess standing on equitable grounds because it was Fusion Garage's allegedly wrongful conduct that drove them from the market. *See* Opp. Br. at 6. But plaintiffs cannot plausibly argue that Fusion Garage's advertising statements drove them from the market, since the complaint alleges that these advertising statements were made on December 7, 2009 – a week *after* plaintiffs formally ended their "CrunchPad" web tablet project. (*See* Cmpl. ¶¶ 60-61; Dkt. 22, Ex. C ("End of the CrunchPad" blog post, dated November 30, 2009)).[4] Because there is no causal connection between Fusion Garage's advertising statements and plaintiffs' exit from the web tablet market,

---

[3] Contrary to plaintiffs' arguments, it is perfectly appropriate to resolve a Lanham Act claim at the motion to dismiss stage where plaintiffs cannot show competitive injury and therefore lack standing. *See Alphamed*, 391 F. Supp. 2d at 1165; *Praxair, Inc. v. Gen. Insulation Co.*, 611 F. Supp. 2d 318, 328-29 (W.D.N.Y. 2009).

[4] For this reason, plaintiffs' citation to *Thorn v. Reliance Van Co.*, 736 F.2d 929 (3d Cir. 1984) is beside the point. In *Thorn*, the Third Circuit held that a principal stockholder of a shipping company had standing to sue a rival shipping company over advertising statements *that allegedly drove his company from the market. See id.* at 931. As discussed above, plaintiffs cannot allege that Fusion Garage's advertising statements drove them from the market, since plaintiffs had formally exited the market a week before Fusion Garage made its advertising statements and because plaintiffs were never formally in the market in the first place.

1    plaintiffs cannot use Fusion Garage's supposed wrongdoing as a hook by which to obtain Lanham

2    Act standing. *PDK Labs*, 103 F.3d at 1112 ("Friedlander and PDK are not competitors for

3    purposes of Lanham Act standing because Friedlander does not currently sell a retail weight loss

4    product that competes with PDK's products. This holds true whether or not PDK is selling its

5    products lawfully.")

**B.    Plaintiffs Cannot Make Out a False Advertising Lanham Act Claim Based on True Statements**

Even if plaintiffs did have standing to assert a Lanham Act claim, they cannot allege the

falsity of many of the advertising statements at issue – and falsity is a necessary requirement for a

Lanham Act claim. *See* 15 U.S.C. § 1125(a). Plaintiffs argue that the truth or falsity of Fusion

Garage's advertising statements is a question of fact that cannot be decided in a motion to dismiss.

(Opp. Br. at 7). Yet plaintiffs bear the burden of drafting a complaint that is "plausible on its

face," *Twombly*, 550 U.S. at 570, and plaintiffs have not plausibly alleged the falsity of many of

the statements at issue. For instance, as explained in Fusion Garage's Opening Brief, the

Complaint itself shows that Fusion Garage's statements about the parties never coming to terms

and the lack of a signed agreement between the parties are *true*, not false. (Opening Br. at 13-14)

(listing four advertising statements that the Complaint itself shows to be true). Accordingly, these

statements cannot give rise to a Lanham Act claim.[5]

**C.    Plaintiffs Cannot Make Out a Lanham Act Claim Based on Fusion Garage Taking Credit for the Creation of Its Product**

Most of the other advertising statements in plaintiffs' Lanham Act claim involve Fusion

Garage taking credit for the development and funding of the JooJoo. (Cmpl. ¶ 61). But

statements taking credit for the creation of a product do not address the "nature, characteristics, or

qualities" of the product and thus cannot give rise to a Lanham Act false advertising claim under

---

[5]  Plaintiffs urge this Court to adopt an "all or nothing" approach to their Lanham Act claim, and they resist the conclusion that the Court may selectively strike individual Fusion Garage statements if it determines that such statements cannot work a Lanham Act violation. (Opp. Br. at 8 n. 2). But plaintiffs do not address the cases from this Circuit in which courts *have* stricken individual advertising statements when they determined that these statements could not violate the Lanham Act. *CollegeNet, Inc. v. Embark.com, Inc.*, 230 F. Supp. 2d 1167, 1176-78 (D. Or. 2001).

1  Ninth Circuit law. *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009)

2  (relying on Ninth Circuit law).

3        Plaintiffs do not even attempt to distinguish this case from *Baden Sports*, but rather argue

4  that *Baden Sports* "miscontru[ed] Ninth Circuit law." (Opp. Br. at 10). Plaintiffs argue that

5  "*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) . . . implies the existence

6  of false authorship claims under the false advertising provisions of the Lanham Act. *Sybersound*

7  noted that 'the nature, characteristics, and qualities of karaoke recordings under the Lanham Act

8  are more properly construed to mean characteristics of the good itself, ***such as the original song***

9  ***and artist*** of the karaoke recording.'" (Opp. Br. at 9) (plaintiffs' emphasis).

10        This confusing argument misreads *Sybersound*. Obviously, in the context of a karaoke

11  recording, the "original song and artist" implicate the "characteristics of the good itself."

12  *Sybersound*, 517 F.3d at 1144. A karaoke recording of a Bruce Springsteen song is not the same

13  thing as a karaoke recording of a Fleetwood Mac song, and it would be false advertising to label

14  one as the other. But Fusion Garage's statements taking credit for the creation of the JooJoo tablet

15  do not implicate the characteristics of the tablet itself. The proper analogy to *Sybersound* would

16  be a karaoke producer who took credit for making a karaoke recording of a Bruce Springsteen

17  song. *Sybersound* nowhere states that such a statement would implicate the "characteristics of the

18  good itself," or that a rival karaoke producer could bring a Lanham Act claim asserting that *he*

19  created the karaoke recording at issue.

20      **D.**    <u>**Plaintiff Cannot Save its Lanham Act Claim by Relabeling Fusion Garage's**</u>
<u>**Product Statements as Statements About the Parties' "Commercial Activities"**</u>

21        Plaintiffs next argue that Fusion Garage's statements address "commercial activities" as

22  well as "goods" and are actionable through the "commercial activities" prong of the Lanham Act.

23  (Opp. Br. at 10-11). Plaintiffs cannot dodge the impact of *Baden Sports* and *Sybersound* by

24  claiming that Fusion Garage's advertising statements about the JooJoo merely address the parties'

25  "commercial activities." On a formal level, *every* statement about a "good" also involves a

26  "commercial activity," since goods are inherently part of commerce. Plaintiffs cannot re-label

27  Fusion Garage's JooJoo-related statements as statements about the parties' "commercial activities"

28

-6-
**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR
A MORE DEFINITE STATEMENT**

1    rather than about the product.  Rather, as discussed above, the statements that Fusion Garage made

2    about the creation or funding of the JooJoo cannot work a Lanham Act violation because they do

3    not address the "nature, characteristics, and qualities" of that product.

          **E.    Plaintiffs Cannot Base a Lanham Act Claim on Statements About Mr.**
4                 **Arrington**

5              Finally, plaintiffs argue that they can make out a Lanham Act violation based on

6    statements about non-party Michael Arrington, such as the statement that "Michael did not deliver

7    on his promises."  (Opp. Br. at 11; Cmpl. ¶ 61).  Plaintiffs argue that in *Proctor & Gamble Co. v.*

8    *Haugen*, 222 F.3d 1262 (10th Cir. 2000), the company was allowed to sue regarding statements

9    made about its president.  Plaintiffs misconstrue *Haugen*.  In that case, the defendant disseminated

10   messages suggesting P&G was affiliated with the church of Satan and pointed to an alleged

11   appearance by the P&G president on the Phil Donahue show as support.  P&G sued not about

12   statements made about its president, but about statements linking P&G (the company) to Satan.

13   Here, Plaintiffs are suing about statements made about Mr. Arrington the individual.

14            Plaintiffs attempt to conflate Mr. Arrington with TechCrunch, but they have not alleged

15   that Mr. Arrington is TechCrunch's alter ego and he is not a party.  The Court should dismiss the

16   claim or strike the alleged statement regarding Mr. Arrington.

17   **III.   PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY FAILS**

18            Fusion Garage's opposition to plaintiffs' Motion for a Preliminary Injunction provides a

19   detailed legal analysis regarding why plaintiffs' breach of fiduciary duty claim fails.[6]  Given that

20   the Court will hear this Motion to Dismiss and plaintiffs' Motion for Preliminary Injunction the

21   same day, Fusion Garage does not repeat all of those arguments here.  Certain arguments in

22   plaintiffs' Opposition merit the following reply.

23

24

25   ───────────────
     [6]   Fusion Garage explained, inter alia, that the breach of fiduciary duty claim failed because the
26   parties were not in business together and the supposed partnership was premised on contingencies
     that did not occur.  *Love v. The Mail on Sunday*, 489 F. Supp. 2d 1100 (C.D. Cal. 2007) (no
27   partnership where parties co-wrote songs but were not co-owners of a business); *Bustamante*, 141
     Cal. App. 4th at 212-13 (no joint venture where funding contingencies not met).
28

### A.   Mr. Arrington's Repeated Threats to "Shut Down the Project" Are Not Consistent with a Partnership or Joint Venture

Plaintiffs' fiduciary duty claim is based on the allegation of a partnership or joint venture between the parties. However, Mr. Arrington's repeated threats to unilaterally shut down the web tablet project (as described in plaintiffs' own Complaint) are inconsistent with a partnership or joint venture. (*See* Opening Br. at 18-19). In response, plaintiffs argue that "[t]he very fact that the parties could contemplate ending their joint venture shows that one existed." (Opp. Br. at 12). That is circular and incorrect. It is hornbook law that "[w]here joint venturers, by their agreement, voluntarily assume a definite and particular undertaking, *the venture is not one that can be unilaterally dissolved.*" 40 Cal. Jur. 3d Joint Ventures § 11 (emphasis added). Thus, Mr. Arrington's belief that he could unilaterally dissolve the "project" shows that he did not consider the project to be a joint venture. Plaintiffs cannot plausibly claim a partnership or joint venture between the parties when their own representative demonstrated (through his threats) that no such relationship existed because he was solely in charge. In other words, plaintiffs' claim of a partnership or joint venture between the parties is not "plausible on its face." *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007).

### B.   The Complaint Does Not Specify the Terms of the Supposed Partnership and Is Too Vague and Uncertain to State a Claim

Moreover, as discussed in Fusion Garage's Opening Brief, the Complaint is too vague and uncertain to state a claim for breach of fiduciary duty. Most notably, neither the Complaint nor plaintiffs' Opposition explains what the terms of the alleged partnership or joint venture were. *Bustamante*, 141 Cal. App. 4th at 211 ("rather than being definite, all of the following terms – which Bustamante represents as material – were actually unsettled both before and after the alleged commitment by Intuit: the form and amount of Bustamante's compensation; the extent, duration, and nature of his management role, if any; the amount of Intuit's royalty; the equity percentage held by him, 'the management team,' Intuit, and outside investors; and the liquidity path for both Bustamante and investors."). Plaintiffs do not allege what the material terms (e.g., profit sharing, cost sharing, equity percentage, management, duration, etc.) of the supposed partnership or joint venture were. For this reason alone, the breach of fiduciary duty claim fails.

**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT**

1    Nor does the Complaint specify whether Fusion Garage allegedly owed a fiduciary duty to

2    Plaintiff TechCrunch, Plaintiff CrunchPad, Inc., or both (or Mr. Arrington).  Plaintiffs attempt to

3    brush aside this ambiguity by asserting that "the Complaint is clear: 'This complaint uses

4    'TechCrunch' to refer both Interserve [] and [CP].'"  (Opp. Br. at 13 (brackets in original)).  But

5    the Complaint is *not* clear, and plaintiffs' assertion that the term "TechCrunch" always refers to

6    both plaintiffs is simply implausible.  For instance, paragraph 9 of the Complaint asserts that

7    "TechCrunch holds an esteemed position in the technology world for providing information and

8    analysis concerning new technologies."  But while TechCrunch may hold an esteemed position in

9    the blogging community, CrunchPad, Inc. surely does not.  According to the Complaint,

10   CrunchPad, Inc. was simply a corporation set up to commercialize the CrunchPad.  (Cmpl. ¶ 4).

11   There is no suggestion that CrunchPad, Inc. provides information and analysis to the public, or

12   that it is "esteemed" for doing so.  Thus, when the Complaint alleges that Fusion Garage had a

13   fiduciary duty to "TechCrunch," (*Id.* ¶ 78), there is a critical ambiguity about whether Fusion

14   Garage allegedly owed fiduciary duties to TechCrunch, CrunchPad, Inc. (the company that was to

15   acquire Fusion Garage), or both.  Accordingly, the claim fails.

16       **C.    TechCrunch's Judicially Noticeable Declaration Belies the Existence of a Partnership**

17

18       Since Fusion Garage filed its Motion to Dismiss, plaintiffs have submitted a declaration

     that belies the existence of a partnership and Plaintiffs' Opposition does not square this declaration

19   with their breach of fiduciary duty allegations.[7]  The declaration contains an admission that is fatal

20   to plaintiffs' position that a partnership existed.  (Dkt. No. 26 (Arrington Decl. ¶ 31 ("[t]he parties

21   agreed that each would bear its own losses of time, energy, and money if the project was not

22   successful, and to share profits if it was.")).  Mr. Arrington's statement, were it true, conclusively

23   establishes that there was no partnership, because a partnership is an agreement to share profits

24   and losses.  *See In re CMR Mortg. Fund, LLC*, 416 B.R. 720, 733 (Bankr. N.D. Cal. 2009) ("A

25

26   _____

     [7]  Fusion Garage respectfully requests that the Court take judicial notice of this declaration, which
27   was publicly filed in this case.  *United States ex rel. Robinson Rancheria Citizens Council v.
     Borneo, Inc.*, 971 F. 2d 244, 248 (9th Cir. 1992) (court may take judicial notice of court records
28   that have a direct relation to matters at issue).

**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR
A MORE DEFINITE STATEMENT**

1   partnership involves two or more people who contribute capital or labor with an understanding

2   that they will proportionately share profits and losses").  Moreover, the term "success" is

3   undefined and apparently would be determined solely by Plaintiffs.  The breach of fiduciary duty

4   claim—premised on there being a partnership or joint venture—fails to state a claim.

5   **IV.   PLAINTIFFS' FRAUD AND DECEIT CLAIM FAILS**

6       **A.   The Fraud Claim Fails on 9(b) Grounds[8]**

7           A fraud claim requires heightened pleading specificity.  Fed. R. Civ. P. 9(b); *FTC v. Swish*

8   *Marketing*, 2010 WL 653486 at * 2 (N.D. Cal. 2010) (Seeborg, J.); *Aureflam Corp. v. Pho Hoa*

9   *Phat I, Inc.*, 2005 WL 2253813 at *2 (N.D. Cal. 2005) (Seeborg, J.) (dismissing fraud claim

10  without leave to amend).  Plaintiffs' Opposition includes a chart that purports to set forth the

11  "who, what, when, and where" of the alleged fraud.  Opp. Br., pp. 18-19.  The chart, however, is

12  replete with vague *conclusions* of supposed fraud that are insufficient.  *Id.* ("FG never intended to

13  consummate the merger"; "FG misrepresented its progress and induced TC to continue the joint

14  venture, especially in light of other material concealments from TC"; "FG misrepresented its

15  intention to collaborate on the joint venture.").  Such conclusions are insufficient.  *Aureflam*, 2005

16  WL 2253813 at *2 ("however, 'mere conclusory allegations of fraud are insufficient.'").

17          Plaintiffs' chart also reinforces that their fraud claim is completely at variance with their

18  other claims.  The "loss causation" rows in the chart indicate that plaintiffs contend they *would not*

19  *have continued* with the supposed joint venture but for the alleged misrepresentations.  Opp. Br.,

20  pp. 18-19.  However, plaintiffs are suing Fusion Garage for allegedly ousting plaintiffs from the

21  supposed joint venture that plaintiffs now say they would not have continued in the first place.

22      **B.   The Fraud Claim Fails Because Plaintiffs Cannot Plausibly Show a
            Partnership or Joint Venture**

23          As discussed, *supra*, plaintiffs cannot plausibly show a partnership or joint venture

24  _____

25  [8]   The fraud claim begins with the following, fatally imprecise statement: "TechCrunch
    incorporates by reference and realleges paragraphs 1 through __ above." (Cmpl. ¶ 92).  Needless

26  to say, incorporating undefined paragraphs does not pass muster under either Rule 8 or Rule 9(b)
    pleading standards.  In response, plaintiffs argue that "incorporation by reference is a common

27  technique." (Opp. Br. at 20).  But incorporating *undefined* paragraphs is *not* a common technique,
    and this practice does not put Fusion Garage on notice as to the contours of the fraud claim.

28

1    between the parties.  Plaintiffs' failure to show a partnership or joint venture necessarily defeats

2    their fraud claim, because the reliance element of the fraud claim is based on the allegation that

3    "[Fusion Garage's] misrepresentations were intended to and did induce TechCrunch to enter into a

4    joint venture with Fusion Garage, and then induced TechCrunch to stay in the joint venture."

5    (Cmpl. ¶ 45).  Without a joint venture between the parties, there can be no reliance by plaintiffs,

6    and thus there can be no fraud.  *Small v. Fritz Co., Inc.*, 30 Cal. 4th 167, 173 (2003) (listing

7    "justifiable reliance" as a required element of fraud).

8         Moreover, even if plaintiffs *could* allege that the parties were in a joint venture, their

9    allegation that Fusion Garage's misrepresentations induced them to stay in the joint venture is

10   implausible in several respects.  For instance, plaintiffs assert that "FG overstated the costs of the

11   CrunchPad's components by $20-30 per unit.  FG's misrepresentation and concealment of the true

12   costs was 'material and critical to TC's decision to . . . continue [the] partnership." (Opp. Br. at 16

13   (citing Cmpl. ¶¶ 51, 57)).  But it is illogical to say that Fusion Garage induced plaintiffs to stay in

14   the partnership or joint venture by overstating the CrunchPad's component costs.  To the contrary:

15   the venture would presumably become *less* attractive (and less profitable) to plaintiffs as the

16   CrunchPad's component costs increased.

17        **C.    The Fraud Claim Fails Because Plaintiffs Cannot Show Proximate Harm**

18        As for Fusion Garage allegedly puffing its credentials and concealing the loss of Pegraton

19   as an ODM, Fusion Garage explained in its Opening Brief why plaintiffs cannot show proximate

20   harm from these alleged statements or omissions.[9]  (Opening Br. at 21-22).  In response, plaintiffs

21   argue that they were harmed by Fusion Garage allegedly puffing its credentials because Fusion

22   Garage "owes any success it may attain to usurping the fruits of the CrunchPad project from TC."

23   (Opp. Br. at 16).  This allegation makes no sense, because there is no proximate connection

24   between Fusion Garage allegedly puffing its credentials when it first met TechCrunch in August

---

25   [9]   On this point, plaintiffs argue that there is no heightened standard for pleading proximate harm

26   in a fraud case.  (Opp. Br. at 15-16).  Plaintiffs are incorrect.  *See Roque v. Suntrust Mortg., Inc.*,
     No. 09-40, 2010 WL 546896, *5 (N.D. Cal. Feb. 10, 2010) ("In order to state a claim for fraud,

27   plaintiff must plead the following elements *with specificity* . . . (4) justifiable reliance and resulting

28   damage.") (emphasis added).

**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR
A MORE DEFINITE STATEMENT**

1  2008 and Fusion Garage allegedly "usurping the fruits of the CrunchPad project" more than a year

2  later after the parties' merger talks broke down.

3       As for Fusion Garage allegedly concealing the loss of Pegatron as an ODM, plaintiffs

4  allege that "[b]ecause FG concealed the true state of affairs, TC 'continu[ed] its collaboration and

5  its contribution of money, effort, and services to help develop and market the CrunchPad, all to its

6  detriment." (Opp. Br. at 17). This assertion is at variance with plaintiffs' joint venture and

7  partnership claim: if they were working hand in glove with Fusion Garage, Plaintiffs would have

8  known the status of the ODM. Plaintiffs' contention that Fusion Garage "concealed" the loss of

9  Pegatron makes their joint venture and partnership allegations all the more implausible.

10 **V.    PLAINTIFFS' CLAIM FOR MISAPPROPRIATION OF BUSINESS IDEAS FAILS**

11      **A.    Misappropriation of Business Ideas Is Not a Valid Tort**

12      Plaintiffs principally rely on *Hollywood Screentest of Am., Inc. v. NBC Universal, Inc.*, 151

13 Cal. App. 4th 631 (2007) to support their argument that "misappropriation of business ideas" is a

14 valid tort. (Opp. Br. at 20-21). But *Hollywood Screentest* does not support this proposition. The

15 plaintiff in *Hollywood Screentest* unsuccessfully pitched his idea for a reality television show to

16 NBC, and then sued for common-law misappropriation when NBC came out with its own show

17 that allegedly included certain elements from plaintiff's pitch. *Id.* at 636, 638. In response, NBC

18 argued that this cause of action failed because ideas are not considered property in California, and

19 a plaintiff can only bring a common-law misappropriation claim if he has a property interest in the

20 item that was allegedly misappropriated. *See id.* at 650 n. 10. The court *declined to reach this*

21 *argument*, since it found that plaintiff's misappropriation claim failed in all events because of

22 undisputed evidence of independent creation. *Id.* A court declining to reach a defendant's

23 argument about the nonexistence of a cause of action does not provide authority for the

24 proposition that the claim does, in fact, exist. Plaintiffs' reliance on *Hollywood Screentest* is

25 misplaced.

26      Nonetheless, *Hollywood Screentest* does provide a formulation for the elements of

27 common-law misappropriation under California law, and this formulation shows that "business

28 ideas" cannot be subject of a misappropriation claim. Specifically, *Hollywood Screentest* stated

**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR
A MORE DEFINITE STATEMENT**

that "[t]he elements of a cause of action for common law misappropriation are: '1) the plaintiff has made a substantial investment of time, effort and money into creating the thing misappropriated, *such that the court can characterize the 'thing' as a kind of property right . . .*" *Id.* at 650 (emphasis added). As Fusion Garage explained in its Opening Brief, mere ideas cannot be subject to a common-law misappropriation claim because they are not property under California law. *Desny v. Wilder*, 46 Cal. 2d 715, 731-32 (1956) (California does not accord property rights to mere ideas). As much as plaintiffs want to own their ideas as property, and as much as plaintiffs want their ideas to form the basis for a tort, the tort does not exist in California. Notably, plaintiffs' opposition brief does not even *address* the argument that ideas are not property under California law. The Court should dismiss the claim.

**B.   Plaintiffs Cannot Bring an Implied-in-Fact Contract Claim for Their Publicly-Disclosed Ideas**

Plaintiffs also cannot repackage their misappropriation claim as an implied-in-fact contract claim, because there is no allegation that Fusion Garage agreed (explicitly or implicitly) to compensate plaintiffs for their "ideas." (Opening Br. at 9-10). Moreover, an implied-in-fact contract claim fails on its face where (as here) the ideas disclosed to the defendant were also disclosed to the public at large, because it is implausible to infer that a defendant would agree to pay for such widely-disseminated ideas.

In response, plaintiffs argue that "disclosure to the public is a factual inquiry not appropriate for resolution on the pleadings." (Opp. Br. at 21). Plaintiffs are incorrect. There is at least one recent case in which this Court dismissed an implied-in-fact contract claim under Rule 12(b)(6) on the ground that plaintiff's "design ideas" had been previously disclosed to the public at large. *See Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, No. 07-3983, 2007 WL 4532214, *7-8 (N.D. Cal. Dec. 19, 2007).

Plaintiffs next argue that they only made "generalized statements" about their web tablet which "utterly lack the specificity that would give rise to a 'public disclosure' of an actionable idea." (Opp. Br. at 22). But this argument ignores the fact that plaintiffs "business ideas" are *themselves* highly general – almost absurdly so. As disclosed in Paragraph 87 of the Complaint,

-13-

**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT**

1   plaintiffs' supposed business ideas include: (1) a large-screen, touchscreen device; (2) a white

2   background; (3) large icons; (4) rapid booting straight to a browser; (5) no desktop or hard drive;

3   (6) proxying video directly to the device; (7) playing video in full high-definition; and (8) the use

4   of an application programming interface.  It is simply implausible that Fusion Garage (or any

5   other party) would agree to pay for commonplace, publicly-known and publicly-disclosed ideas.

6       **C.       Plaintiffs' Efforts to Avoid Preemption Fail**

7           Plaintiffs argue that "[t]his Court" has already reached the conclusion that their business

8   ideas claim is not preempted by the CUTSA in its ruling granting Fusion Garage's motion for a

9   protective order.  Opp. Br. at 23.  Plaintiffs' argument is misleading.  Magistrate Judge Trumbull

10  ruled that *"[f]or purposes of this motion"* for a protective order, the court would not find the claim

11  preempted.  (Dkt. 62, p. 5).  Magistrate Judge Trumbull proceeded to rule that Plaintiffs were

12  required to identify their "business ideas" pursuant to California Code of Civil Procedure section

13  2019.210—a statute that relates to trade secrets claims.[10]

14          Plaintiffs' efforts to avoid preemption also show the extent to which they are talking out of

15  both sides of their mouth in trying to save their claim.  Plaintiffs insist that they are not bringing a

16  trade secrets claim, but as noted *supra*, they argue they only published on the TechCrunch blog

17  generalities regarding their ideas—meaning that plaintiffs believe there is something confidential

18  beyond such generalities that Fusion Garage allegedly misappropriated.  Plaintiffs have simply re-

19  labeled a trade secrets claim as a "business ideas" claim that doesn't exist.  The Court should reject

20  plaintiffs' artful attempt to plead around CUTSA and should find that the "misappropriation of

21  business ideas" claim is pre-empted.  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations,*

22  *Inc.*, 171 Cal. App. 4th 939, 957 (2009) (finding claims of breach of contract, interference with

23  contract, and unfair competition preempted by CUTSA).

24

25

26  _____

[10]   Fusion Garage has filed a renewed motion for a protective order because Plaintiffs' description
27  of their "business ideas" in response to Magistrate Judge Trumbull's ruling was deficient. (Dkt.
    93).
28

04049.51632/3471904.5

**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR
A MORE DEFINITE STATEMENT**

## VI. PLAINTIFFS' CLAIM FOR FALSE ADVERTISING AND UNLAWFUL BUSINESS PRACTICES UNDER CALIFORNIA LAW FAILS

Plaintiffs argue that their false advertising and unlawful competition claims under California law may succeed even if their other claims fail, on the theory that "California law on unfair competition and false advertising is broader than the Federal counterpart." (Opp. Br. at 25). But plaintiffs did not bring a claim for "unfair" business practices; they instead brought a claim for "unlawful" business practices. (*See* Cmpl. page 19 ("FIFTH CAUSE OF ACTION: UNLAWFUL BUSINESS PRACTICES AND FALSE ADVERTISING UNDER CALIFORNIA LAW")). As Fusion Garage explained in its Opening Brief, a claim for "unlawful business practices" under the California Business & Professional Code requires violation of some other, predicate law. (Opening Br. at 23 (citing *Cel-Tech Commn's, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). Because plaintiffs' other claims all fail, there is no violation left to "borrow" for an unlawful business practices claim.

As for plaintiffs' false advertising claim under California law, plaintiffs do not dispute that standing for such a claim is limited to "any person who has suffered an injury in fact and has lost money or property as a result [of the false advertising.]" *Harper v. 24 Hour Fitness, Inc.*, 167 Cal. App. 4th 966, 975 (2008). Plaintiffs cannot show that they "lost money or property" as a result of Fusion Garage's advertising statements, given that plaintiffs exited the web tablet marketplace before these statements were even uttered. Accordingly, plaintiffs lack standing to bring this claim just as they lack standing to bring their Lanham Act claim.

### *Conclusion*

For the foregoing reasons, Defendant Fusion Garage respectfully requests that the Court dismiss plaintiffs' claims or, in the alternative, order a more definite statement.

DATED: May 3, 2010                         QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP


                                            By    /s/
                                                 _____
                                                 Patrick C. Doolittle
                                                 Attorneys for Defendant

**REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR A MORE DEFINITE STATEMENT**