**\*\*E-filed 08/24/2010\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

INTERSERVE, INC., et al.,

        Plaintiffs,

  v.

FUSION GARAGE PTE. LTD,

        Defendant.
_____/

No. C 09-5812 RS (PVT)

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION, AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

## I. INTRODUCTION

The parties to this action have widely divergent views as to the nature of their prior relationship and the legal consequences flowing from those interactions. What is not reasonably disputable, though, is that between September of 2008 and November of 2009, the parties collaborated in an attempt to bring to market a tablet computer, which they intended to call the "CrunchPad." Then, shortly before the parties had planned to announce that the product would soon be released, defendant Fusion Garage advised plaintiffs that it would proceed on its own, and market a tablet computer under the name "joojoo" instead.[1]

Plaintiffs filed this action contending, in essence, that they are co-owners of the joojoo. They seek a preliminary injunction requiring defendant to sequester all proceeds it obtains from

---

[1] Fusion Garage markets the product with the name in all lower case letters.

selling the product. Defendant opposes the motion for preliminary injunction, and moves to dismiss the complaint.

While plaintiffs have shown that defendant may have breached fiduciary duties arising from a joint venture between the parties, they have not established the likelihood of irreparable injury necessary to support a preliminary injunction. Additionally, even if plaintiffs eventually prove an entitlement to share in any *profits* realized from sales of the joojoo, their request to sequester 100% of the sales *proceeds* is overbroad and not tenable. Accordingly, the motion for a preliminary injunction will be denied. The motion to dismiss will be granted in part and denied in part.

## II. BACKGROUND

Michael Arrington is the founder and editor in chief of the widely read and influential "TechCrunch," blog, which focuses on Silicon Valley high technology companies and issues. Plaintiff Interserve, Inc. is a corporation formed to own and manage the blog and its related business interests. In July of 2008, Arrington posted an entry on TechCrunch proposing a project to develop, "a dead simple and dirt cheap touch screen web tablet to surf the web." The entry set out a specific strategy:

> We'll organize a small team of people to spec this out. First is the marketing document that just outlines what the machine will do – we have a first draft of that already and will post it soon. Then we'll spec out the hardware and get people to help write the customized Linux and Firefox code. Once we've completed the design we'll start to work with the supply chain company to get an idea on the cost of the machine (the goal is $200), and hopefully build a few prototypes.

The blog post invited members of the public to contribute to the project, promising prototypes to "[a]nyone who contributes significantly to the project." Notably the post went on to state, "[i]f everything works well, we'd then open source the design and software and let anyone build one that wants to." The name "CrunchPad" was subsequently chosen for the planned device.

Although the record is not clear as to when or why the vision for the project changed, at some point it apparently did. The complaint alleges that Arrington incorporated plaintiff CrunchPad, Inc. (CP, Inc.) as an "offshoot" of Interserve, for the purpose of "commercializing" the

1 CrunchPad. (Hereafter, plaintiffs will be referred to collectively as "TechCrunch," except where
2 there is a need to distinguish between the two entities.)

3     By the end of August 2008, TechCrunch had constructed an admittedly crude prototype,
4 which it referred to as "Prototype A." Then, following a conference held by TechCrunch in
5 September of that year, Arrington was introduced to Chandrasekhar Rathakrisnan, the founder of a
6 startup technology company based in Singapore and known as Fusion Garage. Fusion Garage
7 contends that at the time it was developing a customized software browser operating system,
8 although TechCrunch now alleges Fusion Garage misrepresented the nature of the product and its
9 development status.

10     The parties dispute what transpired next. TechCrunch contends that it and Fusion Garage
11 agreed to collaborate on the development of the CrunchPad. Fusion Garage asserts that the parties
12 began to negotiate—by email and by "on and off" verbal discussions—for an agreement by which
13 TechCrunch would acquire Fusion Garage. Indeed, for the next year or more the parties did
14 exchange a number of proposals for TechCrunch to purchase Fusion Garage in exchange for an
15 equity interest in the then newly-formed CP, Inc. Although the parties never reached a binding
16 agreement for such an acquisition, the record is clear that during the same time period they
17 nevertheless went forward with efforts to design and build the CrunchPad as a commercial product.
18 As TechCrunch describes it, the parties worked "hand in glove" for thirteen months. The parties'
19 joint efforts included all of the following:

20     • In December of 2008, Louis Monier of TechCrunch communicated with Fusion Garage to
21 help define the user interface, technical specifications, and software details for a working prototype
22 assembled by Mr. Monier's team. At the time, Fusion Garage commented: "This is great news.
23 Good to see the first signs of the baby."

24     • Fusion Garage's CEO and software team worked for several months largely from
25 TechCrunch's headquarters in Atherton, California.

26     • Fusion Garage publicly described the parties' work together: "It's our software running on
27 the tablet . . . We continue to work with Louis Monier on the feature set and the user experience . . .
28 . We would like to take the opportunity to thank Michael [Arrington] and Louis for giving us

the opportunity to work with them on the TechCrunch Tablet."

- Fusion Garage later reported, "the collaboration with the Crunchpad project happened as a result of meetings we had with Mike Arrington and co, subsequent to [the conference hosted by TechCrunch]. We worked closely with Louis Monier in getting the software in shape for the hardware prototype B. We continue to work with them in getting the software in shape to make crunchpad an easy to use device."

- TechCrunch paid some vendor bills incurred by Fusion Garage in development of the project.

- In August of 2009, at least two TechCrunch senior engineers traveled to Singapore and Taiwan to work with Fusion Garage on software, design, user interface issues, and with the parties' jointly-selected manufacturer, Pegatron, on hardware and pricing.

- TechCrunch sponsored business visas for four Fusion Garage Indian nationals working on the project. During September of 2009, Fusion Garage and TechCrunch personnel continued working together in TechCrunch's California offices to prepare the CrunchPad for its then-scheduled launch in November.

- As late as mid-November of 2009, Fusion Garage was proposing that the parties jointly announce the product at a November 20th event.

In late November of 2009, Fusion Garage advised TechCrunch that it was considering bringing the tablet computer to market without TechCrunch's participation. After some final negotiations back and forth, on December 7, 2009, Fusion Garage released a webcast announcing the introduction of the joojoo. This action soon followed.

## III. LEGAL STANDARDS

A. <u>Preliminary Injunction</u>

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

4

*N.R.D.C., Inc.*, 129 S.Ct. 365, 374 (2008). Injunctive relief is an "extraordinary remedy" and may only be awarded in response to a firm demonstration that the plaintiff is entitled to such relief. *Id*. at 376 (citation omitted).

While the *Winter* decision established that a party moving for preliminary relief must establish a "likelihood" of irreparable harm, the Ninth Circuit has recently clarified that courts should still evaluate the likelihood of success on a "sliding scale." *Alliance for Wild Rockies v. Cottrell*, __F.3d __, 2010 WL 2926463 (9th Cir. 2010) ("[T]he 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*.") As quoted in *Cottrell*, that test provides that, "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," provided, of course, that "plaintiffs must also satisfy the other *Winter* factors, including the likelihood of irreparable harm." 2010 WL 2926463 at *7.

B. <u>Motion to Dismiss</u>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory

1 statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); see also *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. U.S.A.,* 317 F.3d 1097, 1106 (9th Cir. 2003).

## IV. DISCUSSION

A. <u>Preliminary Injunction</u>

    1. *Existence of joint venture*

The heart of Fusion Garage's opposition to the motion for a preliminary injunction is its fervent argument that it never entered into a partnership or joint venture with TechCrunch, and that it therefore had no fiduciary duties towards TechCrunch with respect to exploiting the opportunity to develop and market a tablet computer. Fusion Garage argues that TechCrunch has failed to identify any trade secret or other legally protectable interest it has in the joojoo, which Fusion Garage contends is solely it own property, developed through its own efforts.[2]

A partnership is "the association of two or more persons to carry on as coowners a business for profit . . . *whether or not the persons intend to form a partnership*." Cal. Corp. Code § 16202 (a) (emphasis added). Additionally, an agreement to form a partnership can be "written, oral, *or implied*." Cal. Corp. Code § 16101 (10) (emphasis added). A joint venture differs little from a

---

[2] TechCrunch denies that it is asserting any claim for misappropriation of trade secrets, and that it is instead claiming misappropriation of "business ideas." TechCrunch, however, does not advance that claim as a basis for injunctive relief and it fails in any event for the reasons discussed below in connection with the motion to dismiss.

partnership. *Weiner v. Fleischman*, 54 Cal.3d 476, 483 (1991) ("From a legal standpoint, both relationships are virtually the same."). The term "joint venture" generally is used more often when the parties are jointly engaged in a single specific project, as opposed to operating an ongoing business enterprise together. *Id.* Nevertheless, a "joint venture may be of longer duration and greater complexity than a partnership" and "the courts freely apply partnership law to joint ventures when appropriate." *Id.* Here, because TechCrunch and Fusion Garage were jointly engaged in the development of a specific project—a tablet computer—the term "joint venture" is likely more apt than "partnership," but the distinction is of little consequence.

In both joint ventures and partnerships, the parties owe fiduciary duties to each other. *See Leff v. Gunter*, 33 Cal.3d 508, 514 (1983) ("Partners are trustees for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind." (quoting *Page v. Page* 55 Cal.2d 192, 197 (1961).). Of particular relevance here is the principle that, "[a] partner may not dissolve a partnership to gain the benefits of the business for himself, unless he fully compensates his copartner for his share of the prospective business opportunity." *Leff*, 33 Cal.3d at 515 (quoting *Page*, 55 Cal.2d at 197).

Fusion Garage advances six basic arguments in support of its contention that the parties' relationship here was neither a partnership nor a joint venture. First, Fusion Garage points to statements by Arrington proposing that while TechCrunch and Fusion Garage would share in any profits derived from the CrunchPad, each would "bear its own losses of time, money, and energy if the project was not successful." Because a partnership typically includes an agreement to share in profits *and losses*, Fusion Garage contends this shows the parties were not in a partnership or joint venture. Fusion Garage reads too much into Arrington's statement. In any partnership or joint venture, each party typically contributes resources—be they time, energy, or in some cases *only* money—to the joint undertaking, and each party stands to lose what it has contributed should the project fail. Arrington's statement appears to reflect little more than this basic reality.

7

Sharing in "losses," in contrast, refers not only to the loss of such contributions, but also to the responsibility all partners or joint venturers have for any debts and obligations the enterprise may incur above and beyond what they have each invested. Nothing in Arrington's statement attempts to disclaim any responsibility either party would have for such losses, rather he seems to have been optimistically assuming few if any obligations would be incurred, at least in the development stages. Additionally, the record indicates that when the project *did* incur debts to third parties, TechCrunch in fact assisted Fusion Garage in meeting those obligations.[3]

Fusion Garage next contends that no partnership or joint venture could have existed because a TechCrunch employee at one point proposed taking certain actions that would have violated any fiduciary duties TechCrunch held towards Fusion Garage. This shows, Fusion Garage contends, a "clear belief" on Tech Crunch's part that no fiduciary duties existed, thereby supporting a conclusion that there was in fact no partnership. TechCrunch has adequately shown, however, that it took steps to reject its employee's suggestions. At most, therefore, Fusion Garage has shown a potential *breach* of fiduciary duty by TechCrunch, or an attempted breach, not that there was no partnership or joint venture giving rise to fiduciary duties in the first instance.

Fusion Garage also points to evidence that at certain points in time Arrington threatened to terminate the project and end the parties' relationship. Contending that there can be no partnership or joint venture where one party reserves a "unilateral" right to end it, Fusion Garage argues this disproves TechCrunch's claims. The flaw in this argument is that any partner or joint venturer generally *does* have the unilateral right to dissolve the relationship. The only caveat is that doing so does not immediately end the fiduciary duties, or the obligation of the dissolving party to "fully compensate[] his copartner for his share of the prospective business opportunity." *Leff*, *supra*, 33

---

[3] Furthermore, the absence of any specific agreement as to the sharing of profits and losses does not preclude the formation of a partnership. *Holmes v. Lerner*, 74 Cal.App.4th 442, 454 (1999) ("The presence or absence of any of the various elements set forth [in the prior statute governing partnerships], *including sharing of profits and losses*, is not necessarily dispositive . . . [T]he crucial factor [is] the intent of the parties revealed in the terms of their agreement, *conduct, and the surrounding circumstances* when determining whether a partnership exists." (emphasis added)). Here, the parties' conduct in jointly working to develop a tablet computer speaks louder than any uncertainties that may have existed between them as to the details of how their relationship would be structured.

8

1 Cal.3d at 515 (quoting *Page*, *supra*, 55 Cal.2d at 197). Fusion Garage has not pointed to any evidence that Arrington's threats to terminate the project were accompanied by any intent to appropriate the parties' joint property or business opportunity to TechCrunch alone, without any compensation to Fusion Garage that might be required under the particular circumstances existing at the time.[4]

Fusion Garage further asserts that there is no evidence the parties were "co-owners of a business." While this argument may support the notion that the relationship between TechCrunch and Fusion Garage was more appropriately labeled as a "joint venture" than a "partnership," it does not undermine the conclusion that they held fiduciary duties toward each other. *See Weiner*, *supra*, 54 Cal.3d at 482 ("A joint venture usually involves a single business transaction."); *Leff*, *supra*, 33 Cal.3d at 514 (joint venturers "assume[] the status of fiduciaries" and none of them can pursue the object of the venture "to the exclusion of the others.")

Fusion Garage next offers a series of closely related arguments that no partnership or joint venture came to fruition in light of the fact that the parties were negotiating for an acquisition of Fusion Garage by CP, Inc. that never was finalized and because various contingencies never came to pass. Fusion Garage relies heavily on cases such as *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 191 (2006) and *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 201 F.Supp.2d 1035 (N.D.Cal. 2001) in which parties' negotiations for prospective cooperation in business ventures were found not to have given rise to any partnerships or joint ventures, or attendant fiduciary duties. In those cases, however, the parties had not jointly put effort into developing, designing and building a tangible product to bring to market, or in any other way actually begun the business the proposed collaboration was intended to undertake. Here, while TechCrunch and Fusion Garage may have been in ongoing negotiations for the purpose of structuring their relationship in some other fashion other than that of joint venturers or partners, that in no way undermines the legal effect of the conduct they undertook in jointly developing the tablet computer.

---

[4] While any such evidence, if it existed, could conceivably give rise to the doctrine of unclean hands that might affect TechCrunch's ability to pursue its claims, it would not in and of itself prove that no partnership or joint venture had ever been formed.

9

Finally, Fusion Garage argues that the terms of the parties joint venture were simply to uncertain and unsettled to be enforceable. While it may be true that the parties never reached a meeting of the minds on how the business would operate on an ongoing basis, their cooperative efforts in developing the product were sufficient to give rise to an obligation on both parties' part not to usurp the fruits of those efforts. *See Holmes*, supra, 74 Cal.App.4th at 457-459 (rejecting contention that partnership agreement was too indefinite and affirming jury verdict of breach based on evidence that the parties had agreed "it's going to be our baby, and we're going to work on it together," and had in fact done so.) Accordingly, TechCrunch has made a credible showing that it may be able to establish the existence of a joint venture under which Fusion Garage owed it certain fiduciary duties. Such duties may have precluded Fusion Garage from proceeding to market with the joojoo without taking appropriate steps to dissolve the relationship and to compensate TechCrunch.[5]

2. *Irreparable harm and scope of relief*

Even assuming TechCrunch has made a sufficient showing as to the likelihood of success on its breach of fiduciary duty claim, however, it has failed to show that any injunctive relief, much less the specific relief it requests, is warranted. This is not a case where a plaintiff seeks to enjoin the sale of a product based on alleged infringement of intellectual property or other ownership rights. TechCrunch characterizes its request to sequester sales proceeds as only being a narrower— and therefore more reasonable—imposition on Fusion Garage's continued operations.

Because it seeks only to freeze monies, however, the only purpose an injunction would serve would be to secure TechCrunch's ability to recover monetary damages should it prevail on the

---

[5] TechCrunch's motion for a preliminary injunction also attempts to establish that it has a likelihood of success on its claims for fraud and violations of the Lanham Act. While the adequacy of TechCrunch's *pleading* of those claims for relief will be discussed below in the context of Fusion Garage's motion to dismiss, TechCrunch has not shown that those claims would support issuance of the injunctive relief it seeks, even assuming it has shown a likelihood of success as to either of them. The fraud claim would at most give rise to a right to damages. While the Lanham Act claim theoretically could support an injunction against further "false advertising," it would not support the sequestration of joojoo sales proceeds, as TechCrunch demands.

10

1 merits of this action. Such injunctions are available in some circumstances. *See e.g. In re Focus*
2 *Media Inc.,* 387 F.3d 1077, 1084 (9th Cir. 2004) ("when the plaintiff creditor asserts a cognizable
3 claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the
4 interim invoke equity to preserve the status quo pending judgment where the legal remedy might
5 prove inadequate and the preliminary relief furthers the court's ability to grant the final relief
6 requested." (quoting *United States v. Oncology Assocs., P.C.*, 198 F.3d 489, 496-497 (4th Cir.
7 1999)). Nevertheless, TechCrunch has not adequately shown a likelihood that it will be unable to
8 recover in the absence of preliminary relief. TechCrunch has pointed to some evidence that Fusion
9 Garage was in precarious financial circumstances during the parties' relationship, and evidence that
10 initial sales of the joojoo were poor. TechCrunch has not persuasively demonstrated, though, that
11 Fusion Garage presently lacks the resources to satisfy any damages award.[6]

12 Additionally, and equally significant, TechCrunch has failed to show why it would be
13 entitled to a freeze on all joojoo proceeds. As noted above, an injunction may be appropriate where
14 a plaintiff has an equitable claim to "specific assets" held by a defendant. Even assuming
15 TechCrunch prevails on the merits, however, that would not give it a claim to 100% of the *revenues*
16 Fusion Garage derives from selling the product. At most, TechCrunch may have a right to share in
17 any *profits* Fusion Garage earns from the device. Even assuming Fusion Garage breached fiduciary
18 duties, that does not give TechCrunch the windfall of collecting all joojoo sales proceeds, without
19 regard to the costs Fusion Garage incurs in producing and marketing the machines. TechCrunch has
20 not attempted to identify what portion of the sales price of each joojoo represents profit, or if indeed
21 Fusion Garage has realized any profits at all. Accordingly, TechCrunch's motion for a preliminary
22 injunction is denied.

---

[6] The evidence of poor joojoo sales is a double-edged sword. While it suggests that Fusion Garage will have less resources to respond in damages, it also decreases the likelihood that damages will be substantial. Similarly, TechCrunch has not adequately addressed the fact that if it is correct as to the precariousness of Fusion Garage's financial condition, sequestering sales proceeds would appear more likely to damage TechCrunch's chances of eventual recovery than to enhance it.

11

B. Motion to Dismiss

1. *Breach of fiduciary duty*

In seeking dismissal of TechCrunch's claim for breach of fiduciary duty, Fusion Garage presents the same substantive arguments as proffered in its opposition to the motion for preliminary injunction. Those arguments have been addressed above, and will not be repeated here. For the same reasons that TechCrunch has made a credible showing as to the existence of a joint venture, it has adequately pleaded its claim for breach of fiduciary duty.[7] Accordingly, the motion to dismiss this claim is denied.

2. *Misappropriation of "business ideas"*

As the discussion above reflects, in the context of a breach of fiduciary duty claim by a partner or joint venturer, misappropriation of a business opportunity belonging to the parties collectively is actionable. *See Leff*, *supra,* 33 Cal.3d at 515. As a stand-alone claim, however, misappropriation of business ideas is not. In *Desny v. Wilder*, 46 Cal.2d 715 (1956) the plaintiff submitted a story synopsis to Paramount Pictures proposing a movie to be based on certain historical (and public domain) events involving a boy trapped in a cave. *Id.* at 724-725. Paramount thereafter made a movie about those events, but refused to pay plaintiff for the idea. *Id.* The California Supreme Court held that it had been error to grant summary judgment for Paramount because there were facts suggesting the existence of an *implied contract* between the parties. The *Desny* court made very clear that *ideas* are not independently protectable.

> Generally speaking, ideas are as free as the air and as speech and the senses . . . . it is clear that California does not now accord individual property type protection to

---

[7] Fusion Garage's motion to dismiss does emphasize the additional argument that TechCrunch has not clearly delineated whether the claimed fiduciary duties were owed to Interserve, to CP, Inc. or perhaps to Arrington himself. The precise identity of the parties to the joint venture at any particular point in time is certainly subject to further factual development. For pleading purposes, however, the complaint adequately alleges the role of both Interserve and CP, Inc. in the parties' arrangements.

> abstract ideas . . . . Neither common law nor statutory copyright extends protection to an idea as such.

*Id.* at 731.

Parties can, however, enter into an implied or express contract whereby one party agrees to pay for the other's ideas. *Id.* at 733 ("Even though an idea is not property subject to exclusive ownership, its disclosure may be of substantial benefit to the person to whom it is disclosed. That disclosure may therefore be consideration for a promise to pay."). Hence, there exists what the parties here refer to as a "*Desny* claim," but such a claim sounds in contract.

Yet, TechCrunch is attempting to bring a common law *tort* claim. It relies on *Hollywood Screentest of Am., Inc. v. NBC Universal, Inc*., 151 Cal. App. 4th 631 (2007). In that case, the plaintiff had "pitched" certain ideas for a "reality" television series to NBC. The network turned plaintiff down, but later announced a show that plaintiff contended included many of the ideas it had proposed. The *Hollywood* plaintiff pleaded several breach of contract claims, consistent with *Desny*. It also pleaded one common law claim for misappropriation. The court described the elements of such a claim as:

> 1) the plaintiff has made a substantial investment of time, effort and money into creating the thing misappropriated, such that the court can characterize the "thing" as a kind of property right, 2) the defendant has appropriated the thing at little or no cost, such that the court can characterize defendant's actions as reaping where it has not sown and 3) the defendant has injured plaintiff by the misappropriation.

151 Cal. App. 4th at 650.

In *Hollywood*, the court held that summary judgment had properly been granted as to this claim (and all the other claims) because the undisputed facts showed that the television series plaintiff was challenging had been independently created by certain third parties who had not been exposed to plaintiff's ideas, rather than by NBC. *Id.* at 649-651. TechCrunch contends that *Hollywood* thus supports the viability of its claim, as long as there is no independent creation defense. To the contrary, in *Hollywood*, the court *expressly* noted that it was *not reaching* NBC's additional argument that "this cause of action fails because, under *Desny* . . . . ideas are not considered property." 151 Cal. App. 4th at 650 n. 10. Thus, the case is not authority for the notion

13

that ideas can be property notwithstanding the clear rules discussed in *Desny*. Rather, the court in *Hollywood* merely elected to reject the tort claim on the *same* ground it had upheld summary judgment on the contract claims rather than to wade into a different set of legal principles.[8] Accordingly, TechCrunch's tort claim for misappropriation of business "ideas" is dismissed without leave to amend. This ruling is without prejudice to TechCrunch's right to allege a claim based on implied contract, consistent with the holding in *Desny*, in the event it has a good faith factual and legal basis to do so.[9]

        3. *Fraud*

As presently constituted, the complaint mentions any number of misrepresentations, false promises, and failures to disclose on the part of Fusion Garage. The allegations, however, constitute a hodgepodge that renders it difficult to differentiate between mere conclusions of falsity and any factual representations that might be sufficient to establish that material misrepresentations were presented, that promises were made without intent to perform, or that there was a duty to disclose matters omitted. Similarly, TechCrunch has not alleged with adequate specificity how and to what extent it reasonably relied on each alleged misrepresentation and was damaged thereby.

Moreover, while TechCrunch has argued that discovery undertaken after the complaint was filed has provided it with substantially more information regarding the circumstances and nature of Fusion's Garage's allegedly fraudulent conduct, it has not yet incorporated those matters into the

---

[8] At oral argument, TechCrunch cited to *City Solutions, Inc. v. Clear Channel Communications*, 365 F.3d 835 (9th Cir. 2004), as additional support for this claim for relief. *City Solutions* does appear to support the notion that at least in some circumstances, the common law tort of misappropriation can serve to protect "confidential" information that a party has spent "substantial time and skill in developing," even where that information does not rise to the level of a trade secret and is not protected by patent law or copyright. The facts TechCrunch has alleged here, however, plainly take it outside *City Solutions.*

[9] Fusion Garage also contends that this claim is preempted by the Uniform Trade Secrets Act. Such preemption would arise to the extent TechCrunch is attempting to recover for misappropriation of trade secrets under the guise of a different claim for relief. TechCrunch insists, however, that it has not pleaded, and does not intend ever to argue, that any of the "business ideas" it contends were misappropriated were trade secrets.

complaint.[10] Under these circumstances, dismissal of the fraud claim with leave to amend is appropriate.[11]

### 4. *Lanham Act*

Fusion Garage contends that TechCrunch has not alleged except in conclusory terms that it has suffered a "competitive injury" sufficient to give it standing to bring claims under the Lanham Act. *See Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.,* 407 F.3d 1027, 1037 (9th Cir. 2005) ("[F]or standing pursuant to the 'false advertising' prong of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant.").

TechCrunch apparently is not presently engaged in developing or marketing a tablet computer such that it could be said to be in competition with Fusion Garage in any traditional sense. On the other hand, the allegations of the complaint show that TechCrunch plainly *was* engaged in developing the CrunchPad, and it presumably retains such know-how as it gained in that process and would not have to start entirely from scratch should it decide to re-enter the field. Similarly, TechCrunch's argument that it should not be deprived of standing where it was Fusion Garage's alleged wrongdoing that has prevented it from presently participating in the market makes some sense. Accordingly, while the motion to dismiss the Lanham Act claim will be dismissed on

---

[10] As an apparent result of the complaint having been prepared in a short time period, it contains oversights such as the omission from each claim for relief of a complete reference to the preceding paragraphs TechCrunch intended to incorporate by reference. While standing alone this would not serve as a basis for dismissal, it does provide an additional reason that amending the pleading is in order.

[11] Fusion Garage's motion to strike "extrinsic speaking evidence" submitted by TechCrunch in support of its motion to dismiss is denied. To the extent those materials go beyond the factual allegations of the complaint, however, they have been considered only in evaluating whether leave to amend is warranted, not as a basis for concluding that any portion of the complaint presently states a claim.

15

grounds that TechCrunch has failed to allege sufficient facts showing it has suffered competitive injury, leave to amend will be granted.[12]

     5. *UCL*

TechCrunch's claim under California's unfair competition law, Business & Professions Code §17200, rises and falls with its ability to allege fraud adequately. Accordingly, the claim is dismissed with leave to amend, for the same reasons as the fraud claim. TechCrunch's claim for false advertising under §17500 of the statute turns on the same standing issue as its Lanham Act claim. Accordingly, it too is dismissed with leave to amend.

## V. CONCLUSION

TechCrunch's motion for a preliminary injunction is denied. Fusion Garage's motion to strike "extrinsic speaking evidence" is denied. Fusion Garage's motion to dismiss is denied as to the claim for breach of fiduciary duty. Fusion Garage's motion to dismiss is granted, without leave to amend, as to the tort claim for misappropriation of business ideas, but without prejudice to any related claim sounding in contract that TechCrunch may be able to plead in good faith. The motion to dismiss is granted, with leave to amend, as to the claims for fraud, violations of the Lanham Act, and violations of California Business & Professions Code §§17200 and 17500. Any amended complaint shall be filed within 20 days of the date of this order.

Dated: 08/24/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[12] It would be premature to accept Fusion Garage's invitation to parse each of the statements alleged to be false in the Lanham Act claim to determine if they are in fact true, or inactionable for other reasons. Even assuming such an inquiry would not involve factual questions inappropriate for resolution on a motion to dismiss, unless TechCrunch can satisfy the threshold standing requirement, those issues will not arise. Fusion Garage's motion to strike is therefore also denied.