WINSTON & STRAWN LLP
David S. Bloch (SBN: 184530)
dbloch@winston.com
J. Caleb Donaldson (SBN: 257271)
jcdonaldson@winston.com
101 California Street
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Plaintiffs
TechCrunch Inc. and CrunchPad Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TECHCRUNCH, INC., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> FUSION GARAGE PTE. LTD., <br><br> Defendant. | Case No. C 09-cv-05812-RS (PSG) <br><br> **PLAINTIFFS' OPPOSITION TO FUSION GARAGE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** <br><br> Date: January 3, 2012 <br> Time: 10:00 a.m. <br> Judge: Hon. Paul Singh Grewal <br> Location: San Jose, Courtroom 5, 4th Floor |

**I. THE DISPUTE BETWEEN TECHCRUNCH, CRUNCHPAD, AND FUSION GARAGE CENTERS ON THEIR SPECIFIC JOINT VENTURE TO CREATE THE WORLD'S FIRST TABLET COMPUTER**

TechCrunch operates Silicon Valley's largest and most important technology blog. Starting in the fall of 2008, TechCrunch, Fusion Garage (an unknown Singaporean start-up), and CrunchPad (which TechCrunch created solely for purposes of this project) worked together to develop and market a low-cost, touch-screen tablet computer called the CrunchPad. The CrunchPad was to be a category-defining consumer product that was scheduled to launch months before Apple's iPad was even announced. Fusion Garage led TechCrunch and CrunchPad to believe that the three were collaborators working earnestly on a common joint venture. In fact, by September 2009 Fusion Garage had secretly decided to "divorce" itself from its co-venturers and appropriate the entire value

of the CrunchPad project for itself.  In emails to the public relations firm (McGrath Powers) it had secretly hired to orchestrate the divorce, Fusion Garage acknowledged that it had **"strung along"** TechCrunch and CrunchPad, confided that it was getting harder to **"play along,"** and predicted **"a massive blowup"** when it finally revealed its scheme to CrunchPad's and TechCrunch's principals, Heather Harde and Michael Arrington.[1]  Declaration of J. Caleb Donaldson, ("Donaldson Decl.") ¶ 2, Ex. A.

But despite the best efforts of its PR agency, after Fusion Garage abruptly pulled out of its partnership with CrunchPad and TechCrunch, it badly botched the launch of the CrunchPad (which it renamed the "JooJoo").  Rather than being released as a category-defining and wholly novel (if imperfect) tablet computer introduced more than six months *before* Apple's iPad and with the enthusiastic support of the most influential and widely read tech blog in Silicon Valley, the JooJoo launched into the toxic environment created by Fusion Garage's egregious misconduct.  Fusion Garage's missteps after its secret divorce caused the once-promising project to fail, and it discontinued JooJoo sales a year after launch, in November 2010.  Fusion Garage then withdrew from the public eye, engaged in a six-month "guerrilla marketing" campaign as "TabCo," and relaunched a new version of the CrunchPad/JooJoo as the "Grid10" in 2011.

This case is about Fusion Garage's secret plan in 2008-2009 to hijack the CrunchPad joint venture in violation of its fiduciary duties to TechCrunch and CrunchPad.  The Court already has concluded that a joint venture likely existed and the associated fiduciary duties were breached.  Order Denying Motion for Preliminary Injunction and Granting in Part and Denying in Part Motion to Dismiss, Aug. 24, 2010 (Docket No. 162) at n.3 ("Here, the parties' conduct in jointly working to develop a tablet computer speaks louder than any uncertainties that may have existed between them as to the details of how their relationship would be structured.").  The case has nothing to do with Michael Arrington's public feud with unrelated third party Jason Calacanis, nor does the fact that AOL bought TechCrunch in 2010 have any bearing on any fact in dispute.  Yet Fusion Garage now seeks to compel discovery about both subjects.  Expanding discovery into wholly unrelated areas is improper and Fusion Garage's requests are not reasonably calculated to lead to the discovery of

---

[1] Mr. Arrington has since left TechCrunch.

**PLTF'S OPP. TO FUSION GARAGE'S M/COMPEL PRODUCTION OF DOCUMENTS    CASE NO. C 09-CV-5812-RS (PSG)**

admissible information. Its motion should be denied.

## II. DOCUMENTS RELATING TO JASON CALACANIS ARE IRRELEVANT AND WILL NOT LEAD TO DISCOVERABLE INFORMATION

Jason Calacanis is an entrepreneur, blogger, and conference organizer. He and TechCrunch put on a handful of tech conferences, none of which had anything to do with the CrunchPad. After they separated their respective conference-organizing businesses and TechCrunch was bought by AOL, Mr. Calacanis briefly sued TechCrunch. His lawsuit caused a minor Internet sensation but never went anywhere: Mr. Calacanis voluntarily dismissed his case without any sort of settlement with TechCrunch. Donaldson Decl. ¶ 3, Ex. B.

When Mr. Calacanis sued TechCrunch, he published a blog post to explain himself. *See* Declaration of Sam Stake in Support of Fusion Garage's Motion to Compel ("Stake Decl.") Ex. Q. In that posting, Mr. Calacanis claimed that TechCrunch's Mr. Arrington didn't like to sign contracts, and furthermore that Arrington told him that this was because Arrington felt having oral contracts instead would give him an advantage.[2] On the strength of this one sentence, Fusion Garage propounded six broad discovery requests (Request Nos. 97-100 and 102-103) seeking all documents relating to agreements, purported agreements, and litigation between TechCrunch and Mr. Calacanis. *See* Motion at 12-15; Stake Decl., Ex. S. It did not limit these requests by any reference to Fusion Garage, the CrunchPad, or any other issue in this case. And it is particularly ironic for Fusion Garage to focus on the notion that Mr. Arrington allegedly disliked having agreements in writing, considering Fusion Garage's boast to McGrath Powers that Fusion Garage deliberately kept its dealings oral in order to avoid being sued for misappropriating the value of the CrunchPad joint venture: according to Fusion Garage's CEO, TechCrunch would not be able to sue Fusion Garage because "everything [had] been verbal," with nothing concerning the joint venture "shared via email etc." Donaldson Decl. ¶ 4, Ex. C.

### A. Documents Concerning Jason Calacanis Have No Bearing on the Joint Venture Between TechCrunch and Fusion Garage

Fusion Garage argues that TechCrunch's Mr. Arrington had the specific intent to keep his agreements with partners unwritten, and that proof of this intent in connection with Mr. Calacanis

---

[2] Neither the blog post nor Fusion Garage's Motion makes any attempt to explain *why* Mr. Arrington would say this to an adversary.

would somehow establish Mr. Arrington's broader pattern and practice of avoiding written contracts.

Even if Fusion Garage's theory had any factual support (which it does not), the document requests at issue here are not reasonably calculated to lead to admissible evidence. The unlikely idea that Mr. Arrington would have reduced to writing his reluctance to reduce things to writing cannot justify a wholesale review and production of a mass of documents concerning a relationship entirely unrelated to the one at issue in this case.

Indeed, Request Nos. 97-100, which seek all actual or proposed agreements between TechCrunch and Mr. Calacanis, are at odds with Fusion Garage's theory that Arrington purposely kept his agreements verbal in order to exercise additional leverage at a later date. Request Nos. 102-103, which seek documents relating to the Calacanis litigation, are even further afield. Requests seeking all documents relating to an issue not central to a case are overbroad. *D.R. Horton Los Angeles Holding Co., Inc. v. American Safety Indem. Co.*, 2011 WL 4403974 (S.D. Cal. Sept. 21, 2011); *Samuels v. Adame*, No. 1:09–CV–01320–AWI–DLB PC, 2011 WL 4565772 (E.D. Cal. Sept. 29, 2011 ) (slip op.) (request seeking all documents relating to other inmate or staff complaints against defendant correctional officers found overbroad and irrelevant despite plaintiffs' argument that they might reveal similar acts or additional plaintiffs); *Cano v. Naku*, No. CIV S-07-2203 JAM GGH P, 2009 WL 1582851 (E.D. Cal. June 4, 2009) (quashing as overbroad subpoena seeking all records pertaining to plaintiff, and directing plaintiff to serve a new subpoena seeking "only those documents which are arguably relevant" to the action).

Fusion Garage offers no case law to support its theory that Mr. Arrington's alleged tendency to keep his agreements unwritten would be admissible in any event. *Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d 1295 (9th Cir. 1981), has nothing to do with the admissibility of evidence, but rather with the effect of *res judicata* on the use of claims for another purpose. The court held that, even though *res judicata* barred claims of discrimination based on earlier acts, those acts could still form the basis for a pattern of discrimination. *Id.* at 1300. *Turley v. State Farm Mut. Auto Ins. Co.*, 944 F.2d 669 (10th Cir. 1991), concerned the admissibility of proffered evidence of prior acts of insurance fraud (a crime, and directly related to the issues in that case). *United States v. West*, 22 F.3d 586 (5th Cir. 1994), concerned the admissibility of evidence of prior criminal

convictions in evaluating the credibility of a witness. And *United States v. Aguilar*, 59 Fed. App'x 326 (10th Cir. 2003) concerned evidence that the defendant had engaged in prior criminal conduct identical to the conduct at issue in that case.

Here, Fusion Garage hopes to uncover, at best, not evidence of crimes, but evidence that Mr. Arrington preferred oral contracts because he thought them more advantageous to him. Even if that were true (and it is not), there is simply no way that a preference for verbal contracts over written ones supports the inference that TechCrunch had a plan or scheme to enter into agreements while harboring the specific intent to breach them. Moreover, Fusion Garage is not asserting any counterclaims in this case and does not argue in its answer that TechCrunch breached its contracts with Fusion Garage. So even if Fusion Garage were able to establish this "tendency" by relying on documents relating to Mr. Calacanis, it would have no way to connect that "tendency" to the facts in dispute in this case.

### B. Documents Concerning Mr. Calacanis Would Not Be Admissible To Impeach Mr. Arrington

Fusion Garage argues that it might introduce the evidence it hopes to find for impeachment. It evidently wants to impeach Mr. Arrington's statements that there was no written joint venture agreement with Fusion Garage because a merger seemed always to be just around the corner and he never thought to commit a joint venture agreement to paper. The evidence, Fusion Garage says, may show that the real reason there was no written joint venture agreement was because Mr. Arrington preferred verbal agreements. Fusion Garage also offers the notion that it could use evidence about Mr. Calacanis to challenge Mr. Arrington's statements about the nature of the joint venture in this case. But to repeat: Mr. Calacanis had nothing whatsoever to do with the CrunchPad project. So it is unclear how the contours of any agreement with Mr. Calacanis would be relevant to showing the contours of the agreement in *this* case. *See, e.g., Freeman v. Witco Corp.*, No. Civ.A. 97–1448, 1999 WL 389892 (E.D. La. June 11, 1999) (denying motion to compel evidence of other contracts with third parties to show "habitual practice" of contracting party).

In reality, Fusion Garage seeks these documents, if they exist, as impermissible character evidence. The eleven-page "preliminary statement" in Fusion Garage's Motion (Motion at 1-11) makes it plain that Fusion Garage wants to litigate Michael Arrington's personality rather than the

5

facts of this case.  But evidence of prior bad acts cannot be offered to show character.  Fed. R. Evid. 404 (a).  Fusion Garage thus cannot even articulate a theory to support the arguable relevance or admissibility of the documents it seeks.

### III. FUSION GARAGE'S DEMANDS FOR AOL-RELATED DOCUMENTS ARE OVERBROAD, NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE INFORMATION, AND SEEK PRIVILEGED COMMUNICATIONS.

In September 2010 AOL, Inc. acquired TechCrunch and assumed the prosecution of this case.  Fusion Garage seeks *every document related to that acquisition* (Request No. 93)—a request that far exceeds the bounds of relevance and imposes a massive undue burden.  Fusion Garage also challenges the privilege designation protecting certain communications about this litigation between AOL and TechCrunch.  But these communications are protected from disclosure by the attorney-client privilege and the common-interest doctrine, and thus need not be produced.

#### A. TechCrunch-AOL Documents That Do Not Reference Fusion Garage, CrunchPad, The JooJoo, Or This Lawsuit Are Irrelevant And Will Not Lead To The Discovery Of Admissible Information

Requests for Production Nos. 93 and 94 seek documents relating to AOL's acquisition of TechCrunch.  Request No. 94 seeks communications between AOL and TechCrunch relating to Fusion Garage, the JooJoo, CrunchPad, Inc., the CrunchPad, or this action.  TechCrunch agreed to produce documents responsive to this request, subject to its objections.  Request No. 93 seeks **all** documents and communications concerning AOL's acquisition of TechCrunch.  But given that TechCrunch already has agreed to produce documents responsive to Request No. 94, any remaining documents responsive to Request No. 93 are irrelevant to this action. Fusion Garage claims that the ***omission*** of any mention of Fusion Garage, the JooJoo, CrunchPad, Inc., the CrunchPad, or this litigation in any given document makes that document relevant.  *See* Motion at 20.  This argument is a universal solvent; it implies that everything is always relevant by either its presence or its absence.  That is not the law.  *Gass v. Marriott Hotel Services, Inc.*,  558 F.3d 419, 436 (6th Cir. 2009) ("[A]bsence of evidence is not evidence of absence.").

Fusion Garage also argues that any offset in the terms of AOL's acquisition due to "expected

6

**PLTF'S OPP. TO FUSION GARAGE'S M/COMPEL PRODUCTION OF DOCUMENTS**     **CASE NO. C 09-CV-5812-RS (PSG)**

future earnings from Fusion Garage's sale of the JooJoo" or "the premium or discount applied because of the instant litigation" would be relevant to a valuation of TechCrunch's expected share of the joint venture. Even if this were true (and Fusion Garage offers no case law or expert declarations suggesting that it is), communications between AOL and TechCrunch evidencing the "expected future earnings from Fusion Garage's sale of the JooJoo" and "the premium or discount applied because of the instant litigation" would be responsive to Request No. 94 and therefore will be produced regardless of the fate of Request No. 93. Fusion Garage also conveniently ignores the fact that when the AOL acquisition was consummated, Fusion Garage had already "divorced" TechCrunch and CrunchPad, this lawsuit was ongoing, and the JooJoo was obviously headed for failure. *See* Motion at 6 ("The JooJoo went 'end of life' in 2010").

### B. TechCrunch-AOL Documents Reflecting Legal Assessments Or Advice Are Privileged

Fusion Garage claims that it is entitled to review communications between AOL and TechCrunch embodying legal advice and strategy concerning this litigation, because AOL was at the time of these disclosures a third party. Courts, however, recognize a "common interest" exception that allows the sharing of information and privileged legal advice where the parties expect to be jointly participating in the related litigation. *See Hewlett-Packard v. Bausch & Lomb*, 115 F.R.D. 308, 309 (N.D. Cal. 1987) (Brazil, Maj. J.).

AOL and TechCrunch communicated about the case against Fusion Garage because AOL was planning to buy TechCrunch and thus assume responsibility for the litigation. The common interest privilege applies where the parties "demonstrate a common goal and that the documents or communications in question further that common interest." *DepoMed, Inc. v. Ivax Corp.*, No. C-06-0100 CRB (JCS), 2007 WL 1792324, *1 (N.D. Cal. June 19, 2007) (Breyer, J.); s*ee also Hewlett-Packard*, 115 F.R.D. at 309. Courts have repeatedly ruled that parties exchanging documents and otherwise privileged communications as part of a possible commercial transaction when they anticipate joint litigation if the transaction goes through are protected by the privilege. *See, e.g.*, *Hewlett-Packard*, 115 F.R.D. at 308 (no waiver of privilege for disclosing patent opinion letter to potential buyer because it was in anticipation of joint litigation even though buyer decided not to

buy); *Electro Scientific Industries, Inc. v. General Scanning, Inc.*, 175 F.R.D. 539, 541-42 (N.D. Cal. 1997) (Brazil, Maj. J.) (oral and written disclosures to customers or prospective customers that otherwise would have been privileged communications are still privileged under the "common interest" doctrine); *DepoMed*, 2007 WL 1792324, at *1 (documents shared as part of joint development agreement were disclosed in the furtherance of common goals and thus the disclosing party did not waive privilege); *BriteSmile, Inc. v. Discus Dental Inc.*, No. C 02–3220 JSW (JL), 2004 WL 2271589, at *2 (N.D. Cal. Aug. 10, 2004) (Ware, J.) (disclosure of information to facilitate purchase of technology did not waive privilege where defendant and third party had common legal and business interest). Even the case Fusion Garage relies on, *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal., 2007) (Chen, Maj. J.), squarely affirms *Hewlett-Packard*'s ruling that there is no waiver where "there was a common legal interest because of anticipated joint litigation." *Id*. at 579.

The policy judgments underlying this rule are clear: the frank disclosure of information to prospective buyers is critical for successful business transactions and thus should be permitted without the threat of loss of privilege. "Unless it serves some significant interest courts should not create procedural doctrine that restricts communications between buyers and sellers, erects barriers to business deals, and increases the risk that prospective buyers will not have access to important information that could play key roles in assessing the value of the business or product they are considering buying." *Hewlett-Packard*, 115 F.R.D. at 311; *see BriteSmile,* 2004 WL 2271589 at *2 ( "[I]f the Court required disclosure of privileged information shared by [defendant] with [with a third party] in order to facilitate its purchase of [the third party's] technology, it could potentially chill similar transactions."). Fusion Garage articulates no "significant interest" that would serve to outweigh these considerations. In fact, it does not even try—it fails to mention the common-interest doctrine at all.

The common interest exception forestalls any claim of waiver here. Fusion Garage should not be able to eavesdrop on confidential communications regarding legal strategy simply because TechCrunch was acquired while the lawsuit was ongoing.

## IV. FUSION GARAGE'S MOTION TO COMPEL SHOULD BE DENIED

Fusion Garage requests extraordinarily broad discovery into a transaction and subsequent lawsuit involving Jason Calacanis, who by universal admission has nothing whatsoever to do with this case. It likewise seeks every document generated in the course of AOL's acquisition of TechCrunch, whether or not relating to this lawsuit, and whether or not privileged. Through the more than 23 pages of its motion to compel, it never explains how these materials could possibly be relevant, how the requests at issue are narrowly tailored and reasonably calculated to lead to the discovery of admissible evidence, and why Fusion Garage should be allowed to pierce the attorney-client privilege and common-interest rule merely because AOL bought TechCrunch after the lawsuit began. Seeking to compel these documents is an exercise in frivolity that serves only to increase the parties' costs and waste the Court's time. Fusion Garage's motion should be denied.

Dated: December 2, 2011   WINSTON & STRAWN LLP

By:    /s/
     David S. Bloch
     J. Caleb Donaldson

Attorneys for Plaintiffs TechCrunch Inc. and CrunchPad, Inc.