IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

INTERSERVE, INC., et al.,

        Plaintiffs,

  v.

FUSION GARAGE PTE. LTD,

        Defendant.
_____/

No. C 09-5812 RS

**ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT**

        The factual and procedural background of this action has been extensively described in prior orders and will not be recounted here. After vigorously litigating for nearly two years, defendant Fusion Garage effectively quit participating in this case, and apparently has ceased all business operations. Defense counsel's motion for leave to withdraw was granted, and after ample warning to Fusion Garage that it must obtain new counsel and appear, its answer was stricken. Plaintiffs applied for entry of default, which was duly granted by the Clerk of the Court. Plaintiffs now seek entry of default judgment in the amount of $10,157,000 and certain other relief. Although plaintiffs have established entitlement to entry of judgment in their favor, the amount of damages and other relief claimed is insupportable. Accordingly, judgment will enter in the amount of $357,000 against Fusion Garage, representing the "out of pocket" losses plaintiffs have shown they incurred.

        Following entry of default, courts are authorized to grant default judgment in their discretion. See Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In

exercising its discretion, the factors the court may consider include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except for those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Here, the *Eitel* factors weigh in favor of granting plaintiffs' motion for default judgment. Because Fusion Garage participated in the litigation through initial motion practice testing the pleadings, this case presents the unusual circumstances on default of a complaint that has already been held to state a claim. Additionally, although plaintiffs' motion for a preliminary injunction was denied, the order on that motion observed that they had made a credible preliminary showing of the existence of a joint venture, from which Fusion Garage was not legally entitled to withdraw without taking appropriate steps to dissolve the relationship and to compensate plaintiffs. Given that plaintiffs' allegations are now also *presumed* true on default judgment, their entitlement to recovery is unquestionable. Fusion Garage had notice of this action, and was fully advised of the consequences of choosing to abandon participating herein. Under these circumstances, the policy favoring decisions on the merits must yield to plaintiffs' right to a judicial determination of their claims.

Plaintiffs seek two categories of damages: (1) the value of their interest in the joint venture as of November 16, 2009, the day prior to Fusion Garage's unilateral withdrawal from the project, and; (2) the amount of direct costs TechCrunch incurred in establishing the joint venture and attempting to develop the CrunchPad product. Plaintiffs have proffered the expert opinion Greg J. Regan, a CPA holding a certification in Financial Forensics, that the value of plaintiffs' interest in the venture was $7.8 million.[1] Regan's opinion is derived from application of valuation methods

---

[1] Plaintiffs move to file under seal portions of the Regan declaration that refer to information they or Fusion Garage designated as confidential. Plaintiffs suggest that Fusion Garage's confidentiality designations were overbroad, and that its information need not be sealed given its failure to defend.

2

suggesting that the fair market value of Crunch Pad, Inc. was $12-$15 million. Regan also considered alternate valuation methods resulting in estimates in ranges of $30-$40 million, and $25 to $64 million, as supporting his more conservative selection of the $12-$15 million figure. His ultimate opinion of a value of $7.8 million represents 65% of the low end of that range, on the assumption that plaintiffs were entitled to that percentage of the joint venture.[2]

Regan describes his opinion as reflecting the "but-for" fair value of plaintiffs' interest. It is not entirely clear what real world factors he excluded under the "but-for" analysis. Plainly, it would be appropriate to evaluate the venture as it existed immediately prior to, and "but-for" Fusion Garage's unilateral withdrawal, in breach of its fiduciary duties. Regan, however, has further constructed a hypothetical in which the venture's development of the "CrunchPad" was much further along, and the device was technologically superior, to what actually was the case. For example, Regan refers to an originally-scheduled release date that would have been before the holiday buying season and, perhaps more importantly, provided an advantageous head start over Apple's release of the iPad. Regan also hypothesizes an initial sales price for the CrunchPad lower than that at which Fusion Garage was ultimately able to offer the joo joo.

Plaintiffs' theory seems to be that because they have alleged that Fusion Garage "failed to deliver on its commitments" during the process of developing the CrunchPad, they are entitled to damages in an amount reflecting what might have been, had their expectations been met. Plaintiffs point to various marketing advantages the joint venture would have had compared to what Fusion Garage faced in proceeding on its own, but their projections also rely on there having been a marketable CrunchPad product in the time frame they had envisioned. While it is appropriate on

---

It is questionable whether either side's information warrants sealing at this date, when its competitive value and sensitivity may no longer exist. Nevertheless, out of caution, and in light of the fact that the minimal redactions do not significantly impair the right of public access to the salient aspects of the document, the sealing motion is granted.

[2] The 65% figure appears to come from the parties' negotiations for an acquisition of Fusion Garage by plaintiffs in exchange for a 35% interest in CrunchPad, Inc. Given plaintiffs' vigorous opposition to Fusion Garage's argument that the relationship between the parties was only that of a failed merger negotiation and not a joint venture, use of that figure is somewhat peculiar, and not necessarily warranted.

default to presume that Fusion Garage breached its commitments and its fiduciary duties, in this context of a project to develop and bring to market a new and sophisticated technological device, it is simply too speculative to base a damages claim on a hypothetical state of the CrunchPad that did not exist in November of 2009, despite the parties' earlier hopes and dreams.

Plaintiffs have, however, adequately established out of pocket losses in the amount of $357,000, entitling them to entry of judgment in that amount. Plaintiffs' bare assertion that they should be awarded prejudgment interest of $2 million on both their "lost value" and out of pocket damages claims is insufficient to meet their burden to show that prejudgment interest would be appropriate in these circumstances.

Finally, plaintiffs' request that the judgment identify specific assets against which it may be executed and that it be entered against various individuals and entities who purportedly own or invested in Fusion Garage is denied. Post judgment execution procedures exist for the purpose of ensuring due process in connection with any levy activity; plaintiffs have presented no authority for short-circuiting those procedures. Their suggestion that the judgment be made applicable to individuals and entities not named in the complaint based merely on a claim that they are owners or investors in Fusion Garage disregards not only due process, but substantive principles of law as to the circumstances under which corporate existence may be disregarded and individual liability imposed.

Accordingly, the motion for default judgment is granted to the extent that a separate judgment in the amount of $357,000 will be entered against Fusion Garage. The motion is otherwise denied.

IT IS SO ORDERED.

Dated: 5/10/12

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE